# EXHIBIT A

ELECTRONICALLY FILED
2016 Nov 16 AM 9:06
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS

| | | |
|---|---|---|
| CITY OF LAWRENCE, KANSAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THOMAS FRITZEL, | ) | |
| **Serve:** | ) | |
| 209 N. Fall Creek Road | ) | Case No. |
| Lawrence, Kansas 66044 | ) | |
| | ) | |
| OREAD INN, L.C., | ) | |
| **Serve:** | ) | |
| Registered Agent:  Thomas Fritzel | ) | |
| 1200 Oread Avenue | ) | |
| Lawrence, Kansas 66044 | ) | |
| | ) | |
| OREAD WHOLESALE, L.C., | ) | |
| **Serve:** | ) | |
| Registered Agent:  Thomas Fritzel | ) | |
| 1200 Oread Avenue | ) | |
| Lawrence, Kansas 66044 | ) | |
| | ) | |
| DFC COMPANY OF LAWRENCE L.C., | ) | |
| **Serve:** | ) | |
| Registered Agent:  Thomas Fritzel | ) | |
| 643 Massachusetts, Suite 300 | ) | |
| Lawrence, Kansas 66044 | ) | |
| | ) | |
| and JOHN DOES 1-12, | ) | |
| | ) | |
| Defendants. | ) | |

## PETITION

COMES NOW Plaintiff City of Lawrence and submits the following Petition, as follows:

## INTRODUCTION

1.      This action involves the wrongful and fraudulent conduct of the Defendants under a Redevelopment Agreement with the City of Lawrence to the detriment of the City and the citizens and taxpayers of the community.  Defendants engaged in an enterprise whereby they

1

purposefully and repeatedly designed and manufactured sales within a special taxing district and filed materially inaccurate sales tax returns for purposes of inducing the City of Lawrence to provide increased sales tax reimbursements to Defendant Oread Inn, L.C. under the Redevelopment Agreement.   Defendants knowingly and intentionally submitted false and inaccurate information in furtherance of their scheme and for their own financial benefit.

This widespread enterprise engaged in by Defendants consisted of a pattern of racketeering activity involving wire and mail fraud as well as a conspiracy to engage in racketeering activity.   This is a civil action to address those wrongs committed by Defendants and for monetary damages as well as RICO remedies authorized by 18 U.S.C. 1961 *et seq.*; for declaratory and injunctive relief; for actual, consequential and exemplary damages; various additional civil tort and contractual remedies; and for all other relief which this Court deems just and proper under all circumstances.

## PARTIES

2.     Plaintiff the City of Lawrence is a home rule municipal corporation existing under the authority and Article 12 Section 5 of the Constitution of the State of Kansas.

3.     Defendant Thomas Fritzel (hereinafter "Fritzel") is a resident of Douglas County and can be served with process at 209 N. Fall Creek Road, Lawrence, Kansas 66044.

4.     Defendant Oread Inn, LC (hereinafter "Oread Inn") is a limited corporation organized pursuant to Kansas law, primarily transacting business in Douglas County, Kansas and with its registered office and principal place of business in Douglas County, Kansas. Defendant Fritzel is an officer, director, and/or member as well as registered agent of Oread Inn. Oread Inn may be served through its registered agent Thomas Fritzel at 1200 Oread Avenue, Lawrence, Kansas 66044.

2

5.     Defendant Oread Wholesale, LC (hereinafter "Oread Wholesale") is a limited corporation organized pursuant to Kansas law, transacting business in Douglas County, Kansas and with its registered office and principal place of business in Douglas County, Kansas. Defendant Fritzel is an officer, director and/or member of Oread Wholesale. Oread Wholesale may be served through its registered agent Thomas Fritzel at 1200 Oread Avenue, Lawrence, Kansas 66044.

6.     Defendant DFC Company of Lawrence L.C. (hereinafter "DFC Company") is a corporation organized pursuant to Kansas law, transacting business in Douglas County, Kansas and with its registered office and principal place of business in Douglas County, Kansas. Defendant Fritzel is an officer, director and/or member of DFC Company. DFC Company may be served through its registered agent Thomas Fritzel at 643 Massachusetts, Suite 300, Lawrence, Kansas 66044. Defendant DFC Company of Lawrence L.C. acted as contractor in building the Varsity House located at 1043 Indiana, Lawrence, Kansas.

7.     John Doe Defendants are others as of yet unidentified individuals and/or business entities who aided, abetted, and facilitated the scheme to defraud the City of Lawrence in regards to the fraudulent scheme to obtain inflated tax rebates.

8.     On information and belief, each Defendant named in this Petition including the John Doe Defendants, was acting as the agent, ostensible agent, servant, employee, representative, associate, conspirator or joint venture of each of the Defendants and were at all times acting within the course and scope of his, her or its authority to act as agent, ostensible agent, servant, employee, representative and associate, and with the knowledge, authorization, consent, permission or ratification of each of the other Defendants.

3

**VENUE AND JURISDICTION**

9.     Venue is appropriate in Douglas County, Kansas pursuant to K.S.A. §60-603 and 60-604 as Defendant Fritzel resides in Douglas County, and the registered office of Defendants are located in Douglas County, Kansas.  Furthermore, the tortious and wrongful acts giving rise to the causes of action stated herein occurred in Douglas County, Kansas.

10.     This Court has jurisdiction over this matter and Defendants pursuant to K.S.A. §60-1701 as the acts giving rise to the causes of action stated herein including the tortious and wrongful conduct of Defendants occurred in Douglas County, Kansas.

**FACTUAL BACKGROUND**

11.     On or about February 19, 2008, by Ordinance No. 8234, the City of Lawrence created the 12th and Oread Tax Increment Financing Redevelopment District (hereinafter the "Redevelopment District") pursuant to the authority granted the City of Lawrence by K.S.A. §12-1770 *et seq.*

12.     The Redevelopment District with the legal description as set forth in **Exhibit A** attached hereto and incorporated by reference, consists of 8.51 acres generally located from 13th Street on the South to approximately 9th Street on the North and Mississippi Street on the West and Louisiana on the East in Lawrence, Kansas.

13.     The Redevelopment District consists of a single redevelopment project area (the "Project Area") the boundaries of which are the same as the legal description set forth in **Exhibit A** and as depicted in the map attached hereto as **Exhibit B**.

14.     By separate Ordinance No. 8254, the City of Lawrence also created a Transportation Development District ("TDD") with the legal description as set forth in **Exhibit C**.

4

15.     The creation of the Redevelopment District and the TDD (collectively herein referred to as the "Special Taxing District") was so that property tax and sales tax revenues generated within the Redevelopment District as well as sales tax funds from the TDD could be used to reimburse any development within the Project Area for certain eligible expenses.

16.     On or about February 22, 2008, Oread Inn submitted a Redevelopment Project Plan (hereinafter the "Project Plan") for the Redevelopment District to the City of Lawrence attached hereto as **Exhibit D** and incorporated by reference.  In the Project Plan, Oread Inn proposed to construct a multi-use structure consisting of approximately 106 rooms and mixed use commercial space to the be located in the Project Area.  This multi-use structure is now commonly known as the Oread Hotel.

17.     On or about April 8, 2008, the City of Lawrence by Ordinance No. 8253 approved the Project Plan, and the City of Lawrence and Oread Inn entered into the 12th and Oread Tax Increment Financing District Redevelopment Agreement (hereinafter "Redevelopment Agreement") attached hereto as **Exhibit E** and incorporated by reference.

18.     Under the terms of the Redevelopment Agreement, Oread Inn agreed to develop and build the Oread Hotel located at 1200 Oread Avenue, Lawrence, Kansas 66044.  In connection with the construction of the Oread Hotel, Oread Inn also agreed to make a variety of infrastructure improvements as set forth in the Project Plan.

19.     Oread Inn additionally agreed to advance all Redevelopment Costs (as defined in the Redevelopment Agreement) necessary to complete the Project.  In exchange, the City of Lawrence agreed to reimburse Oread Inn for Redevelopment Project Costs as well as TDD Costs as defined in the Redevelopment Agreement in a total amount not to exceed Eleven Million Dollars ($11,000,000.00) plus interest.

20.     The Redevelopment Agreement between the City of Lawrence and Oread Inn envisioned that reimbursements paid to Oread Inn for its Redevelopment Costs would be paid from the property tax and sales tax revenues generated within the Redevelopment District as well as sales tax funds from the TDD.

21.     In order to determine the appropriate reimbursements to be paid, the Redevelopment Agreement required Oread Inn and its tenants, subtenants, and assignees to provide the city manager for the City of Lawrence with monthly sales tax returns for their facilities in the Special Taxing District.

22.     The City of Lawrence also would receive sales tax information from the Office of the Kansas Treasurer who would calculate the amount of reimbursement due Oread Inn based upon that sales tax information. The City of Lawrence would then, from funds deposited in the TIF fund and TDD fund, reimburse Oread Inn for sales taxes, property taxes and TDD sales tax remitted within the Special Tax District.

23.     Construction of the Oread Hotel was completed in 2010.  In addition to a hotel, restaurant, shopping space and meeting rooms, the Oread Hotel also includes office space which could be leased to tenants of the Oread Hotel.

24.     Based upon information and belief, Oread Inn and Oread Wholesale entered into a lease agreement whereby Oread Wholesale agreed to lease certain office space located within the Oread Hotel and the Special Taxing District.

25.     Thomas Fritzel is an officer, director, member and/or owner of both Oread Inn and Oread Wholesale.

26.     Oread Wholesale purports to be and holds itself out as a procurement company which purchases and pays third party vendors for material, property and services.  Oread

6

Wholesale then provides the materials, property or services provided by third party vendors to its affiliated companies, individuals or other business entities including but not limited to Oread Inn, DFC Company or Lawrence, L.C., Varsity House, L.C. and the Eldridge Hotel, L.C. among others.

27.    Based upon information and belief, Oread Wholesale obtained an exemption certificate from the State of Kansas whereby Oread Wholesale was exempt from paying sales tax on certain purchases. Specifically, Oread Wholesale was and is exempt from paying sales tax on property or services Oread Wholesale purchased for resale.

28.    From 2009 through 2015, Oread Wholesale engaged in a scheme and acted in concert with Fritzel, Oread Inn, DFC Company of Lawrence and the John Doe Defendants whereby Oread Wholesale improperly used its tax-exempt status and applied the Special Taxing District tax rate to hundreds of projects and transactions with its affiliated companies, individuals and other entities that were not within the Special Taxing District and/or did not constitute retail sales under Kansas law.

29.    In relation to the transactions and sales discussed herein, Oread Wholesale purchased a variety of tangible personal property and services from various third party vendors, both within and outside the State of Kansas for use by its affiliated companies, individuals and other business entities. Based upon information and belief, Oread Wholesale would use its tax-exempt status when paying third party vendors for the material, property and services which Oread Wholesale would then ultimately provide to its affiliated companies, individuals or other business entities.

30.     After providing material, property or services to affiliated companies, individuals or other entities, Oread Wholesale on a monthly basis would send an "invoice" to the affiliated companies, individuals or other entities.

31.     Oread Wholesale was seeking reimbursement from its affiliated companies, individuals or other business entities for the amounts paid by Oread Wholesale to the third-party vendors.

32.     The invoices submitted by Oread Wholesale to its affiliated companies, individuals or other business entities included the following:   "Please reimburse for the following; see attached copies."   Oread Wholesale's invoices also would identify a specific project related to the reimbursements it was seeking.  Oread Wholesale would attach the third-party vendor which included the third-party vendor name as well as a vendor total to its invoices.

33.     The third-party vendor invoices attached to Oread Wholesale's invoice identify Oread Wholesale as the purchaser and the third-party vendor invoices were without sales tax.

34.     Many of the third-party vendor invoices contain a notation that the sale is a tax-exempt sale and identify Oread Wholesale's Kansas sales tax number.

35.     When seeking reimbursement from its affiliated companies, individuals or other business entities, Oread Wholesale would calculate sales tax based upon the sales tax rate in the Special Taxing District.  The Special Taxing District tax rate would be reflected on Oread Wholesale's invoices to its affiliated companies, individuals or other business entities.

36.     Based upon information and belief, transactions between Oread Wholesale and its affiliated companies, individuals and other entities described herein were not "retail sales" under the Kansas retailers' sales tax act.  Instead of an exchange of tangible personal property or the

8

performance of services, the transactions were reimbursements of expenses incurred by the Defendants.

37.    Based upon information and belief, Defendants were in fact reimbursed by the affiliated company, individual or other entity in the amount identified on each invoice which included the Special Taxing District sales tax rate and Defendants reported these "sales" as occurring within the Special Taxing District.

38.    From 2009 through 2015, Oread Wholesale sought reimbursement from over 30 affiliated companies, individuals or other entities for material, property and services Oread Wholesale obtained from third party vendors using its tax-exempt status and for projects or transactions that occurred outside the Special Taxing District.  These companies, individuals, other entities and projects include but are not limited to the following:

a.    Thomas Fritzel or his family members including reimbursements related to his residence at 641 Louisiana and a cabin in Colorado located at 9290 Ute Road;

b.    Fort Development, LC for the Olivia Farms project, Junction City, Kansas;

c.    151 Company, LC for Service Car Wash and Tuckaway Apartments in Johnson County, Kansas;

d.    Nancy Longhurst for the Oread and Eldridge Hotel;

e.    Gene Fritzel Construction Co., Inc. for the Laird Noller Hyundai Project, 628 Vermont, Bill Sead Project and Sandy Farm Project;

f.    DFC Company of Lawrence, LC for the Laird Noller Hyundai Project, Hutton Farms West Project, Comfort Inn Project, Rezolve Project,

Frontier Apartments Project, Varsity House Project, Comfort Inn Project, Lone Star Project, and the McCarthy Apartments Project;

g.  Eldridge Hotel c/o Olivia Collection, Eldridge Holdings, LC;

h.  Eldridge Extended c/o Olivia Collection;

i.  Earnie Oshel;

j.  Tower Properties c/o Tuckaway Managements involving the Hutton Farms Project, Hawker Apartments, Tuckaway Apartments Project, Tuckaway II, Boardwalk Apartments and Harper Square Apartments;

k.  Sojac Land Company;

l.  OneTwoThree, LLC;

m.  Hope Ogden;

n.  Fall Creek Farms;

o.  Earnie's Mechanical for 641 Louisiana, 714 Vermont, 1013 Indiana and 10th and Indiana;

p.  Downtown Equities II, LC;

q.  Kat Kids c/o Kiley Patterson;

r.  R6, LC c/o Keela Lam;

s.  Rock Shoppe;

t.  GCB Holding, LC involving the 371 Woodlawn Project;

u.  Jimmy Teague;

v.  Kiley Patterson;

w.  Space Saver;

x.  Warren, LC;

y.      Casey Stewart;

z.      Greg and Keela Lam;

aa.     Andy Fritzel;

bb.     Tim Fritzel;

cc.     Gene Fritzel;

dd.     Oread Inn, and

ee.     Varsity House.

39.     Based upon information and belief, Oread Wholesale did not pay sales tax on some or all of its purchases of the property, merchandise or services involved in the foregoing transactions and for which Oread Wholesale sought reimbursement from its affiliated companies, individual or other entities.

40.     Based upon information and belief, at the time Oread Wholesale submitted its invoices seeking reimbursement from the affiliated companies, individuals and other entities identified in Paragraph 38 and applying the tax rate for the Special Taxing District, Defendants knew or should have known that:

a.      some or all of the transactions/purchases identified in Oread Wholesale's invoices did not occur within the Special Taxing District;

b.      the Special Taxing District sales tax rate did not apply to the reimbursements sought by Oread Wholesale; and,

c.      the transactions were not "retail sales" under the Kansas retailers' sales tax act.

41.     Despite knowing that the transactions/purchases identified in the invoices did not occur within the Special Taxing District and that the Special Taxing District sales tax rate did not

11

apply to the reimbursements sought by Oread Wholesale, Oread Wholesale applied the Special Taxing District sales tax rate to each of its invoices in calculating the total reimbursement due from the affiliated company, individual or other entity identified on each invoice.

42.    Oread Wholesale knew that the transactions did not qualify as "retail sales" under Kansas law but added Kansas sales tax to an expense reimbursement in an effort to fraudulently convert the transaction into an apparent "retail sale" and increase reimbursements to Oread Inn under the Redevelopment Agreement.

43.    Oread Wholesale also knowingly and improperly utilized the Kansas resale exemption certificate to make purchases of tangible personal property that in fact was not resold and to purchase construction materials and services.

44.    Fritzel created and used Oread Wholesale to purchase and fraudulently "re-sale" property, merchandise or services to affiliated companies, individuals and other entities in an effort to intentionally and fraudulently "manufacture" sales within the Special Taxing District for the purpose of improperly increasing the sales tax reimbursements to Oread Inn from the City of Lawrence.

45.    At all relevant times, Fritzel and Oread Wholesale conspired and acted in concert with Oread Inn, DFC Company and the John Doe Defendants to manufacture sales within the Special Taxing District and to increase reimbursements to Oread Inn under the Redevelopment Agreement.

46.    In addition to preparing false and misleading invoices and improperly using its exemption certificate, based upon information and belief, from 2010 through 2015 Defendants conspired to knowingly and fraudulently submit sales tax returns to the State of Kansas indicating sales taxes were collected related to various transactions and applying the Special

Taxing District sales tax rate to transactions which Defendants knew or should have known did not occur within the Special Taxing District and did not constitute retail sales under Kansas law.

47.     The sales tax returns filed by Oread Wholesale and applying Special Taxing District sales tax rate from 2010 to 2015 were false and misleading and Defendants knew or should have known the sale tax returns were false and misleading.

48.     In reliance upon the sales tax returns submitted by Oread Wholesale, the City of Lawrence made certain reimbursement payments to Oread Inn pursuant to the Redevelopment Agreement from 2009 through 2015 as follows:

- 2009 - $3,113

- 2010 - $152,978

- 2011 - $200,603

- 2012 - $264,453

- 2013 - $211,542

- 2014 - $175,181

- 2015 - $70,733

49.     In February 2015, the City of Lawrence received information from the Kansas Department of Revenue indicating that Oread Wholesale may have been improperly applying Kansas sales tax sourcing rules.

50.     Prior to February 2015, the City of Lawrence did not know and could not know that Defendants were improperly applying Kansas sales tax sourcing rules, were including the Special Taxing District sales tax rate to transactions which occurred outside the Special Taxing District and/or were improperly using Oread Wholesale's tax exemption certificate for

13

transactions wherein Oread Wholesale was seeking reimbursement from its affiliated companies, individuals and other entities.

51.     As a result of the false, misleading and inaccurate sales tax returns filed by Defendants as well as Defendants scheme to manufacture sales within the Special Taxing District, the City of Lawrence made reimbursement payments to Oread Inn for purported sales that did not occur within the Special Taxing District in an amount over $400,000.00.

## COUNT I: CONSPIRACY TO VIOLATE CIVIL RICO
### (All Defendants)

52.     The City of Lawrence incorporates by reference all of the allegations and averments set forth in paragraphs 1 through 51 of its Petition as though fully set forth herein.

53.     The City of Lawrence is alleging a cause of action under 18 U.S.C. § 1962(d) for conspiring to violate 18 U.S.C. § 1962(c).

54.     At all relevant times, Plaintiff and Defendants were "persons" pursuant to 18 U.S.C. §1961(3).

55.     At all relevant times, Oread Inn, L.C., a corporation, was "an enterprise" pursuant to 18 U.S.C. § 1961(4).

56.     At all relevant times, Oread Wholesale, L.C., a corporation, was "an enterprise" pursuant to 18 U.S.C. § 1961(4).

57.     At all relevant times, DFC Company of Lawrence, L.C., a corporation, was "an enterprise" pursuant to 18 U.S.C. § 1961(4).

58.     At all relevant times, these corporations engaged in, and their respective activities affected, interstate and foreign commerce as Oread Wholesale purchased material, property or services from third party vendors both within and outside the State of Kansas and provided

14

material, property or services to its affiliated companies, individuals or other entities for use outside the State of Kansas.

59.     Upon information and belief, at all relevant times, the Defendants conducted numerous telephone calls, fax communications, emails, mailings through the U.S. Post Office, and/or wire transactions in furtherance of the tax rebate scheme described above and therefore all these communications were made in violation of the Mail and Wire Fraud Statutes.

60.     The City of Lawrence was defrauded by one or more of these mailings and wire transactions as The City of Lawrence made certain reimbursement payments to Defendants based upon transactions which Defendants represented occurred within the Special Taxing District when in fact the transaction did not occur in the Special Taxing District.  Defendants also fraudulently represented that the transactions constituted retail sales when in fact the transactions between Oread Wholesale and its affiliated companies, individuals and other entities were a reimbursement.

61.     This pattern of mail and wire communication occurred over a five-year period and were all in furtherance of the tax rebate fraud scheme and the conspiracy by the conspirators to engage in a scheme to victimize not only the City of Lawrence but the citizens and taxpayers of Lawrence, Douglas County, Kansas.

62.     Each of the Defendants agreed to or were complicit with the tax rebate scheme, and also to further perpetuate it, through the three RICO enterprises:  Oread Inn L.C., Oread Wholesale L.C., and DFC Company of Lawrence L.C.   Defendant Fritzel and John Doe Defendants were in managerial positions in the RICO enterprises and directed subordinates, employees, agents, representatives and associates to participate in, further advance and perpetuate the tax rebate scheme, which those individuals in fact did.

15

63.     Accordingly, each Defendant agreed to participate in the affairs of one of the RICO enterprises through the commission of the tax rebate fraud scheme which constitutes a pattern of racketeering activity (mail and wire fraud).

64.     Thus, the City of Lawrence asserts claims against all RICO Defendants for conspiring to violate § 1962(c) which prohibits any person employed by or associated with an enterprise from participating in the affairs of the enterprise through a pattern of racketeering activity.

65.     This conspiracy to violate 18 U.S.C. § 1962(c) is a violation of 18 U.S.C. § 1962(d).

66.     As a result of the above-described racketeering activity, the City of Lawrence has been damaged in an amount no less than $400,000.

67.     These damages were directly and approximately caused by the conduct of the Defendants and their conduct.

68.     Pursuant to 18 U.S.C. § 1964(c), the City of Lawrence is entitled to recover three-fold its damages plus costs and attorneys' fees from the Defendants.

69.     Based upon information and belief, Defendant Oread Wholesale L.C. and likely other Defendants intentionally destroyed written materials relative to the sales tax rebate scheme in an effort to cover up, mislead and otherwise thwart efforts to document the existence and extent of the racketeering activity.

70.     Pursuant to 18 U.S.C. § 1964(a), the City of Lawrence is entitled to appropriate injunctive relief to prevent and restrain future RICO violations, including but not limited to an order by the Court (a) to require the immediate dissolution of the Redevelopment Agreement; (b) to require the immediate dissolution of Oread Inn L.C., Oread Wholesale L.C. and DFC

Company of Lawrence L.C.; (c) to require the individual Defendants to cease and desist all association with Oread Inn L.C., Oread Wholesale L.C. and DFC Company of Lawrence; (d) to require that the Defendants individually and corporately turn over any and all information, documents and materials relating to sales and sales transactions occurring from 2009 to the present, which were subject to or connected with a sales tax rebate certificate.

WHEREFORE, plaintiff the City of Lawrence, Kansas respectfully requests judgment in its favor and against Defendants in an amount that is fair and reasonable, for its cost and expenses incurred herein including attorney's fees, and for all other relief deemed necessary and proper by the Court.

<u>COUNT II: CIVIL RICO</u>
<u>(All Defendants)</u>

71.     The City of Lawrence incorporates by reference all of the allegations and averments set forth in paragraphs 1 through 70 of its Petition as though fully set forth herein.

72.     The conduct of the Defendants constitutes a group of persons associating formally and/or informally with the purpose of conducting illegal activity consisting of illegally and fraudulently obtaining tax rebates under the Redevelopment Agreement by submitting false and misleading sales tax returns, manufacturing sales within the Special Taxing District and improperly using sales tax exemption of Oread Wholesale.

73.     Predicate acts involving mail and wire fraud occurred repeatedly and included at least two acts of racketeering activity during the period of time from 2009 through 2015 following the commission of prior racketeering activity.  These predicate acts related to one another and demonstrated criminal conduct of an ongoing nature including but not limited to fraudulently obtaining tax rebates through the Redevelopment Agreement and/or transmitting

17

false invoices either via email, U.S. Mail or facsimile to create and manufacture sales within the Special Taxing District as described above.

74.     Defendants intentionally participated in a scheme to defraud the City of Lawrence of money through the tax rebate scheme described above and by manufacturing sales within the Special Taxing District to the detriment of the City of Lawrence, its taxpayers and the benefit of Defendants.

75.     Defendants utilized both the US Mail system and wire transfers in furtherance of the tax rebate scheme.

76.     Defendants received income derived both directly and indirectly from a pattern of racketeering activity through the operation of the tax rebate scheme.

77.     Defendants utilized income from the tax rebate scheme to invest, directly or indirectly, all or part of such income or the proceeds of such income in the establishment and operation of enterprises which were engaged in, and/or the activities of which affected interstate commerce.

78.     The City of Lawrence has been injured as a direct and proximate result of the Defendants' investment of racketeering income in the tax rebate scheme in enterprises, separate and apart from entry and damage caused by the predicate acts themselves.

79.     The City of Lawrence has been injured and damaged in an amount in excess of $400,000 and is entitled to treble damages together with the recovery of reasonable attorneys' fees and costs incurred.

WHEREFORE, plaintiff the City of Lawrence, Kansas respectfully requests judgment in its favor and against Defendants in an amount that is fair and reasonable, for its cost and

expenses incurred herein including attorney's fees, and for all other relief deemed necessary and proper by the Court.

## COUNT III: FRAUD
### (All Defendants)

80.     The City of Lawrence incorporates by reference all of the allegations and averments set forth in paragraphs 1 through 79 of its Petition as though fully set forth herein.

81.     Oread Wholesale submitted false and/or untrue representations made as a statement of existing and material fact as to the entitlement to tax rebates under the tax rebate scheme to the City of Lawrence. Oread Wholesale's false and/or untrue representations included but were not limited to:

        a.     transactions involving Oread Wholesale and its affiliated companies, individuals and other entities occurred within the Special Taxing District when in fact these transactions did not occur in the Special Taxing District;

        b.     that the transactions between Oread Wholesale and its affiliated companies, individuals and other entities constituted retail sales;

        c.     the Special Taxing District sales tax rate applied to the reimbursements sought by Oread Wholesale from its affiliated companies, individuals and other entities; and,

        d.     the filing of false and inaccurate sales tax returns by Defendant Oread Wholesale with the State of Kansas.

82.     At all relevant times, Oread Wholesale was acting in concert with and with the knowledge, consent and approval of the other Defendants in making the false and/or untrue representations to the City of Lawrence. Said representations were made for the financial benefit

of the other Defendants, in furtherance of the interests of all Defendants and as part of Defendants scheme to defraud the City of Lawrence.

83.     The representations made by Defendants were known to be false or untrue by the Defendants making them or were recklessly made without knowledge concerning those facts.

84.     The representations were intentionally made for the purpose of inducing the City of Lawrence to act upon those representations and provide tax rebates to Oread Inn under the Redevelopment Agreement.

85.     The City of Lawrence reasonably relied upon and acted upon the representations made by Defendants as to their entitlement to tax rebates, and the City of Lawrence did in fact make certain payments to Defendants based upon the false and untrue representations.

86.     Defendants made the representations knowing that the City of Lawrence would rely on the false or untrue representations in calculating the reimbursement due to Oread Inn under the Redevelopment Agreement.

87.     As a direct and proximate result of the conduct of Defendants, the City of Lawrence was damaged in an amount in excess of $400,000.

WHEREFORE, plaintiff the City of Lawrence, Kansas respectfully requests judgment in its favor and against Defendants in an amount that is fair and reasonable, for its cost and expenses incurred herein including attorney's fees, and for all other relief deemed necessary and proper by the Court.

## COUNT IV: AIDING AND ABETTING
### (All Defendants)

88.     The City of Lawrence incorporates by reference all of the allegations and averments set forth in paragraphs 1 through 87 of its Petition as though fully set forth herein.

20

89.     This Count is brought by the City of Lawrence against all Defendants alleging a cause of action for common law actual fraud, constructive fraud, aiding and abetting actual fraud and/or aiding and/or abetting constructive fraud under the common law of the State of Kansas.

90.     As set forth above, Defendants damaged the City of Lawrence through their fraudulent acts.

91.     As set forth above, Defendants aided and abetted the tax rebate fraud scheme because they knew of the scheme and because they provided substantial assistance as set forth above in carrying out the scheme.

92.     Each of the Defendants separately and all of the Defendants collectively are liable for all of the damages caused by their own respective fraudulent acts and as a result of their aiding and abetting the scheme, for all of the damages caused to the City of Lawrence by the scheme.

93.     As a direct and proximate result of the conduct of the Defendants, the City of Lawrence was damaged in an amount in excess of $400,000.

WHEREFORE, plaintiff the City of Lawrence, Kansas respectfully requests judgment in its favor and against Defendants in an amount that is fair and reasonable, for its cost and expenses incurred herein including attorney's fees, and for all other relief deemed necessary and proper by the Court.

## COUNT V: CIVIL CONSPIRACY
### (All Defendants)

94.     The City of Lawrence incorporates by reference all of the allegations and averments set forth in paragraphs 1 through 93 of its Petition as though fully set forth herein.

95.     As set forth above, Defendant Oread Wholesale submitted false and/or untrue representations made as a statement of existing and material fact as to the entitlement to tax

rebates under the tax rebate scheme. Defendant Oread Wholesale's false and/or untrue representations included but were not limited to the filing of false and untrue sales tax returns by Defendant Oread Wholesale with the State of Kansas, representations that certain transactions occurred within the Special Taxing District and representations that certain reimbursement from Oread Wholesale's its affiliated companies, individuals and other entities constituted retail sales.

96.     At all relevant times, Oread Wholesale, in submitting false and inaccurate sales tax returns to the State of Kansas, was acting in concert with and with the knowledge and consent of Fritzel, Oread Inn and DFC Company in claiming that certain transaction occurred within the Special Taxing District, constituted retail sales and that the tax rate from the Special Taxing District applied to the reimbursements sought by Oread Wholesale. Said representations were made for the financial benefit of the other Defendants and with the knowledge and/or consent of the other defendants.

97.     The representations by Oread Wholesale were made in furtherance of the scheme and object to be accomplished on behalf of all Defendants i.e., to induce the City of Lawrence to make certain payments to Oread Inn under the Redevelopment Agreement.

98.     The filing of the false and inaccurate sales tax returns, the representations that certain transactions occurred within the Special Taxing District and that the transactions constituted retail sales were unlawful overt acts in furtherance of this scheme and object.

99.     Each of the Defendants separately and all of the Defendants collectively are liable for all of the damages caused by their own respective fraudulent acts and as a result of their aiding and abetting the scheme, for all of the damages caused to the City of Lawrence by the scheme.

100. As a direct and proximate result of the conduct of the Defendants, the City of Lawrence was damaged in an amount in excess of $400,000.

WHEREFORE, plaintiff the City of Lawrence, Kansas respectfully requests judgment in its favor and against Defendants in an amount that is fair and reasonable, for its cost and expenses incurred herein including attorney's fees, and for all other relief deemed necessary and proper by the Court.

<h2 style="text-align:center;">COUNT VI: UNJUST ENRICHMENT<br>(Oread Inn and Fritzel)</h2>

101. The City of Lawrence incorporates by reference all of the allegations and averments set forth in paragraphs 1 through 100 of its Petition as though fully set forth herein.

102. Defendant Oread Inn and Thomas Fritzel, individually and collectively, obtained a benefit conferred upon them by the City of Lawrence in the form of improper and unjust tax rebates under the Redevelopment Agreement.

103. Defendants Oread Inn and Fritzel, individually and collectively, accepted and retained the benefit of unjust tax rebates under circumstances that make it inequitable for the Defendants to retain those benefits without returning the value of those benefits to the City of Lawrence.

104. As a direct and proximate result of the conduct of the Defendants, the City of Lawrence has been damaged in an amount in excess of $400,000.

WHEREFORE, plaintiff the City of Lawrence, Kansas respectfully requests judgment in its favor and against Defendants in an amount that is fair and reasonable, for its cost and expenses incurred herein including attorney's fees, and for all other relief deemed necessary and proper by the Court.

## COUNT VII: RESCISSION OF REDEVELOPMENT AGREEMENT
## (Oread Inn)

105.    The City of Lawrence incorporates by reference all of the allegations and averments set forth in paragraphs 1 through 104 of its Petition as though fully set forth herein.

106.    Oread Inn and the City of Lawrence entered into the Redevelopment Agreement whereby the City of Lawrence agreed to reimburse Oread Inn for certain Redevelopment Costs incurred by Oread Inn in conjunction with the construction of the Oread Inn and infrastructure improvements to be made under the terms of the Redevelopment Agreement.

107.    The reimbursement payments would be made from the property tax and sales tax revenues generated within the Redevelopment District as well as sale tax funds from the TDD.

108.    As discussed herein, Oread Inn conspired with and acted in concert with Oread Wholesale to manufacture sales within the Redevelopment District for purposes of increasing the reimbursement payments to be made by the City of Lawrence to Oread Inn under the Redevelopment Agreement.

109.    The tax rebate scheme in which Oread Inn participated either expressly or implicitly consisted of Oread Wholesale applying the special tax rate to transactions that did not occur in the Special Taxing District, claiming that reimbursement constituted "retail sales" within the Special Taxing District and the filing of false and inaccurate sales tax returns with the State of Kansas.

110.    The conduct of Oread Inn and its employees, agents, members, directors and representatives including but not limited to Fritzel and/or Oread Wholesale relating to the tax rebate scheme constitute a material breach of the Redevelopment Agreement.

24

111.   As a matter of equity, the City of Lawrence is entitled to rescind the Redevelopment Agreement so as to replace the parties in the position they were prior to the breach of the contract.

WHEREFORE, plaintiff the City of Lawrence, Kansas respectfully requests judgment in its favor and against Defendants in an amount that is fair and reasonable, for its cost and expenses incurred herein including attorney's fees, and for all other relief deemed necessary and proper by the Court.

### COUNT VIII: DECLARATORY JUDGMENT RELIEF
### (All Defendants)

112.   The City of Lawrence incorporates by reference all of the allegations and averments set forth in paragraphs 1 through 111 of its Petition as though fully set forth herein.

113.   K.S.A. 60-1701 et seq. authorizes this Court to "declare the rights of the parties and other legal relationships between parties."

114.   K.S.A. 60-1704 authorizes any person having an interest in a written contract or other writing which constitutes a contract to seek a determination of any question of the construction or validity arising under that agreement and to obtain a declaration of rights and legal relationships thereunder.

115.   K.S.A. 60-1705 authorizes this Court to construe a contract in the event of an actual or threatened breach of said contract.

116.   K.S.A. 60-1707 authorizes this Court to provide declaratory relief in circumstances which the judgment will terminate the controversy or remove an uncertainty.

117.   City of Lawrence seeks a declaration from this Court that:

        a.   Oread Inn has breached the terms and conditions of the Redevelopment Agreement in submitting false, fraudulent and untrue

requests for reimbursement of taxes that was not factually supported and failing to obtain and provide the City of Lawrence tax records and documents that Oread Wholesale used to prepare its original sales tax returns, failing to agree to allow an audit of Oread Inn, Oread Wholesale and/or other tenants or affiliated organizations who assisted in providing documentation for false or untrue requests for tax reimbursements and rebates and other material breaches of the agreement as will be identified during the course of discovery.

b.    A declaration that an implied term of the Redevelopment Agreement involves the right of the City of Lawrence to request audits from Oread Inn and its tenants as relates to requests for tax reimbursements or rebates under the Redevelopment Agreement.

c.    Oread Inn has breached its duty of good faith and/or fair dealing under the Redevelopment Agreement due to the fraudulent conduct of and misrepresentations by Oread Wholesale and/or Oread Inn.

d.    The City of Lawrence has the right and authority to terminate the Redevelopment Agreement with Oread Inn due to Oread Inn's breach of that agreement, breach of Oread Inn's duty of good faith and fair dealing under the terms of the Redevelopment Agreement and due to the fraudulent conduct of and misrepresentations by Oread Wholesale and Oread Inn.

e.    The Redevelopment Agreement between the City of Lawrence and Oread Inn is hereby terminated, void and/or voidable due to the fraudulent

26

conduct and misrepresentations described herein by Oread Inn and/or Oread Wholesale.

WHEREFORE, plaintiff the City of Lawrence, Kansas respectfully requests judgment in its favor and against Defendants, for its cost and expenses incurred herein including attorney's fees, and for all other relief deemed necessary and proper by the Court.

## COUNT IX: BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING
### (Oread Inn)

118.    The City of Lawrence incorporates by reference all of the allegations and averments set forth in paragraphs 1 through 117 of its Petition as though fully set forth herein.

119.    City of Lawrence and Oread Inn L.C. entered into a contractual agreement as evidenced in the Redevelopment Agreement.

120.    City of Lawrence did all, or substantially all, of the significant things that the contract required it to do.

121.    Oread Inn conspired with and acted in concert with Oread Wholesale to manufacture sales within the Redevelopment District for purposes of increasing the reimbursement payments to be made by the City of Lawrence to Oread Inn under the Redevelopment Agreement.

122.    The conduct of Oread Inn and its agents, employees, members, officers, directors and representatives violated and breached the covenant of good faith and fair dealing in the Redevelopment Agreement which interfered with the ability of the City of Lawrence to receive the benefits of the Redevelopment Agreement.

123.    City of Lawrence was damaged by the conduct of Oread Inn and its representatives in an amount in excess of $400,000.

27

WHEREFORE, plaintiff the City of Lawrence, Kansas respectfully requests judgment in its favor and against Defendants in an amount that is fair and reasonable, for its cost and expenses incurred herein including attorney's fees, and for all other relief deemed necessary and proper by the Court.

## COUNT X: INDEMNITY
### (Oread Inn)

124.   The City of Lawrence incorporates by reference all of the allegations and averments set forth in paragraphs 1 through 124 of its Petition as though fully set forth herein.

125.   Section 8.01 of the Redevelopment Agreement provides that the developer indemnify and hold the City of Lawrence harmless from and against any and all suits, claims, costs of defense, damages, injuries, liabilities, judgments, costs and /or expenses including court costs and attorneys' fees, resulting from, arising out of, or in any way connected with "The Developer's actions and undertaking in implementation of the Project Plan or this Agreement."

126.   The conduct of Oread Inn and its agents, employees, members, directors, officers and representatives has caused the City of Lawrence to incur costs, expenses, attorneys' fees and other damages regarding Oread Inn's implementation of the agreement in connection with the tax rebate scheme;

127.   As a direct and proximate result of the conduct of Oread Inn and its agents, employees, members, directors, officers and representatives, the City of Lawrence is entitled to reimbursement under Section 8.01 of the Redevelopment Agreement of all damages, costs, expenses, including court costs and attorneys' fees in connection with the developer's actions and undertaking in the implementation of this agreement as it relates to the tax rebate scheme.

WHEREFORE, plaintiff the City of Lawrence, Kansas respectfully requests judgment in its favor and against Defendants in an amount that is fair and reasonable, for its cost and

expenses incurred herein including attorney's fees, and for all other relief deemed necessary and proper by the Court.

## COUNT XI: TORTIOUS INTERFERENCE
### (Fritzel, Oread Wholesale, DFC Company and John Doe Defendants)

128.    The City of Lawrence incorporates by reference all of the allegations and averments set forth in paragraphs 1 through 127 of its Petition as though fully set forth herein.

129.    Defendants Fritzel, Oread Wholesale, DFC Company, and John Does 1-12, without justification induced or caused a breach of contract on or by Oread Inn in regards to the tax rebate scheme described herein.

130.    These Defendants induced or caused the breach of contract with knowledge of the terms and conditions of the Redevelopment Agreement.

131.    These Defendants intentionally procured the breach of the agreement between the City of Lawrence and Oread Inn in the absence of any justification or excuse.

132.    As a direct and proximate result of the conduct of these Defendants, City of Lawrence was damaged in an amount in excess of $400,000.

133.    For all the reasons set forth above, this Court should exercise its equitable powers and impose a constructive trust on the Defendants' assets in order.

WHEREFORE, plaintiff the City of Lawrence, Kansas respectfully requests judgment in its favor and against Defendants in an amount that is fair and reasonable, for its cost and expenses incurred herein including attorney's fees, and for all other relief deemed necessary and proper by the Court.

Respectfully submitted,

SANDERS WARREN & RUSSELL LLP

Bradley S. Russell,     KS #13734
William P. Denning,    KS #21560
40 Corporate Woods
9401 Indian Creek Parkway, Suite 1250
Overland Park, Kansas 66210
Telephone:    (913) 234-6100
Facsimile:    (913) 234-6199
b.russell@swrllp.com
w.denning@swrllp.com

and

Toni Ramirez Wheeler,   KS #18473
Randall F. Larkin,     KS #14184
City Hall
6 East 6th Street, Fourth Floor
Lawrence, Kansas 66044
Telephone:    (785) 832-3475
Facsimile:    (785) 832-3405
twheeler@lawrenceks.org
rlarkin@lawrenceks.org
**ATTORNEYS FOR PLAINTIFF**

**EXHIBIT B**

**LEGAL DESCRIPTION OF REDEVELOPMENT DISTRICT**

Beginning at the Intersection of the Centerline of Louisiana Street and the South Right-of-way line of West 12th Street (Hancock Street) in the Southeast Quarter (SE ¼) of Section 36, Township 12 South, Range 19 East of the Sixth Principal Meridian in the City of Lawrence, Douglas County, Kansas; thence West on the South Right-of-way line of West 12th Street (Hancock Street) extended to the Northeast Corner of Lot 1, Block 3, Oread Addition; thence continuing West on the South Right-of-way line of said West 12th Street (Hancock Street) to the Northwest corner of Lot 1, Block 3, Oread Addition; thence in a Southwesterly direction on the East Right-of-way line of Oread Avenue to the Northwest corner of the South One-half (S ½) of Lot 2, Block 3, Oread Addition; thence East on the North line of the South one-half (S ½) of said Lot 2 to the Northeast corner of the South One-half (S ½) of said Lot 2; thence South on the East line of said Block 3 Oread Addition to the Southeast corner of the North One-half (N ½) of Lot 4, Block 3 of Oread Addition; thence West on the South line of the North One-half (N ½) of Lot 4, Block 3 of Oread Addition to the Southwest corner of the North One-half (N ½) of Lot 4, Block 3 of Oread Addition and the East Right-of-way line of Oread Avenue; thence in a Southwesterly direction on the East Right-of-way line of Oread Avenue to the Southwest corner of Lot 6, of Oread Heights Addition, A Subdivision of Block 3, Oread Addition; thence continuing in a Southwesterly direction on the East Right-of-way line of Oread Avenue extended to the Centerline of 13th Street (Lee Street); thence West on the Centerline of said 13th Street (Lee Street) to the West Right-of-way line of Oread Avenue; thence in a Northeasterly direction on the West Right-of-way line of Oread Avenue to the Southeast corner of the North One-half (N ½) of Lot 2, Block 8 of Oread Addition; thence West on the South line of the North One-half (N ½) of Lot 2, Block 8 of Oread Addition to the Southwest corner of North One-half (N ½) of Lot 2, Block 8 of Oread Addition; thence North on the West line of the North One-half (N ½) of Lot 2, Block 8 of Oread Addition to the Southwest corner of Lot 1, Block 8 of Oread Addition; thence East on the South line of Lot 1, Block 8 of Oread Addition 180 feet; thence North parallel with the West line of Lot 1, Block 8 of Oread Addition to the South Right-of-way line of 12th Street (Hancock Street); thence West on the South Right-of-way line of 12th Street (Hancock Street) to the Northwest corner of Lot 12, Block 8 of Oread Addition and the East Right-of-way line of Mississippi Street; thence South on the East Right-of-way line of Mississippi Street to the Southwest corner of the North One-half (N ½) of Lot 10, Block 8 of Oread Addition; thence West on the South line of the North One-half (N ½) of Lot 10, Block 8 of Oread Addition projected

EXHIBIT

*A*

West, to the West Right-of-way line of Mississippi Street; thence North on the West Right-of-way line of Mississippi Street to the intersection of the North line of Lot 9, Block 9 of Oread Addition projected West; thence East on the North line of Lot 9, Block 9 of Oread Addition extended, to the Northwest corner of Lot 9, Block 9 of Oread Addition and the East Right-of-way line of Mississippi Street; thence South on the East Right-of-way line of Mississippi Street to the Southwest corner of Lot 7, Block 9 Oread Addition, and the North Right-of-way line of 12th Street (Hancock Street); thence East on the North Right-of-way line of 12th Street (Hancock Street) to the Southeast corner of Lot 6, Block 9 of Oread Addition and the West Right-of-way line of Indiana Street; thence North on the West Right-of-way line of Indiana Street to the Northeast corner of Lot 1, Block 9 of Oread Addition and the Southeast corner of Lot 3, Block 14, Lane's Second Addition; thence continuing North on the West Right-of-way line of Indiana Street to the Northeast corner of Lot 1, Block 14, Lane's Second Addition and the South Right-of-way line of 11th Street (Quincy Street); thence West on the South Right-of-way line of 11th Street (Quincy Street) to the intersection of the East line of Lots 13 thru 24, Block 13, Lane's Second Addition projected South; thence North on the East line of Lots 13 thru 24, Block 13, Lane's Second Addition extended, to the Southeast corner of Lot 13, Block 13, Lane's Second Addition and the North Right-of-way line of 11th Street (Quincy Street); thence North on the East line of Lots 13 thru 24, Block 13, Lane's Second Addition to the Northeast corner of Lot 24, Block 13, Lane's Second Addition and the South Right-of-way line of 10th Street (Berkeley Street); thence continuing North on the East line of Lots 13 thru 24, Block 13, Lane's Second Addition projected North to the Southeast corner of Lot 15, Block 11 Lane's Second Addition; thence North on the East line of Lots 15 thru 23, Block 11, Lane's Second Addition to the Northeast corner of Lot 23, Block 11, Lane's Second Addition; thence North on the East line of Lots 15 thru 23, Block 11, Lane's Second Addition projected North, to the South line of Lot 3, Block 11, Lane's Second Addition; thence East on the South line of Lot 3, Block 11, Lane's Second Addition to the intersection of the West line of  Lots 6 thru 14, Block 11, Lane's Second Addition projected North; thence South on the West line of Lots 6 thru 14, Block 11, Lane's Second Addition extended, to the Northwest corner of Lot 6, Block 11, Lane's Second Addition; thence South on the West line of Lots 6 thru 14, Block 11, Lane's Second Addition to the Southwest corner of Lot 14, Block 11, Lane's Second Addition and the North Right-of-way line of 10th Street (Berkeley Street); thence South on the West line of Lots 6 thru 14, Block 11, Lane's Second Addition extended, to the Northwest corner of Lot 1, Block 13, Lane's Second Addition, and the South Right-of-way line of 10th Street (Berkeley Street); thence South on the West line of Lots 1 thru 12, Block 13, Lane's Second Addition to the Southwest corner of Lot 12, Block 13 Lane's

Second Addition and the North Right-of-way line of 11th Street (Quincy Street); thence East on the South line of Lot 12, Block 13, Lane's Second Addition and the North Right-of-way line of 11th Street (Quincy Street) to the Southeast corner of Lot 12, Block 13 Lane's Second Addition; thence continuing East on the North Right-of-way line of 11th Street (Quincy Street) extended to the Southwest corner of University Park (Northeast corner of 11th Street (Quincy Street) and Indiana Street); thence South on the East Right-of-way line of Indiana Street projected North from Block 15, Lane's Second Addition to the Northwest corner of Lot 6, Block 15, Lane's Second Addition; thence South on the East Right-of-way line of Indiana Street to the Southwest corner of Lot 4, Block 15, Lane's Second Addition and the Northwest corner of Lot 12, Block 2, Oread Addition; thence continuing South on the East Right-of-way line of Indiana Street to the Northwest corner of the South 55 feet of Lot 10, Block 2, Oread Addition; thence East on the North line of the South 55 feet of Lot 10, Block 2, Oread Addition to the Northeast corner of the South 55 feet of Lot 10, Block 2, Oread Addition and the Northwest corner of the South 55 feet of Lot 3, Block 2, Oread Addition; thence continuing East on the North line of the South 55 feet of Lot 3, Block 2, Oread Addition to the Northeast corner of the South 55 feet of Lot 3, Block 2, Oread Addition; thence South on the East line of Lots 3, and 4, Block 2, Oread Addition to the Southeast corner of the North 65 feet of Lot 4, Block 2, Oread Addition; thence West on the South line of the North 65 feet of Lot 4, Block 2, Oread Addition to the Southwest corner of the North 65 feet of Lot 4, Block 2 Oread Addition and the East line of Lots 9, 8, and 7, Block 2, Oread Addition; thence South on the East line of Lots 9, 8 and 7, Block 2, Oread Addition to the Southeast corner of Lot 7, Block 2, Oread Addition and the North Right-of-way line of 12th Street (Hancock Street); thence East on the North Right-of-way line of 12th Street (Hancock Street) to the Southeast corner of Lot 6, Block 2, Oread Addition; thence continuing East on the North Right-of-way line of 12th Street (Hancock Street) extended to the Centerline of Louisiana Street; thence South on the Centerline of Louisiana Street to the Point of Beginning; Containing 8.51 Acres more or less all in the City of Lawrence, Douglas County, Kansas.

**EXHIBIT A**

**MAP OF REDEVELOPMENT DISTRICT
AND PROJECT AREA**

## 12th and Oread TIF Redevelopment District Boundary





ORDINANCE NO. 8254

AN ORDINANCE AUTHORIZING THE CREATION OF TRANSPORTATION DEVELOPMENT DISTRICT IN LAWRENCE, KANSAS; AUTHORIZING THE MAKING OF CERTAIN TRANSPORTATION PROJECT IMPROVEMENTS RELATING THERETO; APPROVING THE ESTIMATED COSTS OF SUCH TRANSPORTATION PROJECT IMPROVEMENTS; PROVIDING FOR THE METHOD OF FINANCING; AUTHORIZING THE IMPOSITION OF A TRANSPORTATION DISTRICT SALES TAX WITHIN THE TRANSPORTATION DEVELOPMENT DISTRICT IN LAWRENCE, KANSAS; ESTABLISHING A METHOD OF COLLECTION OF SUCH SALES TAX; AND PROVIDING FOR THE SEGREGATION OF SUCH SALES TAX REVENUES FOR THE PAYMENT OF THE COSTS OF CERTAIN TRANSPORTATION PROJECTS WITHIN TRANSPORTATION DEVELOPMENT DISTRICT

WHEREAS, K.S.A. 12-17,140 *et. seq.* (the "Act") authorizes the governing body of any city or county to create transportation development districts ("Transportation Districts") within such jurisdiction, to acquire interests in property and to construct any project or undertaking therein to improve any bridge, street, road, highway access road, interchange, intersection, signing, signalization, parking lot, bus stop, station, garage, terminal, hangar, shelter, rest area, dock, wharf, lake or river port, airport, railroad, light rail or other mass transit facility and any similar or related project or infrastructure including, but not limited to, utility relocation; sanitary and storm sewers and lift stations; drainage conduits, channels and levees; streetlight fixtures, connection and facilities; underground gas, water, heating and electrical services and connections located within or without the public-right-of-way; sidewalks and pedestrian underpasses or overpasses; and water main and extensions; and including a building facade but only when part of remodeling, repairing, enlarging or reconstructing an existing building (collectively, "Transportation Projects"); and

WHEREAS, the Act further authorizes said governing body, in order to pay the costs of such Transportation Projects, to levy a transportation district sales tax on the selling of tangible personal property at retail or rendering or furnishing services taxable pursuant to the Kansas retailer's sales tax act within Transportation Districts in any increment of .10% or .25% not to exceed 1.0% and/or the levy of special assessments upon property within such Transportation Districts, and to issue revenue bonds payable from such sales taxes and/or special assessments; and

WHEREAS, a petition (the "TDD Petition") was filed with the City Clerk on February 19, 2008 of the City of Lawrence, Kansas (the "City"), proposing the creation of a Transportation District, the making of Transportation Projects therein and the imposition of a transportation district sales tax in order to pay the costs of such Transportation Projects; and

WHEREAS, the TDD Petition was signed by the owners of record, whether resident or not, of all of the land area within the proposed Transportation District; and

WHEREAS, the Act provides that prior to creating any transportation district, the governing body shall, by resolution, direct and order a public hearing on the advisability of creating such transportation district and the construction of such transportation projects therein, and to give notice of the hearing by publication at least once each week for two consecutive weeks in the official City newspaper and by certified mail to all property owners within the proposed transportation district, the second publication to be at least seven days prior to the hearing and such certified mail sent at least ten days prior to such hearing; and

WHEREAS, the Governing Body adopted Resolution No. 6756 on February 26, 2008 directing that a public hearing on the proposed transportation district within the City be held on April 1, 2008, declaring its intent to impose a transportation development district sales tax, and requiring that the City Clerk provide for notice of such public hearing as set forth in the Act; and

WHEREAS, a Notice of Public Hearing containing the following information: (a) the time and place of the hearing; (b) the general nature of the proposed Transportation Projects; (c) the maximum cost of the



proposed Transportation Projects; (d) the proposed amount of the transportation development district sales tax; (e) the proposed amount of any special assessments and the method of assessment; and (f) the map or boundary description of the proposed Transportation District, was mailed (by certified mail) to all property owners within the proposed Transportation District on March 5, 2008, and published once each week for two consecutive weeks in the *Lawrence Journal-World*, the official City newspaper, on March 14, 2008 and March 21, 2008; and

WHEREAS, on April 1, 2008 the Governing Body conducted a public hearing on the proposed Transportation Districts, the proposed Transportation Projects, the estimated costs thereof, the method of financing the same and the imposition of the transportation district sales tax; and

WHEREAS, the governing body hereby finds and determines it to be advisable to create a transportation district and set forth the boundaries thereof, authorize transportation projects relating thereto, approve the estimated costs of such transportation projects, approve the method of financing the same and impose the transportation district sales tax, all in accordance with the provisions of the Act.

NOW, THEREFORE, BE IT ORDAINED BY THE GOVERNING BODY OF THE CITY OF LAWRENCE, KANSAS, AS FOLLOWS:

SECTION 1.  Creation of Transportation Development District; Boundaries.  The governing body of the City hereby finds and determines that it is advisable to create, in accordance with the provisions of the Act, a Transportation Development District within the City to be known as the Oread Transportation Development District ("Transportation District").

The legal description of the property contained in the Transportation District is set forth on **Exhibit A** attached hereto and incorporated by reference herein.  A map generally outlining the boundaries of the Transportation District is attached as **Exhibit B** hereto and incorporate herein by reference.

SECTION 2.  Authorization of Transportation District Projects; Estimated Costs.  The governing body of the City hereby finds and determines that it is advisable to authorize certain transportation district projects (the "Projects") within the Transportation District, as more fully described on **Exhibit C** attached hereto and incorporated by reference.  The estimated costs of the Projects are $11,000,000.

SECTION 3.  Method of Financing.

(a)     In order to provide funds to finance the costs of the Projects, it is advisable to impose, in accordance the provisions of the Act, a transportation district sales tax within the Transportation District in the amount of 1.0% on the selling of tangible personal property at retail or rendering or furnishing services within the Transportation District (the "Sales Tax").

(b)     There will be no special assessments levied on property within the boundaries of the Transportation District.

(c)     The costs of the Projects will be financed on a pay as you go basis solely from the revenues generated from the Sales Tax to be imposed on the selling of tangible personal property at retail or rendering or furnishing services within the Transportation District.

SECTION 4.  Imposition of Transportation District Sales Tax.  In order to provide for the payment of the Projects the governing body of the City Government hereby imposes the Sales Tax within the Transportation District in an amount of 1.0% on the selling of tangible personal property at retail or rendering or furnishing services taxable pursuant to the provisions of the Kansas retailers' sales tax act within the Transportation District with such Sales Tax to commence on October 1, 2009.

SECTION 5.  **Collection of the Sales Tax.**  The collection of the Sales Tax shall be made in the manner prescribed by the Act.

SECTION 6.  **Segregation of Sales Tax Revenues.**  All revenues derived from the collection of the Sales Tax shall be deposited into a special fund of the City to be designated as the Oread Transportation District Sales Tax Revenue Fund (the "Revenue Fund").  Such revenues shall be used to pay the costs of the Projects and related expenses.

SECTION 6.  **Effective Date.**  This Ordinance shall take effect and be in full force from and after its passage by the Governing Body of the City and publication in the official City newspaper.

PASSED by the Governing Body of the City this 8th day of April, 2008.

SIGNED by the Mayor this 8th day of April, 2008.

Michael Dever, Mayor

(SEAL)

Frank S. Reeb, City Clerk

APPROVED AS TO FORM AND LEGALITY:

Toni Ramirez Wheeler, Director of Legal Services

EXHIBIT A

LEGAL DESCRIPTION OF TRANSPORTATION DEVELOPMENT DISTRICT

The following property located in Douglas County, Lawrence, Kansas:

North 40 feet of Lot 8 and the South 60 feet of Lot 9, Block 2, Oread Addition;

The West Seventy (70) feet of Lot Seven (7), in Block Two (2), Oread Addition, an Addition to the City of Lawrence, Douglas County, Kansas;

The South 60 feet of the West 70 feet of Lot 8, Block 2, in Oread Addition, a subdivision in the City of Lawrence, Douglas County, Kansas;

AND

The East 55 feet of Lot 7 and the East 55 feet of the South 60 feet of Lot 8, all in Block 2, in Oread Addition in the City of Lawrence, Douglas County, Kansas.

## EXHIBIT B

### TRANSPORTATION DEVELOPMENT DISTRICT MAP



EXHIBIT C

TRANSPORTATION DEVELOPMENT DISTRICT PROJECTS
FOR OREAD TDD

The Project generally consists of the construction of street improvements to Oread Avenue, upgraded sidewalks and pedestrian ways, repairs to 12th Street, intersection improvements, signing, signalization, an underground parking facility, streetscapes, sanitary and storm sewer improvements, street light fixtures, underground gas, water, heating and electrical services and connections, and water main extensions, and all other necessary and related projects as permitted by the Act.

RECEIVED

FEB 22 2008

CITY CLERK
LAWRENCE, KANSAS

# THE OREAD REDEVELOPMENT TAX INCREMENT FINANCING PROJECT

## Redevelopment Project Plan
### Lawrence, Kansas
*02-22-2008*



EXHIBIT

D

## Summary of Exhibits

Exhibit A:     Resolution No. 6749

Exhibit B:     Ordinance No. 8234

Exhibit C:     Illustration of TIF District Area

Exhibit D:     Illustration and Description of TIF Project Buildings and Structures

Exhibit E:     Pre-Design Public and Private Infrastructure Construction Cost Extimates

Exhibit F:     Feasibility Study

## THE OREAD TAX INCREMENT FINANCING PROJECT
### Redevelopment Project Plan

This **DRAFT** Redevelopment Project Plan (the "**Plan**) is the working draft of the "redevelopment project plan" required by K.S.A. 12-1772(a). This Plan pertains to The Oread Redevelopment Project (the "**Project**"). The Project consists of a hotel, meeting space and commercial uses known as "**The Oread,**" an underground parking facility, public and private infrastructure improvements, landscaping, and related improvements. This Plan describes how the Project will utilize tax increment financing ("**TIF**") to finance or reimburse "redevelopment project costs" incurred during the redevelopment of the Project, as such costs are defined in K.S.A. 12-1770 et seq. (the "**TIF Act**"). This Plan is intended to be the basis for a redevelopment agreement (the "**Redevelopment Agreement**") between the Triple T, LCC, the Developer of the Project (the " Developer") and the City of Lawrence, Kansas (the "City").

## I.    Oread Project Procedural History and General Information.

On November 30, 2007, the City and the Developer executed a Funding Agreement between Developer and the City of Lawrence to finance the costs of a feasibility study and the City's attorneys' fees. On January 8, 2008, the City Commission approved Resolution 6749 (the "**Resolution**"), which scheduled a public hearing on February 12, 2008 to consider the formation of a TIF district for the Project Area, defined below. A copy of the Resolution is attached to and incorporated in this Plan as Exhibit A. The Resolution was published as required by the TIF Act.

On February 12, 2008, the City Commission held and closed a public hearing to consider the formation of the District, and approved on first reading Ordinance 8234 (the "**Ordinance**") establishing the District. The Ordinance was passed on second reading February 19, 2008. The term "**District Area**" refers to the real property generally located at 12th Street and Oread Avenue, as legally described in the Ordinance. The Ordinance is attached to and incorporated in this Plan as Exhibit B. An illustration and legal description of the District Area is attached to and incorporated in this Plan as Exhibit C. The Ordinance included a description of the district plan and found that the District was an eligible area, all in accordance with the TIF Act.

## II.    Project Buildings, Facilities and Improvements.

The "**Project Area**" consists of all improvements generally described below and illustrated in Exhibit D, attached to and, by reference, incorporated in this Plan. The Project Area consists of the future site of The Oread, public right-of-ways along portions of 12th Street, Indiana Street, Oread Avenue, 11th Street, Mississippi Street, and an alley between Mississippi Street and Indiana Street. Additionally, the Project Area includes a tract owned by the City that contains two water towers. Each of the above-referenced properties and right-of-ways will be improved in some manner in connection with the Project. The only portions of the District Area that will not be improved in connection with the Project are the properties located at 1201 Oread Avenue (the Oread Apartments), 1209 Oread Avenue (a single-family residence), and 1121 Louisiana (Carson Place Apartments). While some utility work may occur at 1121 Louisiana to facilitate the Project, these properties are located in the District Area in anticipation of potential future development phases.

A.     **Buildings and Structures.**

The Oread will be a multi-use structure consisting of approximately 106 rooms and associated mixed use commercial spaces. These rooms include approximately 92 hotel rooms and extended stay suites, and approximately 14 condominiums. The structure will include ancillary uses such as meeting and conference rooms, banquet rooms, restaurant space, and bar space.   Additional commercial uses may consist of a bank, retail stores, and other similar commercial uses allowed by the City of Lawrence. The structure will consist of approximately 116,000 square feet.

In addition to The Oread, the Project also includes an underground parking structure facility consisting of approximately 200 parking spaces. As shown on Exhibit E, this structure will cost approximately $6,600,000.00.

B.     **Infrastructure Improvements.**

The Project will also include various public infrastructure improvements.   The vast majority of these infrastructure improvements are not necessitated by the Project. For example, while certain existing utilities require updating to service The Oread, all of the improvements are intended to enhance both the Project and the adjacent neighborhood, and to minimize harm to nearby historic properties. The following are the planned public infrastructure improvements to be constructed in connection with the Project, as described on the preliminary cost estimates attached to and, by reference, incorporated in this Plan as Exhibit E:

- Realignment of Oread Avenue and addition of divided medians, a roundabout, and related street landscaping;
- Street improvements to 12th Street located West of Oread Avenue;
- Street improvements on Indiana Street;
- Sidewalk and pedestrian crossing improvements to Oread Avenue, 12th Street, and Indiana Street;
- Grading and site preparation within the public right of way;
- Landscaping and plantings, benches, sculptures, lighting, decorations, and similar amenities;
- Construction of new pedestrian ways connecting 12th Street to Mississippi Street; and
- Public water and sanitary and storm sewer improvements.

C.     **Construction of Project Improvements.**

The construction of the public and private infrastructure improvements described above will occur simultaneously with the construction of The Oread.  Consequently, there must be close cooperation and coordination between the construction of those improvements, especially with respect to timing and the efficient use of machinery on-site. The Developer will finance and construct the public and private improvements, subject to normal City approval and

specifications, as part of the construction of The Oread.   Occupancy of the The Oread shall not occur until substantial completion of the public improvements.

## III.   Summary of Oread Project Feasibility Study.

Pursuant to the Funding Agreement approved by the City Commission on November 30, 2007, the City retained Springsted Incorporated to perform the feasibility study required by the TIF Act.   A copy of the Redevelopment Project Financial Feasibility Study (the "Feasibility Study") is attached to and, by reference, incorporated in this Plan as Exhibit F. The Feasibility Study concludes that the Project is feasible. As described more specifically in Exhibit F, the Feasibility Study estimates that total TIF revenues over the term of the Project will be $5,001,787.00.   In combination with TDD revenues, which are anticipated to contribute approximately $917,095.00 to the payment of certain TIF-eligible expenses, and the Developer's own contributions of equity and private indebtedness, there are sufficient funds to permit the use of tax increment financing.

## IV.   Proposed Financing Methods.

Tax increment financing will be used to finance or reimburse redevelopment project costs as follows:

1.   Subject to the TIF Cap described in paragraph 5., below, all redevelopment project costs, including interest thereon (not to exceed the rate of prime plus 1%), will be eligible for reimbursement to the fullest extent permitted by Kansas and federal law.

2.   The following funds will be collected for a period of twenty (20) years and held in accordance with the TIF Act:

   a.   All incremental real property taxes assessed on The Oread during the term of the TIF Project;

   b.   All incremental real property taxes assessed on the remaining portions of the District, to the extent the increases in real property taxes are caused by the improvements described in this Plan or other activities that do not constitute a new project;

      i.   Any increases in real property taxes caused by a new project will not be included in the TIF fund without the City's approval; and

   c.   All City and Douglas County, Kansas sales taxes paid in the District during the term of the TIF Project.

3.   The Developer has elected to utilize the direct reimbursement method, and will privately finance all public and private improvements described in this Plan.

4.   The City shall have the right to inspect such public improvements for compliance with the City Code, etc.

5.   To the extent that the TIF Fund has available tax increment, the City shall reimburse all of the Developer's eligible expenses until all such expenses have been reimbursed, or twenty (20) years, whichever first occurs. Notwithstanding the previous sentence, there shall be a limitation on the reimbursement of the Developer's eligible expenditures (the "TIF Cap"), as follows:

   a.   Except to reimburse the City's expenses as described in paragraph 7., below, all tax increment shall be available to reimburse up to $7,100,000.00 of the Developer's redevelopment project costs, plus interest thereon (not to exceed the rate of prime plus one percent) (the "Cap Amount"); and

   b.   After the reimbursement of the Cap Amount, any additional TIF revenue shall be allocated 50% to the City, and 50% to the Developer, but in no event shall the reimbursements to the Developer exceed the Developer's actual redevelopment project costs plus interest thereon (not to exceed the rate of prime plus 1%).

6.   Eligible expenses incurred by the Developer prior to the formation of the District shall be eligible for reimbursement.

7.   The City will be entitled to reimbursement for all of the City's actual and adequately documented expenses, including the City's reasonable attorneys' fees.

8.   All revenues from an additional one percent (1%) sales tax charged by the Project pursuant to a Transportation Development District (the "TDD") affecting a portion of the Project Area, will be held in the appropriate account in accordance with K.S.A. 12-17,140 et seq.

   This Plan does not contain a relocation assistance plan described in K.S.A. 12-1772(a)(4), because the City will not acquire any real property in the District while carrying out the provisions of the TIF Act. Furthermore, no residential tenants presently occupy any portion of the structures that will be demolished in connection with the Project.

## V.   Conclusion.

   The Project will create approximately 116,000 square feet of new development in Lawrence, which will generate approximately $5,001,787.00 in increased real estate and local sales taxes during the twenty (20) year lifespan of the Project. The TDD sales tax will generate an estimated $917,095.00 in revenue that can be used to reimburse TDD eligible expenses. There will be approximately $11,000,000.00 in redevelopment project costs required to construct the Project. Direct reimbursement from the TIF fund will reimburse redevelopment project costs

to the extent tax increment is available, subject to the TIF Cap.  The balance of any unpaid redevelopment project costs will be paid for by Developer.

<u>Exhibit A:</u>      <u>Resolution No. 6749</u>

RESOLUTION NO. 6749

A RESOLUTION OF THE GOVERNING BODY OF THE CITY OF
LAWRENCE, KANSAS ESTABLISHING THE DATE AND TIME OF A
PUBLIC HEARING REGARDING THE ESTABLISHMENT OF A
REDEVELOPMENT DISTRICT PURSUANT TO K.S.A. 12-1770 ET SEQ.
FOR THE 12TH & OREAD PROJECT

BE IT RESOLVED BY THE GOVERNING BODY OF THE CITY OF LAWRENCE,
KANSAS:

   Section 1.    The City of Lawrence, Kansas (the "City") is considering the
establishment of a redevelopment district pursuant to K.S.A. 12-1770 et seq., as amended (the
"Act").

   Section 2.    Notice is hereby given that a public hearing will be held by the City to
consider establishment of a redevelopment district on February 12, 2008 in the City Commission
Chambers located in City Hall, 6 East 6th Street, commencing at 6:35 p.m..

   Section 3.    The proposed redevelopment district boundaries are irregular and extend
from 13th Street on the South to approximately 9th Street on the North and Mississippi on the
West and Louisiana on the East. A map of the redevelopment district is attached hereto as
Exhibit A. The boundaries of the redevelopment district are legally described as shown on
Exhibit B hereto.

   Section 4.    The district plan for the proposed redevelopment district provides for the
redevelopment district to include One project area, which is depicted on the map attached hereto
as Exhibit A. The buildings and facilities to be constructed within the one project area are
generally described as follows:

      A multi-use structure consisting of approximately 106 rooms and associated commercial
      spaces. These rooms include approximately 92 hotel rooms and extended stay suites, and
      approximately 14 condominiums. The structure will include ancillary uses such as
      meeting and conference rooms, banquet rooms, restaurant space, and bar space.
      Additional commercial uses may consist of a bank, retail stores, and other similar
      commercial uses allowed by the City of Lawrence. The structure will consist of
      approximately 116,000 square feet and will be seven stories tall. The structure shall
      include an underground parking facility consisting of approximately 200 spaces.  The
      redevelopment will also include public infrastructure improvements including without
      limitation improvements to Oread Avenue, 12th Street, pedestrian access, utilities,
      landscaping, and other related improvements.

   Section 5.    A description and map of the proposed redevelopment district are available
for inspection and copying in the offices of the City Clerk, City Hall, 6 East 6th Street, Lawrence,
Kansas, Monday through Friday (other than holidays) between 8:00 a.m. and 5:00 p.m.

   Section 6.    The Governing Body will consider the findings necessary for the
establishment of a redevelopment district after conclusion of the public hearing.

Section 7.    The City Clerk is hereby authorized and directed to publish this resolution once in the official city newspaper not less than one week or more than two weeks preceding February 12, 2008, the date set for the public hearing. The City Clerk is also authorized and directed to mail a copy of this resolution via certified mail, return receipt requested to the board of county commissioners, the board of education of any school district levying taxes on property within the proposed redevelopment district, and to each owner and occupant of land within the proposed redevelopment district, not more than 10 days following the date of the adoption of this Resolution.

Section 8.    This Resolution shall become effective upon its adoption by the Governing Body.

ADOPTED by the Governing Body this January 8, 2008.

SIGNED by the Mayor this January 8, 2008.


_____
Mayor

(SEAL)

_____
City Clerk

EXHIBIT A
## 12th and Oread TIF Redevelopment District Boundary



## EXHIBIT B

## LEGAL DESCRIPTION OF REDEVELOPMENT DISTRICT

Beginning at the Intersection of the Centerline of Louisiana Street and the South Right-of-way line of West 12th Street (Hancock Street) in the Southeast Quarter (SE ¼) of Section 36, Township 12 South, Range 19 East of the Sixth Principal Meridian in the City of Lawrence, Douglas County, Kansas; thence West on the South Right-of-way line of West 12th Street (Hancock Street) extended to the Northeast Corner of Lot 1, Block 3, Oread Addition; thence continuing West on the South Right-of-way line of said West 12th Street (Hancock Street) to the Northwest corner of Lot 1, Block 3, Oread Addition; thence in a Southwesterly direction on the East Right-of-way line of Oread Avenue to the Northwest corner of the South One-half (S ½) of Lot 2, Block 3, Oread Addition; thence East on the North line of the South one-half (S ½) of said Lot 2 to the Northeast corner of the South One-half (S ½) of said Lot 2; thence South on the East line of said Block 3 Oread Addition to the Southeast corner of the North One-half (N ½) of Lot 4, Block 3 of Oread Addition; thence West on the South line of the North One-half (N ½) of Lot 4, Block 3 of Oread Addition to the Southwest corner of the North One-half (N ½) of Lot 4, Block 3 of Oread Addition and the East Right-of-way line of Oread Avenue; thence in a Southwesterly direction on the East Right-of-way line of Oread Avenue to the Southwest corner of Lot 6, of Oread Heights Addition, A Subdivision of Block 3, Oread Addition; thence continuing in a Southwesterly direction on the East Right-of-way line of Oread Avenue extended to the Centerline of 13th Street (Lee Street); thence West on the Centerline of said 13th Street (Lee Street) to the West Right-of-way line of Oread Avenue; thence in a Northeasterly direction on the West Right-of-way line of Oread Avenue to the Southeast corner of the North One-half (N ½) of Lot 2, Block 8 of Oread Addition; thence West on the South line of the North One-half (N ½) of Lot 2, Block 8 of Oread Addition to the Southwest corner of North One-half (N ½) of Lot 2, Block 8 of Oread Addition; thence North on the West line of the North One-half (N ½) of Lot 2, Block 8 of Oread Addition to the Southwest corner of Lot 1, Block 8 of Oread Addition; thence East on the South line of Lot 1, Block 8 of Oread Addition 180 feet; thence North parallel with the West line of Lot 1, Block 8 of Oread Addition to the South Right-of-way line of 12th Street (Hancock Street); thence West on the South Right-of-way line of 12th Street (Hancock Street) to the Northwest corner of Lot 12, Block 8 of Oread Addition and the East Right-of-way line of Mississippi Street; thence South on the East Right-of-way line of Mississippi Street to the Southwest corner of the North One-half (N ½) of Lot 10, Block 8 of Oread Addition; thence West on the South line of the North One-half (N ½) of Lot 10, Block 8 of Oread Addition projected West, to the West Right-of-way line of Mississippi Street; thence North on the West Right-of-way line of Mississippi Street to the intersection of the North line of Lot 9, Block 9 of Oread Addition projected West; thence East on the North line of Lot 9, Block 9 of Oread Addition extended, to the Northwest corner of Lot 9, Block 9 of Oread Addition and the East Right-of-way line of Mississippi Street; thence South on the East Right-of-way line of Mississippi Street to the Southwest corner of Lot 7, Block 9 Oread Addition, and the

North Right-of-way line of 12th Street (Hancock Street); thence East on the North Right-of-way line of 12th Street (Hancock Street) to the Southeast corner of Lot 6, Block 9 of Oread Addition and the West Right-of-way line of Indiana Street; thence North on the West Right-of-way line of Indiana Street to the Northeast corner of Lot 1, Block 9 of Oread Addition and the Southeast corner of Lot 3, Block 14, Lane's Second Addition; thence continuing North on the West Right-of-way line of Indiana Street to the Northeast corner of Lot 1, Block 14, Lane's Second Addition and the South Right-of-way line of 11th Street (Quincy Street); thence West on the South Right-of-way line of 11th Street (Quincy Street) to the intersection of the East line of Lots 13 thru 24, Block 13, Lane's Second Addition projected South; thence North on the East line of Lots 13 thru 24, Block 13, Lane's Second Addition extended, to the Southeast corner of Lot 13, Block 13, Lane's Second Addition and the North Right-of-way line of 11th Street (Quincy Street); thence North on the East line of Lots 13 thru 24, Block 13, Lane's Second Addition to the Northeast corner of Lot 24, Block 13, Lane's Second Addition and the South Right-of-way line of 10th Street (Berkeley Street); thence continuing North on the East line of Lots 13 thru 24, Block 13, Lane's Second Addition projected North to the Southeast corner of Lot 15, Block 11 Lane's Second Addition; thence North on the East line of Lots 15 thru 23, Block 11, Lane's Second Addition to the Northeast corner of Lot 23, Block 11, Lane's Second Addition; thence North on the East line of Lots 15 thru 23, Block 11, Lane's Second Addition projected North, to the South line of Lot 3, Block 11, Lane's Second Addition; thence East on the South line of Lot 3, Block 11, Lane's Second Addition to the intersection of the West line of Lots 6 thru 14, Block 11, Lane's Second Addition projected North; thence South on the West line of Lots 6 thru 14, Block 11, Lane's Second Addition extended, to the Northwest corner of Lot 6, Block 11, Lane's Second Addition; thence South on the West line of Lots 6 thru 14, Block 11, Lane's Second Addition to the Southwest corner of Lot 14, Block 11, Lane's Second Addition and the North Right-of-way line of 10th Street (Berkeley Street); thence South on the West line of Lots 6 thru 14, Block 11, Lane's Second Addition extended, to the Northwest corner of Lot 1, Block 13, Lane's Second Addition, and the South Right-of-way line of 10th Street (Berkeley Street); thence South on the West line of Lots 1 thru 12, Block 13, Lane's Second Addition to the Southwest corner of Lot 12, Block 13 Lane's Second Addition and the North Right-of-way line of 11th Street (Quincy Street); thence East on the South line of Lot 12, Block 13, Lane's Second Addition and the North Right-of-way line of 11th Street (Quincy Street) to the Southeast corner of Lot 12, Block 13 Lane's Second Addition; thence continuing East on the North Right-of-way line of 11th Street (Quincy Street) extended to the Southwest corner of University Park (Northeast corner of 11th Street (Quincy Street) and Indiana Street); thence South on the East Right-of-way line of Indiana Street projected North from Block 15, Lane's Second Addition to the Northwest corner of Lot 6, Block 15, Lane's Second Addition; thence South on the East Right-of-way line of Indiana Street to the Southwest corner of Lot 4, Block 15, Lane's Second Addition and the Northwest corner of Lot 12, Block 2, Oread Addition; thence continuing South on the East Right-of-way line of Indiana Street to the Northwest corner of the South 60 feet of Lot 9, Block 2, Oread Addition; thence East on the North line of the South 60 feet of Lot 9, Block 2, Oread

Addition to the Northeast corner of the South 60 feet of Lot 9, Block 2, Oread Addition; thence South on the East line of Lots 9, 8, and 7, Block 2, Oread Addition to the Southeast corner of Lot 7, Block 2, Oread addition and the North Right-of-way line of 12th Street (Hancock Street); thence East on the North Right-of-way line of 12th Street (Hancock Street) to the Southeast corner of Lot 6, Block 2, Oread Addition; thence continuing East on the North Right-of-way line of 12th Street (Hancock Street) extended to the Centerline of Louisiana Street; thence South on the Centerline of Louisiana Street to the Point of Beginning; Containing 7.84 Acres more or less all in the City of Lawrence, Douglas County, Kansas.

And the following additional property described as follows:

Plate U04543B, Twenty Four Company, LC, South 55 feet of Lot 3, North 65 feet of Lot 4, North 40 feet of Lot 9, and the South 55 feet of Lot 10, all in Block 2, in Oread Addition.

Including any and all rights-of-way and public easements adjacent to the above described property."

Exhibit B:      Ordinance No. 8234

ORDINANCE NO. 8234

AN ORDINANCE OF THE GOVERNING BODY OF THE CITY OF LAWRENCE, KANSAS MAKING FINDINGS AND ESTABLISHING A REDEVELOPMENT DISTRICT PURSUANT TO K.S.A. 12-1770 ET SEQ., AND AMENDMENTS THERETO.

WHEREAS, pursuant to the provisions of K.S.A. 12-1770 et seq., as amended (the "Act"), the City of Lawrence, Kansas (the "City") is authorized to establish redevelopment districts within a defined area of the City which is found by the City to be a conservation area, and is therefore an "eligible area" as said term is defined in the Act; and

WHEREAS, the Governing Body adopted Resolution No. 6749 on January 8, 2008 calling for a public hearing considering the establishment of a redevelopment district to be held by the Governing Body on February 12, 2008; and

WHEREAS, notice of the public hearing was given as required by the Act; and

WHEREAS, the public hearing was held on February 12, 2008 and closed on the same day; and

NOW, THEREFORE, BE IT ORDAINED BY THE GOVERNING BODY OF THE CITY OF LAWRENCE, KANSAS:

SECTION 1.   The Governing Body hereby finds that the real property described in Exhibits A and B (the "Redevelopment District") attached hereto is an eligible area for being designated as a redevelopment district pursuant to the Act because the real property is hereby found by the City to be a conservation area based on the determination by the City that:

(a)    the Redevelopment District comprises less than 15% of the land area of the City;
(b)    50% or more of the structures in the Redevelopment District are at least 35 years old; and
(c)    the Redevelopment District is not yet blighted, but may become blighted due to: (i) the existence of dilapidated and deteriorated structures, (ii) the presence of structures below minimum code standards and (iii) inadequate utilities and infrastructure.

SECTION 2.   The Governing Body hereby finds that the conservation, development or redevelopment of the Redevelopment District is necessary to promote the general and economic welfare of the City.

SECTION 3.   The Governing Body hereby establishes the Redevelopment District, which shall include One project area, all depicted on the map attached hereto as Exhibit A. The district plan is hereby approved, and consists of buildings and facilities to be constructed within the One project area, generally described as follows:

A multi-use structure consisting of approximately 106 rooms and associated commercial spaces. These rooms include approximately 92 hotel rooms and extended stay suites, and approximately 14 condominiums. The structure will include ancillary uses such as meeting and conference rooms, banquet rooms, restaurant space, and bar space. Additional commercial uses may consist of a bank, retail stores, and other similar

commercial uses allowed by the City of Lawrence. The structure will consist of approximately 116,000 square feet. The structure shall include an underground parking facility consisting of approximately 200 spaces. The redevelopment will also include public infrastructure improvements including without limitation improvements to Oread Avenue, 12th Street, Indiana Street, pedestrian access, utilities, landscaping, and other related improvements.

**SECTION 4.**  Severability.  If any section, clause, sentence, or phrase of this ordinance is found to be unconstitutional or is otherwise held invalid by any court of competent jurisdiction, it shall not affect the validity of any remaining parts of this ordinance.

**SECTION 5.**  This Ordinance shall take effect and be in force from and after its passage and publication as provided by law.

**PASSED** by the Governing Body this FEBRUARY 19, 2008.

**SIGNED** by the Mayor this FEBRUARY 19, 2008.


_____
Sue Hack, Mayor

(SEAL)

_____
Frank S. Reeb, City Clerk

APPROVED AS TO FORM AND LEGALITY:

_____
Toni Ramirez Wheeler, Director of Legal Services

## EXHIBIT A

## MAP OF REDEVELOPMENT DISTRICT
## AND PROJECT AREA

### 12th and Oread TIF Redevelopment District Boundary



Legend

12th & Oread TIF Boundary

**EXHIBIT B**

**LEGAL DESCRIPTION OF REDEVELOPMENT DISTRICT**

Beginning at the Intersection of the Centerline of Louisiana Street and the South Right-of-way line of West 12th Street (Hancock Street) in the Southeast Quarter (SE ¼) of Section 36, Township 12 South, Range 19 East of the Sixth Principal Meridian in the City of Lawrence, Douglas County, Kansas; thence West on the South Right-of-way line of West 12th Street (Hancock Street) extended to the Northeast Corner of Lot 1, Block 3, Oread Addition; thence continuing West on the South Right-of-way line of said West 12th Street (Hancock Street) to the Northwest corner of Lot 1, Block 3, Oread Addition; thence in a Southwesterly direction on the East Right-of-way line of Oread Avenue to the Northwest corner of the South One-half (S ½) of Lot 2, Block 3, Oread Addition; thence East on the North line of the South one-half (S ½) of said Lot 2 to the Northeast corner of the South One-half (S ½) of said Lot 2; thence South on the East line of said Block 3 Oread Addition to the Southeast corner of the North One-half (N ½) of Lot 4, Block 3 of Oread Addition; thence West on the South line of the North One-half (N ½) of Lot 4, Block 3 of Oread Addition to the Southwest corner of the North One-half (N ½) of Lot 4, Block 3 of Oread Addition and the East Right-of-way line of Oread Avenue; thence in a Southwesterly direction on the East Right-of-way line of Oread Avenue to the Southwest corner of Lot 6, of Oread Heights Addition, A Subdivision of Block 3, Oread Addition; thence continuing in a Southwesterly direction on the East Right-of-way line of Oread Avenue extended to the Centerline of 13th Street (Lee Street); thence West on the Centerline of said 13th Street (Lee Street) to the West Right-of-way line of Oread Avenue; thence in a Northeasterly direction on the West Right-of-way line of Oread Avenue to the Southeast corner of the North One-half (N ½) of Lot 2, Block 8 of Oread Addition; thence West on the South line of the North One-half (N ½) of Lot 2, Block 8 of Oread Addition to the Southwest corner of North One-half (N ½) of Lot 2, Block 8 of Oread Addition; thence North on the West line of the North One-half (N ½) of Lot 2, Block 8 of Oread Addition to the Southwest corner of Lot 1, Block 8 of Oread Addition; thence East on the South line of Lot 1, Block 8 of Oread Addition 180 feet; thence North parallel with the West line of Lot 1, Block 8 of Oread Addition to the South Right-of-way line of 12th Street (Hancock Street); thence West on the South Right-of-way line of 12th Street (Hancock Street) to the Northwest corner of Lot 12, Block 8 of Oread Addition and the East Right-of-way line of Mississippi Street; thence South on the East Right-of-way line of Mississippi Street to the Southwest

corner of the North One-half (N ½) of Lot 10, Block 8 of Oread Addition; thence West on the South line of the North One-half (N ½) of Lot 10, Block 8 of Oread Addition projected West, to the West Right-of-way line of Mississippi Street; thence North on the West Right-of-way line of Mississippi Street to the intersection of the North line of Lot 9, Block 9 of Oread Addition projected West; thence East on the North line of Lot 9, Block 9 of Oread Addition extended, to the Northwest corner of Lot 9, Block 9 of Oread Addition and the East Right-of-way line of Mississippi Street; thence South on the East Right-of-way line of Mississippi Street to the Southwest corner of Lot 7, Block 9 Oread Addition, and the North Right-of-way line of 12th Street (Hancock Street); thence East on the North Right-of-way line of 12th Street (Hancock Street) to the Southeast corner of Lot 6, Block 9 of Oread Addition and the West Right-of-way line of Indiana Street; thence North on the West Right-of-way line of Indiana Street to the Northeast corner of Lot 1, Block 9 of Oread Addition and the Southeast corner of Lot 3, Block 14, Lane's Second Addition; thence continuing North on the West Right-of-way line of Indiana Street to the Northeast corner of Lot 1, Block 14, Lane's Second Addition and the South Right-of-way line of 11th Street (Quincy Street); thence West on the South Right-of-way line of 11th Street (Quincy Street) to the intersection of the East line of Lots 13 thru 24, Block 13, Lane's Second Addition projected South; thence North on the East line of Lots 13 thru 24, Block 13, Lane's Second Addition extended, to the Southeast corner of Lot 13, Block 13, Lane's Second Addition and the North Right-of-way line of 11th Street (Quincy Street); thence North on the East line of Lots 13 thru 24, Block 13, Lane's Second Addition to the Northeast corner of Lot 24, Block 13, Lane's Second Addition and the South Right-of-way line of 10th Street (Berkeley Street); thence continuing North on the East line of Lots 13 thru 24, Block 13, Lane's Second Addition projected North to the Southeast corner of Lot 15, Block 11 Lane's Second Addition; thence North on the East line of Lots 15 thru 23, Block 11, Lane's Second Addition to the Northeast corner of Lot 23, Block 11, Lane's Second Addition; thence North on the East line of Lots 15 thru 23, Block 11, Lane's Second Addition projected North, to the South line of Lot 3, Block 11, Lane's Second Addition; thence East on the South line of Lot 3, Block 11, Lane's Second Addition to the intersection of the West line of Lots 6 thru 14, Block 11, Lane's Second Addition projected North; thence South on the West line of Lots 6 thru 14, Block 11, Lane's Second Addition extended, to the Northwest corner of Lot 6, Block 11, Lane's Second Addition; thence South on the West line of Lots 6 thru 14, Block 11, Lane's Second Addition to the Southwest corner of Lot 14, Block 11, Lane's Second Addition and the North Right-of-way line of 10th Street (Berkeley Street); thence South on the West line

of Lots 6 thru 14, Block 11, Lane's Second Addition extended, to the Northwest corner of Lot 1, Block 13, Lane's Second Addition, and the South Right-of-way line of 10th Street (Berkeley Street); thence South on the West line of Lots 1 thru 12, Block 13, Lane's Second Addition to the Southwest corner of Lot 12, Block 13 Lane's Second Addition and the North Right-of-way line of 11th Street (Quincy Street); thence East on the South line of Lot 12, Block 13, Lane's Second Addition and the North Right-of-way line of 11th Street (Quincy Street) to the Southeast corner of Lot 12, Block 13 Lane's Second Addition; thence continuing East on the North Right-of-way line of 11th Street (Quincy Street) extended to the Southwest corner of University Park (Northeast corner of 11th Street (Quincy Street) and Indiana Street); thence South on the East Right-of-way line of Indiana Street projected North from Block 15, Lane's Second Addition to the Northwest corner of Lot 6, Block 15, Lane's Second Addition; thence South on the East Right-of-way line of Indiana Street to the Southwest corner of Lot 4, Block 15, Lane's Second Addition and the Northwest corner of Lot 12, Block 2, Oread Addition; thence continuing South on the East Right-of-way line of Indiana Street to the Northwest corner of the South 55 feet of Lot 10, Block 2, Oread Addition; thence East on the North line of the South 55 feet of Lot 10, Block 2, Oread Addition to the Northeast corner of the South 55 feet of Lot 10, Block 2, Oread Addition and the Northwest corner of the South 55 feet of Lot 3, Block 2, Oread Addition; thence continuing East on the North line of the South 55 feet of Lot 3, Block 2, Oread Addition to the Northeast corner of the South 55 feet of Lot 3, Block 2, Oread Addition; thence South on the East line of Lots 3, and 4, Block 2, Oread Addition to the Southeast corner of the North 65 feet of Lot 4, Block 2, Oread Addition; thence West on the South line of the North 65 feet of Lot 4, Block 2, Oread Addition to the Southwest corner of the North 65 feet of Lot 4, Block 2 Oread Addition and the East line of Lots 9, 8, and 7, Block 2, Oread Addition; thence South on the East line of Lots 9, 8 and 7, Block 2, Oread Addition to the Southeast corner of Lot 7, Block 2, Oread Addition and the North Right-of-way line of 12th Street (Hancock Street); thence East on the North Right-of-way line of 12th Street (Hancock Street) to the Southeast corner of Lot 6, Block 2, Oread Addition; thence continuing East on the North Right-of-way line of 12th Street (Hancock Street) extended to the Centerline of Louisiana Street; thence South on the Centerline of Louisiana Street to the Point of Beginning; Containing 8.51 Acres more or less all in the City of Lawrence, Douglas County, Kansas.

Exhibit C:      Illustration of TIF District Area

## 12th and Oread TIF Redevelopment District Boundary



Exhibit D:     Illustration and Description of TIF Project Buildings and Structures



WEST ELEVATION
1"=20'-0"

A NEW MIXED-USE BUILDING FOR
OREAD CIRCLE HOTEL
12TH & INDIANA
LAWRENCE KANSAS

paul werner
ARCHITECTS

NSPJ
ARCHITECTS





NORTH ELEVATION
1"=20'-0"



A NEW MIXED-USE BUILDING FOR
OREAD CIRCLE HOTEL
1201 & INDIANA
LAWRENCE, KANSAS

paulwerner
ARCHITECTS

NSPJ
ARCHITECTS



**DEVELOPMENT PLAN**

Exhibit E:      Pre-Design Public and Private Infrastructure Construction Cost Estimates

# OREAD CIRCLE RE-DEVELOPMENT
## THE OREAD
### 12th & INDIANA

**THE OREAD INN**
**TIF / TDD COST ESTIMATES**
**11/19/07**

**A**

| Indiana Street | Qty | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Street demo | 15,000 | sq ft | 2.00 | 30,000.00 |
| Street prep (grading / fly ash) | 15,000 | sq ft | 3.00 | 45,000.00 |
| Pavement 8" concrete | 8,000 | sq ft | 4.25 | 34,000.00 |
| Curb | 300 | ln ft | 16.00 | 4,800.00 |
| Approach 1 pavement | 460 | sq ft | 25.00 | 11,500.00 |
| Approach 1 curb | 70 | ln ft | 18.00 | 1,130.00 |
| Approach 2 pavement | 450 | sq ft | 25.00 | 11,250.00 |
| Approach 2 curb | 70 | ln ft | 18.00 | 1,130.00 |
| Accent sidewalk | 80 | ln ft | 60.00 | 4,800.00 |
| Sidewalk | 318 | ln ft | 20.00 | 6,300.00 |
| ADA ramps | 7 | ea | 1,500.00 | 10,500.00 |
| Emergency lane | 3,150 | sq ft | 20.00 | 63,000.00 |
| Engineering | 1 | ls | 10% | 23,714.00 |
| Contingency | 1 | ls | 15% | 42,426.10 |
| | | | | |
| **Total Indiana Street** | | | | **$325,253.10** |

**B**

| Oread Street | Qty | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Street demo | 24,000 | sq ft | 2.00 | 48,000.00 |
| Street prep (grading / fly ash) | 24,000 | sq ft | 3.00 | 72,000.00 |
| Pavement 8" concrete | 21,000 | sq ft | 4.25 | 173,250.00 |
| Curb | 1,000 | ln ft | 16.00 | 16,000.00 |
| Approach 1 pavement | 620 | sq ft | 25.00 | 15,500.00 |
| Approach 1 curb | 70 | ln ft | 18.00 | 1,120.00 |
| Approach 2 pavement | 625 | sq ft | 25.00 | 15,625.00 |
| Approach 2 curb | 70 | ln ft | 18.00 | 1,120.00 |
| Accent sidewalk | 80 | ln ft | 60.00 | 5,400.00 |
| Sidewalk 1 | 600 | ln ft | 20.00 | 12,000.00 |
| Sidewalk 2 | 600 | ln ft | 20.00 | 12,000.00 |
| ADA ramps | 10 | ea | 1,500.00 | 15,000.00 |
| Pedestrian roundabout | 1 | ls | 60,000.00 | 60,000.00 |
| Vehicular roundabout | 1 | ls | 100,000.00 | 100,000.00 |
| Island roundabout streetscape | 1 | ls | 60,000.00 | 55,000.00 |
| Storm sewer | 1 | ls | 100.00 | 85,000.00 |
| Storm sewer | 850 | ln ft | 6,000.00 | 24,000.00 |
| Engineering | 4 | boxes | 10% | 78,444.00 |
| Island roundabout streetscape | 1 | ls | 15% | 129,116.10 |
| | | | | |
| **Total Oread Street** | | | | **$446,350.10** |

**C**

| 12th Street | Qty | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Street demo | 39,800 | sq ft | 2.00 | 79,380.00 |
| Street prep (grading / fly ash) | 39,600 | sq ft | 3.00 | 118,560.00 |
| Pavement 8" concrete | 25,080 | sq ft | 4.25 | 206,918.00 |
| Curb | 1,200 | ln ft | 16.00 | 19,200.00 |
| Approach | 6,000 | sq ft | 25.00 | 150,000.00 |
| Accent sidewalk | 300 | ln ft | 60.00 | 18,000.00 |
| Sidewalk 1 | 115 | ln ft | 20.00 | 2,300.00 |
| Sidewalk 2 | 200 | ln ft | 20.00 | 4,000.00 |
| ADA ramps | 11 | ea | 1,500.00 | 16,500.00 |
| Truck access drive | 2,500 | sq ft | 20.00 | 60,000.00 |
| Utah Street driveway | 1 | ls | 60,000.00 | 60,000.00 |
| Engineering | 1 | ls | 10% | 77,597.00 |
| Contingency | 1 | ls | 15% | 118,709.00 |
| | | | | |
| **Total 12th Street** | | | | **$818,149.00** |

NSPJ
NEARING STAATS FREELOVE & JAMES AIA CHARTERED
ARCHITECTS

24



paul**werner**
ARCHITECTS

# OREAD CIRCLE RE-DEVELOPMENT
## THE OREAD
### 12th & INDIANA

THE OREAD INN
TIF / TDD COST ESTIMATES
Page 2

**D**

### Streetscape

| | Qty | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Retaining walls | 1 | ls | 75,000.00 | 75,000.00 |
| City water tank | 1 | ls | 75,000.00 | 75,000.00 |
| Plantings | 1 | ls | 140,000.00 | 140,000.00 |
| Trees 4"-6" | 120 | ea | 1,500.00 | 180,000.00 |
| Irrigation | 1 | ls | 100,000.00 | 100,000.00 |
| 12th St. existing island rehab | 1 | ls | 15,000.00 | 15,000.00 |
| Turf | 1 | ls | 20,000.00 | 20,000.00 |
| Benches | 20 | ea | 2,000.00 | 40,000.00 |
| Street lights | 40 | ea | 3,000.00 | 120,000.00 |
| Sculptures | 1 | ls | 100,000.00 | 100,000.00 |
| Pedestrian shelter | 2 | ea | 30,000.00 | 60,000.00 |
| Engineering | 1 | ls | 10% | 92,500.00 |
| Contingency | 1 | ls | 15% | 162,625.00 |
| **Total Streetscape** | | | | **$1,178,125.00** |

**E**

### Water and Sanitary

| | Qty | Unit | Unit Price | Extension |
|---|---|---|---|---|
| 8" pvc water line along Oread incl fittings, trenching, backfill, pavement repair, etc. | 340 | ln ft | 150.00 | 51,000.00 |
| 8"x8" tapping sleeve and valve | 1 | ea | 2,000.00 | 2,000.00 |
| 12"x12"x12" tee | 1 | ea | 800.00 | 800.00 |
| 12" gate valve | 2 | ea | 1,300.00 | 2,600.00 |
| 12"x12"x4" tee | 1 | ea | 300.00 | 300.00 |
| 4" gate valve | 1 | ea | 600.00 | 600.00 |
| 12"x12"x8" tee | 1 | ea | 600.00 | 600.00 |
| 8" gate valve | 1 | ea | 700.00 | 700.00 |
| 12"x12"x12" tapping sleeve and valve | 1 | ea | 3,500.00 | 3,500.00 |
| Fire hydrant assembly | 2 | ea | 2,100.00 | 4,200.00 |
| 12"x8" reducer | 1 | ea | 300.00 | 300.00 |
| Lift station basement | 1 | ea | 15,000.00 | 15,000.00 |
| Abd sanitary on MHSW391219-105 | 1 | ls | 400.00 | 400.00 |
| Reflect off MHSW391216-105 | 7 | vf | 135.00 | 944.00 |
| CIPP install - Indiana 12th-11th 8" | 594 | lf | 32.00 | 19,008.00 |
| CIPP install - Indiana 11th w to alley 8" | 142 | lf | 32.00 | 4,544.00 |
| CIPP install - alley btw IN & MS 11th-15th 9" | 1348 | lf | 32.00 | 43,136.00 |
| Construct std manhole over existing SS (4'x8') | 1 | ea | 2,660.00 | 2,660.00 |
| Extra depth manhole (4' diam) | 1 | vf | 450.00 | 450.00 |
| 8" SS pipe (E & W of MH) | 20 | lf | 62.00 | 1,240.00 |
| Connect to existing 8" VCP | 2 | ea | 200.00 | 400.00 |
| Remove / replace asphalt pavement | 88 | sy | 9.35 | 822.00 |
| Flowable mortar | 18 | cy | 75.00 | 1,350.00 |
| Traffic control | 1 | ls | 500.00 | 500.00 |
| Construct std manhole over existing SS (5'x8') | 1 | ea | 3,000.00 | 3,000.00 |
| Extra depth manhole (5' diam) | 13 | vf | 140.00 | 1,820.00 |
| Construct std manhole (5'x8') | 1 | ea | 2,550.00 | 2,550.00 |
| 9" SS pipe | 200 | lf | 62.00 | 12,400.00 |
| Remove / replace concrete gutter | 18 | sf | 25.00 | 450.00 |
| Remove / replace concrete sidewalk | 700 | sf | 12.00 | 8,400.00 |
| Remove / replace asphalt pavement | 180 | sf | 9.35 | 1,683.00 |
| Flowable mortar | 31 | cy | 75.00 | 2,325.00 |
| Traffic control | 1 | ls | | |
| 8" PVC - san in alley along Oread (incl fittings, trenching, backfill, pavement repair, etc.) | 750 | lf | 150.00 | 112,500.00 |

continued next page





25

# OREAD CIRCLE RE-DEVELOPMENT
## THE OREAD
### 12th & INDIANA

THE OREAD INN
TIF / TDD COST ESTIMATES
Page 3

**E**

| Water and Sanitary, Cont'd: | Qty | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Flowable fill (for both main and services) | 270 | cy | $80.00 | 21,600.00 |
| Long service lines (including fittings) | 160 | lf | 50.00 | 7,500.00 |
| Reconnect existing services | 4 | ea | 500.00 | 2,000.00 |
| Fire hydrants | 2 | ea | 2,100.00 | 4,200.00 |
| 6x8 MJ gate valve | 1 | ea | 900.00 | 900.00 |
| 6x12 MJ gate valve | 1 | ea | 1,000.00 | 1,000.00 |
| Connect to existing water main | 2 | ea | 1,500.00 | 3,000.00 |
| Engineering | 1 | ls | 10% | 38,354.70 |
| Contingency | 1 | ls | 10% | 44,496.80 |
| City Inspection | 1 | ls | 3% | 13,853.04 |
| **Total Water and Sanitary** | | | | **$474,394.60** |

**F**

| City Impact Fees | Qty | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Water | 1 | ls | $4,810.00 | 84,810.00 |
| Sewer | 1 | ls | 72,130.00 | 72,130.00 |
| Tap Fees | 1 | ls | 60,000.00 | 60,000.00 |
| Permit Fees | 1 | ls | 40,000.00 | 40,000.00 |
| **Total City Impact Fees** | | | | **$196,945.00** |

**G**

| Site Utilities | Qty | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Electric / Phone / cable | 1 | ls | | 150,000.00 |
| Wyatter fee of $65,000 plus | | | | |
| lab & costs for prep & Installation | | | | |
| Engineering | 1 | ls | 10% | 15,000.00 |
| Contingency | 1 | ls | 15% | 24,750.00 |
| **Total Site Utilities** | | | | **$189,750.00** |

**H**

| Site Work | Qty | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Garage excavation | 40,000 | cy | 10.00 | 400,000.00 |
| Demo | 1 | ls | 140,000.00 | 140,000.00 |
| Stabilization / shoring | 1 | ls | 120,000.00 | 120,000.00 |
| Engineering | 1 | ls | 10% | 66,000.00 |
| Contingency | 1 | ls | 10% | 108,900.00 |
| **Total Site Work** | | | | **$834,900.00** |

**I**

| Parking Structure | Qty | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Parking Structure | 1 | ls | 8,000,000.00 | 8,000,000.00 |
| Engineering | 1 | ls | 10% | 800,000.00 |
| **Total Parking Structure** | | | | **$8,800,000.00** |





26

# OREAD CIRCLE RE-DEVELOPMENT
## THE OREAD
### 12ᵗʰ & INDIANA

THE OREAD INN
TIF / TDD COST ESTIMATES
Page 4

In Summary...

**Public Street Improvements**

| | | | |
|---|---|---|---|
| A | Indiana Street | 325,282.10 | |
| B | Oread Street | 966,890.10 | |
| C | 12th Street | 918,149.85 | |
| D | Streetscape | 1,170,125.00 | |
| | Total Public Street Improvements | | $3,380,446.55 |

**Public Water and Sanitary**

| | | | |
|---|---|---|---|
| E | Water and Sanitary | 434,386.60 | |
| | Total Public Water and Sanitary | | $434,386.60 |

**City Impact Fees**

| | | | |
|---|---|---|---|
| F | City Impact Fees | 196,940.00 | |
| | Total City Impact Fees | | $196,940.00 |

**Site Utilities**

| | | | |
|---|---|---|---|
| G | Site Utilities | 189,750.00 | |
| | Total Site Utilities | | $189,750.00 |

**Site Work**

| | | | |
|---|---|---|---|
| H | Site Work | 834,900.00 | |
| | Total Site Work | | $834,900.00 |

**Parking Structure**

| | | | |
|---|---|---|---|
| I | Parking Structure | 6,600,000.00 | |
| | Total Site Work | | $6,600,000.00 |

| | |
|---|---|
| Total TIF / TDD District Estimate | $11,636,423.45 |





27

Exhibit F:      Feasibility Study

ELECTRONICALLY FILED
2016 Nov 16 AM 9:06
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462



# Redevelopment Project Financial Feasibility Study

For the Oread Project Within the 12th and Oread Redevelopment District

City of Lawrence, Kansas

Final Draft: February 7, 2008

## Table of Contents

1   OVERVIEW ................................................................................................. 1

2   GENERAL DESCRIPTION OF TAX INCREMENT ....................................... 4

3   PROJECT DESCRIPTION .......................................................................... 5

4   PROJECTED REVENUES (BENEFITS) ....................................................... 6

5   PROJECTED EXPENDITURES (COSTS) ..................................................... 9

6   CONCLUSIONS ......................................................................................... 10

EXHIBIT I ......................................................................................................... 11

EXHIBIT II ........................................................................................................ 12

EXHIBIT III ....................................................................................................... 17

*Mission Statement*

Springsted provides high quality, independent financial
and management advisory services to public
and non-profit organizations, and works with them
in the long-term process of building their communities
on a fiscally sound and well-managed basis.

## 1. Overview

### Statutory Basis and Process

Sections 12-1770 through 12-1780 of the Kansas Statutes ("the Act") provide a means for cities to finance public development and redevelopment costs with incremental real estate taxes and other revenues. The purpose of the Act is to "promote, stimulate and develop the general and economic welfare of the State of Kansas and its communities and to assist in the development and redevelopment of eligible areas within and without a city thereby promoting the general welfare of the citizens of this state…"

A city may exercise the powers conferred under the Act provided that the governing body of the city has adopted a resolution finding that the specific area sought to be developed or redeveloped is an "eligible area" under the Act. In addition, the city must find that the conservation, development or redevelopment of such an area is necessary to promote the general economic welfare of the city.

The proposed redevelopment district boundaries are irregular and extend from 13th Street on the South to approximately 9th Street on the North and Mississippi on the West and Louisiana on the East. A map of the redevelopment district is attached hereto as Exhibit I.

The district plan for the proposed redevelopment district provides for the redevelopment district to include one project area, which is depicted on the map attached hereto as Exhibit I, fully encompassing the boundaries of the Redevelopment District. The buildings and facilities to be constructed within the one project area are generally described as a multi-use structure consisting of approximately 106 rooms and associated commercial spaces. These rooms include approximately 92 hotel rooms and extended stay suites, and approximately 14 condominiums. The structure will include ancillary uses such as meeting and conference rooms, banquet rooms, restaurant space, and bar space. Additional commercial uses may consist of a bank, retail stores, and other similar commercial uses allowed by the City of Lawrence. The structure will consist of approximately 116,000 square feet. The structure shall include an underground parking facility consisting of approximately 200 spaces. The redevelopment will also include public infrastructure improvements including without limitation improvements to Oread Avenue, 12th Street, pedestrian access, utilities, landscaping, and other related improvements.

On February 12, 2008, the governing body will open the Public Hearing to receive comment regarding the establishment of the Redevelopment District ("the District," see Exhibit I), adoption of the Ordinance No.___ occurred on _____. The general comprehensive plan for the District identifies the potential redevelopment project areas located within the District and the suitability of each such area for redevelopment (see below).

One or more redevelopment projects may be undertaken within each district. The Act requires all projects to be completed within 20 years from the date of the approval of a project plan, with the exception of environmental investigation and remediation projects which must be completed within 20 years from the date the City enters into a consent decree with the Kansas Department of Health and Environment or the U.S. Environmental Protection Agency.

For each redevelopment project undertaken within the District, a project plan ("the Project Plan") must be prepared in consultation with the City-County Planning Commission. The Project Plan must include the following:

1. A summary or copy of the Financial Feasibility Study (this document).
2. A reference to the District Plan for the District.
3. A description and map of the area to be redeveloped.
4. The Relocation Assistance Plan.
5. A detailed description of all buildings and facilities proposed to be constructed or improved.
6. Any other information the City deems necessary to advise the general public of the intent of the Project Plan.

## The Feasibility Study

The Financial Feasibility Study will show that a) the Project's benefits, tax increment revenue, and other available revenues under K.S.A. 12-1774(a)(1) are expected to exceed or be sufficient to pay for all Project costs as defined by K.S.A. 12-1773, including the payment of principal and interest of debt used to finance the redevelopment project; and b) the effect, if any, the redevelopment project costs will have on any outstanding special obligation bonds payable from the revenues described in K.S.A. 12-1774(a)(1)(D).

The City is currently considering the establishment of the Oread Redevelopment Project ("the Project", see Exhibit I). Establishment of the Project is being considered to reimburse Triple T, LLC ("the Developer") for eligible costs associated with the redevelopment of the area into a multi-use hotel development consisting of approximately 92 rooms and 14 condominium units and accompanying retail uses, consisting of public roadway improvements and underground parking.

The Developer has requested that the City provide tax increment financing (TIF) assistance through pay-as-you-go financing. The City will determine the total size of the financing based solely on the property and sales tax increment generated by the Project (Hotel project property and sales tax increment and inflationary property tax increment from other properties within the Redevelopment Project boundaries).

In a separate but related matter, the Developer has also requested City authorization to establish a Transportation Development District to assist in

financing the construction of the public infrastructure and underground parking garage through a specially levied sales tax. The boundaries of the proposed Transportation Development District will be only those occupied by the hotel project.

## 2. General Description of Tax Increment

Tax increment financing for the Project will use both property and sales tax revenues.

Tax increment financing involves the creation of an increment (increase over a base value) in the real estate taxes that are generated from a defined geographic area of a community. Upon establishment of a redevelopment district, the total assessed valuation of all taxable real estate within the district is determined. This valuation is referred to as the district's "Base Year Assessed Valuation." Property taxes attributable to the district's Base Year Assessed Valuation are annually collected and distributed by the county treasurer to the appropriate city, county, school district and all other applicable taxing jurisdictions in the same manner as other property taxes.

As new development occurs within the redevelopment district, the total assessed valuation of the district in any given year will presumably exceed its Base Year Assessed Valuation. Tax increment means that amount of real property taxes collected from real property located within the redevelopment district that is in excess of the amount of real property taxes which is collected from the base year assessed valuation. All tax increment is collected by the county and distributed to the city to be deposited in a "special fund."

Tax increment funds may only be used to pay for specified eligible project costs, including principal and interest on debt used, in whole or in part, to finance projects within a redevelopment district. Such debt includes notes, special obligation bonds, full faith and credit tax increment bonds, and other debt instruments. Tax increment also may be paid to a developer/owner over time as reimbursement for eligible costs incurred up-front. This payment mechanism is commonly referred to as pay-as-you-go financing and may include not only the principal amount of such costs but also all or a portion of the interest accrued thereon.

The City is responsible for determining the amount of sales taxes allocated to the Oread Redevelopment Project each year based on the Redevelopment Plan. The City intends to capture all sales taxes generated by the taxpayers doing business within the boundaries of the Project area attributable to the taxes levied by the City and the County. The City does not anticipate any additional sales taxes generated by properties within the Project area aside from the Hotel project. If a substantial change occurs to the additional properties, the City would consider amending the Project Plan to capture these unforeseen revenues.

## 3. Project Description

The Oread Project (the "Project") consists of 4 parcels of land located on the northeast side of the intersection of Indiana Street and 12th Street, west of Oread Avenue to be redeveloped into the Hotel project and 4 parcels located along Oread Avenue to remain unchanged including a City-owned parcel exempt from taxation. Two of the Project parcels are classified as commercial and have a statutory property classification rate of 25.0%; five of the Project parcels are classified as residential and have a statutory property classification rate of 11.5%, and the remaining parcel is City-owned and exempt from taxation. The Developer owns 100% of the 4 parcels to be developed for the Hotel. The Developer will demolish all existing structures and redevelop the site into a multi-use hotel complex with underground parking. The Project will include an estimated 92 hotel rooms and 14 condominium units.

The total Base Year Assessed Valuation of the Project as assessed in 2008 for taxes payable in 2008/2009, is estimated at $559,075, based on the 2007 assessment (see Exhibit II for individual parcel details).

Based on development plans provided by the Developer, Springsted has estimated the Project's total fair market value upon completion in 2009 (assessed January 1, 2010) at $14,267,160, and the total assessed value at $2,506,733. The property tax increment generated in any given year will be determined by the Project's increase in Current Assessed Valuation over its Base Year Assessed Valuation (as of January 1, 2008).

Based on projected sales activity provided by the Developer, Springsted has estimated the Project's total taxable sales at $3,815,000 by 2011. The sales tax increment generated in any given year will be determined by the City and be equal to the amount generated by the taxpayers doing business within the boundaries of the Project, projected to include the Hotel operations only.

## 4. Projected Revenues (Benefits)

**Tax Increment Revenue**

**Increased Assessed Value**

The City has the ability to use up to 100% of the property tax increment generated by the Project based on its increase in Current Assessed Valuation over its Base Year Assessed Valuation, as is illustrated below for the Project at full assessment in 2010.

| Projected Total Fair Market Value (1/1/2010) | Class/Rate | Projected Total Assessed Value (1/1/2010) |
|---|---|---|
| $6,440,000 | CU/25.00% | 1,610,000 |
| $7,776,930 | RES/11.50% | 896,733 |
| $50,230 | EQ/0.0% | 0 |
|  | Original Assessed Value | (559,075) |
|  | Increased Assessed Value | 1,947,658 |

The City estimates that the Total Assessed Value of the Project will increase at approximately 1.0% annually over the life of the Project (including properties not included in the Hotel project). Exhibit II (Assumptions Report) details many of the assumptions used in the projection of values and tax increments from the Project. Column 10 in Exhibit III (Projected Property and Sales Tax Increment & TDD) shows the projected Increased Assessed Valuation of the Project over its maximum duration.

**Property Tax Rates**

In order to determine the amount of tax increment generated by the Project in any given year, the Increased Assessed Value of the Project must be multiplied by the sum of the tax rates for all TIF-applicable tax authorities for that year. For taxes levied in 2007 and payable in 2007/2008, this total TIF-applicable rate is 94.344 mills. We assume this rate remains fixed through-out the term of the District.

| Jurisdiction | Mill Rate (2007/2008) |
|---|---|
| City of Lawrence | 26.787 |
| Douglas County | 29.995 |
| 497 Lawrence S/D | 37.562 |
| Total | 94.344 |

### Projected Property Tax Increment

The projected tax increment generated by the Project over a 20-year period is shown in column 13 of Exhibit III (Projected Property and Sales Tax Increment & TDD). If approved by the City in April, 2008, the Project would be eligible to receive increment in 2009/2010 through the first-half 2027/2028 collection. The tax increment projections are based on Base Year assessed valuations, increased assessed valuations, and tax rates as previously discussed. It is assumed in all years of the report that 100% of property taxes are paid when due. The total property tax increments projected for the Project are $3,511,913.

### Projected Sales Tax Increment

The Project is also eligible to receive sales tax generated within the District. The City currently levies a 1.0% sales tax and the County also levies a 1% sales tax. The City intends to collect all City and County sales taxes generated by taxpayers doing business in the Project area, projected to include the Hotel operations only, to pay for redevelopment project costs, including the payment of debt service. The County will need to separately approve the collection of the sales tax revenue for the Project.

The Developer projects initial year annual sales of $5,450,000 from the hotel and associated uses. Springsted projects that up to 30% of the sale revenue may be exempt from taxation per Kansas Statute. Therefore, the estimated annual taxable sales are 70% of the above figure or $3,815,000.

Based on a 2% applicable sales tax rate (City and County) the stabilized annual sales tax revenue projected is $76,300. The Developer expects total and taxable sales to increase by 1.0% annually for the term of the project resulting in total projected sales tax revenue over the term of the Project of $1,489,873 (see column 15 of Exhibit III – Projected Property and Sales Tax Increment & TDD for further details).

The combination of property and sales tax increment projected for the 20-year period starting from Project approval is estimated to be $5,001,787.

### Projected TDD Sales Tax Revenues

As stated earlier, the Developer is requesting the establishment of a Transportation Development District imposing a 1.0% sales tax to defer the costs of the underground parking garage. The revenue projected from the sales tax is estimated at $917,095 over the maximum 22-year collection period.

### Developer Revenue

The Developer will fund the total anticipated cost of the project of $37,000,000 up front. The expected funding will be comprised of $21,000,000 of private debt and $16,000,000 of equity.

### City Administration

At this time, the City does not anticipate retaining tax increment for administrative and capital expenditures outside of the Project.

## 5.  Projected Expenditures (Costs)

Based on current projections, the City and Developer estimate the total cost of the public infrastructure improvements are $5,000,000 and an additional $6,000,000 for the parking garage. The Developer will finance the entire projected cost of $11,000,000 and request reimbursement from TIF/TDD revenue, including interest expenditures. The total projected TIF/TDD expenditures are $11,000,000 plus interest expenditures.

However, the projected TIF/TDD revenue is insufficient to cover this total cost and the Developer will only be reimbursed up to the revenue collected during the statutory term of the Project and TDD, subject to limitations described below. There will be no obligation on the part of the City to contribute any shortfalls required neither to finance the total $11,000,000 construction cost nor to reimburse for interest expenditures.

Based on current projections, the City has the ability to expend a maximum of $5,001,787 in Project property and sales tax increment to assist the Project. The Developer has requested the City pledge property and sales tax increment generated from the Project to reimburse them for the total cost of the public infrastructure improvements and construction of the parking garage estimated at a total $11,000,000 cost, plus interest expense. Additional funds are projected to be available through the proposed establishment of a Transportation Development District levying a 1% sales tax (totaling $917,095).

The City proposes to execute a Redevelopment Agreement outlining a pledge of 100% of the property and sales tax increment generated by the Project, up to an amount necessary to reimburse the Developer for $7,100,000 of construction costs, plus interest expense (the interest reimbursed cannot exceed such amount based on prime plus 1.0%). If this cap is reached, only 50% of TIF revenue then generated would be paid to the Developer for total reimbursement of up to the $11M total cost, plus interest, for construction of the public improvements and parking garage (less any amounts paid for with TDD revenues).The other 50% of the TIF revenue would be returned to the taxing jurisdictions. The pledge will continue until approximately April, 2028, the Project's required termination date.

Although the City does not anticipate issuing tax increment bonds, if a request is made, the City will not pledge its full faith and credit (general obligation) to the payment of any such tax increment bonds.

## 6. Conclusions

The Act requires that the Financial Feasibility Study demonstrate that the Project's benefits and other available revenues are expected to equal or exceed all Project costs.

The project benefits can be described in two forms: a) the amount of total revenues and other contributions received over the 20 year term of the Project; and b) the amount of project costs which can be financed by the revenues received over the applicable term. This second category represents the amount of bonds issued supported by the future revenues plus the other financial contributions. The Project Costs are here defined as the TIF/TDD eligible expenditures budgeted to complete the Project and are estimated to total $11,000,000, plus interest expenditures.

As to the total future revenues and other contributions, the available TIF revenues of the Project through the first-half 2027/2028 collection are expected to be $5,001,787, and the available TDD revenues of the Project through 2031 are expected to be $917,095 (combined revenue of $5,918,882). The Developer is requesting $11,000,000, plus interest over the statutory period, the estimated revenue falls short of this request. Therefore, the Developer contributions are expected to be in excess of $5,081,118 to complete the public infrastructure and parking garage (the TIF/TDD eligible project cost), exclusive of any financing costs related to debt issued to initially construct the project.

Given the assumptions and representations of the various parties to the process, this feasibility study concludes that the project benefits which include projected TIF/TDD revenue and Developer contributions of at least $5,081,118 are sufficient to pay the project costs.

The Act also requires a determination of the effect the redevelopment project will have on any outstanding bonds supported by local transient guest and local sales and use taxes. The proposed Redevelopment Project area does not currently generate any sale or use taxes and therefore the approval of the collection of sales taxes within the Project area does not have any effect on any outstanding obligations.

# EXHIBIT I
# MAP OF PROPOSED REDEVELOPMENT DISTRICT & PROJECT

## 12th and Oread TIF Redevelopment District Boundary



Legend

12th & Oread TIF Boundary

**Exhibit II**
**TIF District and Redevelopment Project Assumptions**

Exhibit II – Page 1 of 4

**City of Lawrence, Kansas**
**Redevelopment Tax Increment Financing District**
**Oread TIF Project**

| Original Assessed Value (1/1/08) | | 559,075 |
|---|---|---|
| | | 1/1/07 value, as 1/1/08 has not been set |

| 2007/08 Mill Rates | Total | TIF Applicable |
|---|---|---|
| State of Kansas | 1.500 | 0.000 |
| Douglas County | 29.995 | 29.995 |
| City of Lawrence | 26.787 | 26.787 |
| 497 Lawrence S/D | 28.358 | 28.358 |
| 497 Lawrence S/D-Gen | 20.000 | 0.000 |
| 497 Lawrence S/D-Bond | 9.204 | 9.204 |
| Total | 115.844 | 94.344 |
| | | Assume fixed rate |

| | |
|---|---|
| Property TIF Inflation Rate: | 1.00% |
| Sales Tax Inflation Rate: | 1.00% |

**Exhibit II - Page 2 of 4**

City of Lawrence, Kansas
Redevelopment Tax Increment Financing District
Oread TIF Project

Assess 2007

| Property Owner | Address | Parcel ID | 2007 Appraised | | | 2007 Assessed | | | Class |
|---|---|---|---|---|---|---|---|---|---|
| | | | Land | Building | Total | Land | Building | Total | |
| Triple T LLC | 1140 Indiana St | 023-067-36-0-40-03-004.03-0 | 212,500 | 465,180 | 677,680 | 24,435 | 53,495 | 77,930 | RU |
| Triple T LLC | 1142 Indiana St | 023-067-36-0-40-03-004.02-0 | 44,220 | 420,780 | 465,000 | 5,085 | 48,390 | 53,475 | RU |
| Triple T LLC | 1144 Indiana St | 023-067-36-0-40-03-005.00-0 | 182,400 | 267,600 | 450,000 | 45,600 | 66,900 | 112,500 | CU |
| Triple T LLC | 618-20 W 12th St | 023-067-36-0-40-03-006.02-0 | 141,120 | 164,180 | 305,300 | 35,280 | 41,045 | 76,325 | CU |
| 24 Company LC | 1121 Louisiana | 023-067-36-0-40-03-006.00-0 | 316,620 | 1,046,580 | 1,363,200 | 36,410 | 120,355 | 156,765 | RU |
| Oread Apartment Co | 1201-03-05 Oread Ave | 023-067-36-0-40-06-001.02-0 | 131,950 | 315,150 | 447,100 | 15,175 | 36,240 | 51,415 | RU |
| Triple T LLC | 1209-11 Oread Ave | 023-067-36-0-40-06-001.04-0 | 44,470 | 222,160 | 266,630 | 5,115 | 25,550 | 30,665 | RU |
| City of Lawrence | 1200 Block #2 Louisiana | 023-067-36-0-40-04-002.00-0 | 47,180 | 3,050 | 50,230 | · | · | · | EX |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Totals | | 1,120,460 | 2,904,680 | 4,025,140 | 110,400 | 391,975 | 559,075 | |
| | Estimated Assess 2008 Values (Base Year of Redevelopment TIF District) | | 1,120,460 | 2,904,680 | 4,025,140 | 110,400 | 391,975 | 559,075 | |
| | | | | | Total Appraised Value | | | Total Assessed Value | |

| Total of Redeveloped Properties | 580,240 | 1,317,740 | 1,897,980 | 110,400 | 209,830 | 320,230 |
|---|---|---|---|---|---|---|
| Inflationary Increase Only | 540,220 | 1,586,940 | 2,127,160 | 0 | 182,145 | 238,845 |

## Exhibit II - Page 3 of 4

**City of Lawrence, Kansas**
**Redevelopment Tax Increment Financing District**
**Oread TIF Project**

**Property Tax Increment**

| Base and Current Values | Appraised | Assessed | | | |
|---|---|---|---|---|---|
| Base - Assess January 1, 2007 | 4,025,140 | 559,075 | | | |
| Est. Base - Assess January 1, 2008 | 4,025,140 | 559,075 | | | |
| | | | | | |
| Assessment Rate: | 25.00% | 11.50% | 25.00% | 11.50%/0.0% | |

| Project Components | Hotel Units | Condo Units | Retail/ Parking Uses | Existing | Total |
|---|---|---|---|---|---|
| | 92 rooms | 14 units | | | 106 |
| Estimated Square Footage | 90,000 | 18,000 | included in | NA | |
| Estimated Appraised Value per Unit [1] | $70,000 | $333 | NA | NA | |
| Total Appraised Value [2] | 6,440,000 | 5,700,000 | included in | 2,148,432 | 14,288,432 |
| Total Assessed Value [3] | 1,610,000 | 655,500 | included in | 241,233 | 2,506,733 |

| New Development Appraised | Hotel Units | Condo Units | Retail/ Parking Uses | Existing | |
|---|---|---|---|---|---|
| January 1, 2009 | 25% | 25% | NA | 100% | |
| January 1, 2010 [4] | 75% | 75% | NA | 101% | |
| January 1, 2011 | 100% | 100% | NA | 102% | |

| Estimated Appraised Value | Hotel Units | Condo Units | Retail/ Parking Uses | Existing | Total Appraised |
|---|---|---|---|---|---|
| January 1, 2009 | 1,610,000 | 1,425,000 | included in | 2,148,432 | 5,183,432 |
| January 1, 2010 | 4,830,000 | 4,275,000 | included in | 2,169,916 | 11,274,916 |
| January 1, 2011 | 6,440,000 | 5,700,000 | included in | 2,191,615 | 14,331,615 |

| Estimated Assessed Value | Hotel Units | Condo Units | Retail/ Parking Uses | Existing | Total Assessed |
|---|---|---|---|---|---|
| January 1, 2009 | 402,500 | 163,875 | included in | 241,233 | 807,608 |
| January 1, 2010 | 1,207,500 | 491,625 | included in | 243,646 | 1,942,771 |
| January 1, 2011 | 1,610,000 | 655,500 | included in | 246,082 | 2,511,582 |

| Tax Increment | Total Assessed | Original Assessed | Captured Assessed | | |
|---|---|---|---|---|---|
| Assess 2009/Distrib 2010 | 807,608 | 559,075 | 248,533 | | |
| Assess 2010/Distrib 2011 | 1,942,771 | 559,075 | 1,383,696 | | |
| Assess 2011/Distrib 2012 | 2,511,582 | 559,075 | 1,952,507 | | |

**NOTES:**
1) For estimating the hotel value we have used the value included in the HVS study dated November 19, 2007, at stabilization. For the condo uses we have estimated the value based on the projected base sales price of $333.33 per s.f. for a total of 18,000 s.f. We have not included any level of upgrades in the value that may be requested by the purchaser since the added value is unknown.
2) We have assumed the Appraiser's office will appraise the condo units at 95% of sale price.
3) The condominium use will result in residential classification. If the units are extended-stay rooms, the threshold between commercial and residential use is 30 consecutive days (any more and it is residential).
4) We have assumed full valuation will not occur until the year following opening, due to increased occupancy, etc.

Exhibit II - Page 4 of 4

**City of Lawrence, Kansas**
**Redevelopment Tax Increment Financing District**
**Oread TIF Project**

**Sales Tax Assumptions for Sales Tax Increment and Transportation Development District (TDD) Sales Tax**

| Sales Tax Rates | |
|---|---|
| *City of Lawrence* | 1.00% |
| *Douglas County* | 1.00% |
| **Total TIF Sales Tax** | **2.00%** |
| TDD | 1.00% |

**Base Information**
Existing Project Sales Taxes:            NA

**Project Information**

| | Hotel Units | Condo Units | Retail/Parking Uses | Total |
|---|---|---|---|---|
| Estimated Annual Sales: [1] | 5,450,000 | NA | inc. in hotel | 5,450,000 |
| Locally Taxable Portion of Retail Sales: [2] | 70.00% | NA | inc. in hotel | |
| Estimated Taxable Sales: | 3,815,000 | NA | inc. in hotel | 3,815,000 |
| Estimated TIF Sales Tax Rate: | **2.00%** | NA | inc. in hotel | |
| Estimated TDD Sales Tax Rate: | **1.00%** | NA | inc. in hotel | |
| Estimated Annual TIF Sales Tax Collections:<br>(at stabilized occupancy and sales) | 76,300 | NA | inc. in hotel | 76,300 |
| Estimated Annual TDD Revenues:<br>(at stabilized occupancy and sales) | 38,150 | NA | inc. in hotel | 38,150 |

| Sales Tax Collections: | Estimated %<br>of Total | Estimated<br>Taxable Sales | TIF<br>Sales Tax | TDD<br>Sales Tax |
|---|---|---|---|---|
| Taxes collected in 2010 [3] | 80.00% | 3,052,000 | 61,040 | 30,520 |
| Taxes collected in 2011 | 100.00% | 3,815,000 | 76,300 | 38,150 |

**NOTES:**
*1) We have used the numbers presented by the Developer for total revenue from sales (but used a 60% occupancy for room revenue), and removed banquet room rental because it represents a non-taxable transaction.*
*2) We have assumed that only 70% of the sales will be taxable because of the targeted audience of University/College entities which are exempt from sales tax if paid for by the University/College.*
*3) We have assumed that the sales revenue is only 80% of projected occupancy in the first full year (80% of 60% or 48% occupied).*

# EXHIBIT III
# PROJECTED PROPERTY TAX AND SALES TAX
# INCREMENT & TDD

# City of Lawrence, Kansas
## Redevelopment Tax Increment Financing District
### Oread TIF Project
#### Projected Property Tax and Sales Tax Increment & TDD

| TIF Year (1) | Assess & Tax Levy Year (2) | Tax Distrib. Year (3) | Total Assessed – Existing Properties (a) (4) | Total Assessed – Oread Project (b) (5) | Total Assessed – Total TIF Project (c) (6) | Original TIF Assessed Value (7) | Increased Assessed Value – Existing Properties (8) | Increased Assessed Value – Oread Project (9) | Increased Assessed Value – Total TIF Project (10) | Projected Property Tax Increment – Existing Properties (d) (11) | Projected Property Tax Increment – Oread Properties (d) (12) | Projected Property Tax Increment – Total TIF Properties (d) (13) | Projected Taxable Sales (e) (14) | Projected Sales Tax Increment (f) (15) | Projected Total Increment (16) | Projected TDD Revenue (g) (17) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 2008 | 2009 | 238,845 | 320,230 | 559,075 | 559,075 | 0 | 0 | 0 | 0 | 0 | 0 | 3,052,000 | 61,040 | 84,488 | 30,520 |
| 1 | 2009 | 2010 | 241,233 | 566,375 | 807,608 | 559,075 | 2,388 | 246,145 | 248,533 | 225 | 23,222 | 23,448 | 3,815,000 | 76,300 | 206,843 | 38,150 |
| 2 | 2010 | 2011 | 243,646 | 1,699,125 | 1,942,771 | 559,075 | 4,801 | 1,378,895 | 1,383,696 | 453 | 130,090 | 130,543 | 3,852,150 | 77,053 | 261,270 | 38,532 |
| 3 | 2011 | 2012 | 246,082 | 2,265,500 | 2,511,582 | 559,075 | 7,237 | 1,945,270 | 1,952,507 | 683 | 183,525 | 184,207 | 3,891,582 | 77,834 | 264,411 | 38,917 |
| 4 | 2012 | 2013 | 248,543 | 2,288,155 | 2,536,698 | 559,075 | 9,698 | 1,967,925 | 1,977,623 | 915 | 185,662 | 186,577 | 3,930,598 | 78,612 | 267,582 | 39,306 |
| 5 | 2013 | 2014 | 251,028 | 2,311,037 | 2,562,065 | 559,075 | 12,183 | 1,990,807 | 2,002,990 | 1,149 | 187,821 | 188,970 | 3,969,904 | 79,398 | 270,785 | 39,699 |
| 6 | 2014 | 2015 | 253,539 | 2,334,147 | 2,587,686 | 559,075 | 14,694 | 2,013,917 | 2,028,611 | 1,366 | 190,001 | 191,387 | 4,009,603 | 80,192 | 274,021 | 40,096 |
| 7 | 2015 | 2016 | 256,074 | 2,357,488 | 2,613,563 | 559,075 | 17,229 | 2,037,258 | 2,054,488 | 1,525 | 192,233 | 193,829 | 4,049,599 | 80,994 | 277,288 | 40,497 |
| 8 | 2016 | 2017 | 258,635 | 2,381,063 | 2,639,698 | 559,075 | 19,790 | 2,060,833 | 2,080,623 | 1,867 | 194,427 | 196,294 | 4,090,196 | 81,804 | 280,589 | 40,902 |
| 9 | 2017 | 2018 | 261,221 | 2,404,874 | 2,666,095 | 559,075 | 22,376 | 2,084,644 | 2,107,020 | 2,111 | 196,674 | 198,785 | 4,131,098 | 82,622 | 283,522 | 41,311 |
| 10 | 2018 | 2019 | 263,833 | 2,428,923 | 2,692,756 | 559,075 | 24,988 | 2,108,693 | 2,133,681 | 2,358 | 198,942 | 201,300 | 4,172,409 | 83,446 | 286,289 | 41,724 |
| 11 | 2019 | 2020 | 266,472 | 2,453,212 | 2,719,684 | 559,075 | 27,627 | 2,132,982 | 2,160,609 | 2,606 | 201,234 | 203,840 | 4,214,133 | 84,283 | 290,689 | 42,141 |
| 12 | 2020 | 2021 | 269,137 | 2,477,744 | 2,746,881 | 559,075 | 30,292 | 2,157,514 | 2,187,806 | 2,858 | 203,546 | 206,406 | 4,256,275 | 85,126 | 294,123 | 42,563 |
| 13 | 2021 | 2022 | 271,828 | 2,502,521 | 2,774,349 | 559,075 | 32,983 | 2,182,291 | 2,215,274 | 3,112 | 205,886 | 208,998 | 4,298,637 | 85,977 | 297,592 | 42,988 |
| 14 | 2022 | 2023 | 274,546 | 2,527,547 | 2,802,093 | 559,075 | 35,701 | 2,207,317 | 2,243,018 | 3,368 | 208,247 | 211,615 | 4,341,826 | 86,837 | 301,095 | 43,416 |
| 15 | 2023 | 2024 | 277,292 | 2,552,822 | 2,830,114 | 559,075 | 38,447 | 2,232,592 | 2,271,039 | 3,627 | 210,632 | 214,269 | 4,385,244 | 87,705 | 304,634 | 43,852 |
| 16 | 2024 | 2025 | 280,065 | 2,578,350 | 2,858,415 | 559,075 | 41,220 | 2,258,120 | 2,299,340 | 3,889 | 213,040 | 216,929 | 4,429,097 | 88,582 | 308,208 | 44,291 |
| 17 | 2025 | 2026 | 282,865 | 2,604,134 | 2,886,999 | 559,075 | 44,020 | 2,283,904 | 2,327,924 | 4,153 | 215,473 | 219,626 | 4,473,388 | 89,468 | 311,817 | 44,734 |
| 18 | 2026 | 2027 | 285,694 | 2,630,175 | 2,915,869 | 559,075 | 46,849 | 2,309,945 | 2,356,794 | 4,420 | 217,929 | 222,349 | 4,518,121 | 22,591 | 135,141 | 45,181 |
| 19 | 2027 | 2028 | 288,551 | 2,656,477 | 2,945,028 | 559,075 | 49,706 | 2,336,247 | 2,385,953 | 2,345 | 110,205 | 112,550 | 4,563,303 | 0 | 0 | 45,633 |
| 20 | 2028 | 2029 | 291,436 | 2,683,042 | 2,974,478 | 559,075 | 0 | 0 | 0 | 0 | 0 | 0 | 4,608,936 | 0 | 0 | 46,089 |
| 21 | 2029 | 2030 | 294,350 | 2,709,872 | 3,001,308 | 559,075 | 0 | 0 | 0 | 0 | 0 | 0 | 4,655,025 | 0 | 0 | 46,550 |
| 22 | 2030 | 2031 | 297,294 | 2,736,971 | 3,031,321 | 559,075 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 | 0 | |
| **Totals** | | | | | | | | | | $43,151 | $3,468,762 | $3,511,913 | | $1,489,873 | $5,001,787 | $917,095 |

Combined Revenue  $5,918,882

(a) Assumes the appraised value of the existing properties will increase at the projected 1% annual inflationary rate commencing in Levy Year 2009.

(b) Assumes Oread Project value will be assessed according to completion schedule on previous page, with inflation commencing in Levy Year 2012.

(c) Combines the Existing and the Oread for the total assessed value of the TIF District.

(d) Assumes 100% collection of property taxes. Since TIF expenditures are limited to 20 years from City approval of Project estimated to occur April 1, 2009, final collection would be first-half 2027 collection, distributed to City in January 2028. Assumes 2007/2008 Mill Levy Rate held flat.

(e) Assumes 70% of sales are taxable.

(f) Since TIF expenditures are limited to 20 years from City approval of Project estimated to occur April 1, 2008, revenue in assess 2027/2028 2028 is only the first three months of collections (2010-2031).

(g) Assumes collection of TDD sales tax revenue for maximum term allowed, without bonds issued, the term is 22 years of collections (2010-2031).

12ᵗʰ & OREAD TAX INCREMENT FINANCING DISTRICT
REDEVELOPMENT AGREEMENT

by and between the

CITY OF LAWRENCE, KANSAS

and

OREAD INN, L.C.

DATED AS OF APRIL 8, 2008



EXHIBIT

E

# TABLE OF CONTENTS

Page

## ARTICLE I

### DEFINITIONS AND RULES OF CONSTRUCTION

Section 1.01.   Rules of Construction ..................................................................................................3
Section 1.02.   Definitions of Words and Terms .....................................................................................3

## ARTICLE II

### REPRESENTATIONS AND WARRANTIES

Section 2.01    Representations of City .................................................................................................3
Section 2.02.   Representations of the Developer ...................................................................................3
Section 2.03.   Developer's Acquisition of the Redevelopment District ...................................................3
Section 2.04.   Conditions to the Effective Date of this Agreement ........................................................3

## ARTICLE III

### REIMBURSEMENT OF REDEVELOPMENT PROJECT COSTS

Section 3.01.   Developer to Advance Costs ..........................................................................................3
Section 3.02.   City's Obligation to Reimburse Developer ......................................................................3
Section 3.03.   Developer Reimbursement Process ..................................................................................3
Section 3.04.   Right to Inspect and Audit .............................................................................................3
Section 3.05.   Limitation on City's Payment Obligations .....................................................................3

## ARTICLE IV

### THE REDEVELOPMENT PROJECT

Section 4.01.   Scope of the Project ......................................................................................................3
Section 4.02.   Project Schedule ...........................................................................................................3
Section 4.03.   Project Budget ..............................................................................................................3
Section 4.04.   Design of Project ..........................................................................................................3
Section 4.05.   Project Zoning, Planning, Platting and Construction.......................................................3
Section 4.06.   Rights of Access ...........................................................................................................3
Section 4.07.   Certificate of Substantial Completion.............................................................................3
Section 4.08.   Certificate of Minimum Investment ...............................................................................3

## ARTICLE V

### USE OF THE REDEVELOPMENT DISTRICT

Section 5.01.   Tenants and Land Use Restrictions..................................................................................3

Section 5.02.   Covenants, Conditions and Restrictions .......................................................3
Section 5.03.   Operation of Project.........................................................................................3
Section 5.04.   Copies of All Leases and Agreements ............................................................3
Section 5.05.   Sales Tax Information.......................................................................................3
Section 5.06.   Taxes, Assessments, Encumbrances and Liens..............................................3
Section 5.07.   Financing During Construction; Rights of Holders ......................................3
Section 5.08.   Covenant for Non-Discrimination ..................................................................3

## ARTICLE VI

## REIMBURSEMENT OF REDEVELOPMENT PROJECT COSTS;  TAX INCREMENT FINANCING

Section 6.01.   Advanced Funds Account ................................................................................3
Section 6.02.   Tax Increment Fund ........................................................................................3
Section 6.03.   City Administrative Service Fee .....................................................................3
Section 6.04.   Developer Pay As You Go ..............................................................................3
Section 6.05.   TDD Sales Tax Fund.......................................................................................3

## ARTICLE VII

## ASSIGNMENT; TRANSFER

Section 7.01.   Transfer of Obligations...................................................................................3
Section 7.02.   Corporate Reorganization ...............................................................................3
Section 7.03.   Prohibition Against Transfer of the Redevelopment District, the
                Buildings or Structures Therein .....................................................................3

## ARTICLE VIII

## GENERAL COVENANTS

Section 8.01.   Indemnification of City....................................................................................3
Section 8.02.   Insurance..........................................................................................................3
Section 8.03.   Obligation to Restore......................................................................................3
Section 8.04.   Non-liability of Officials, Employees and Agents of the City.......................3

## ARTICLE IX

## DEFAULTS AND REMEDIES

Section 9.01.   Developer Event of Default.............................................................................3
Section 9.02.   City Event of Default.......................................................................................3
Section 9.03.   Remedies Upon a Developer Event of Default................................................3
Section 9.04.   Remedies Upon a City Event of Default .........................................................3
Section 9.05.   Excusable Delays.............................................................................................3
Section 9.06.   Legal Actions ...................................................................................................3

## ARTICLE X

### GENERAL PROVISIONS

Section 10.01.   Mutual Assistance..............................................................................3
Section 10.02.   Effect of Violation of the Terms and Provisions of this Agreement;
                 No Partnership ....................................................................................3
Section 10.03.   Time of Essence.................................................................................3
Section 10.04.   Amendments......................................................................................3
Section 10.05.   Agreement Controls............................................................................3
Section 10.06.   Conflicts of Interest...........................................................................3
Section 10.07.   Term..................................................................................................3
Section 10.08.   Validity and Severability....................................................................3
Section 10.09.   Required Disclosures..........................................................................3
Section 10.10.   Tax Implications ................................................................................3
Section 10.11.   Authorized Parties.............................................................................3
Section 10.12.   Notice................................................................................................3
Section 10.13.   Kansas Law........................................................................................3
Section 10.14.   Counterparts......................................................................................3
Section 10.15.   Recordation of Agreement..................................................................3
Section 10.16.   Consent or Approval...........................................................................3

Exhibit A.   Legal Description of Redevelopment District
Exhibit B.   Form of Certificate of Redevelopment Project Costs
Exhibit C.   Form of Certificate of Substantial Completion
Exhibit D.   Project Budget
Exhibit E.   Design Standards
Exhibit F.   Restricted Land Uses within the Redevelopment District
Exhibit G.   Required Covenants, Conditions & Restrictions for the Redevelopment District
Exhibit H.   Certificate of Minimum Investment
Exhibit I.   Rooftop Flagpole Diagram

## 12TH & OREAD TAX INCREMENT FINANCING DISTRICT
## REDEVELOPMENT AGREEMENT

**THIS AGREEMENT** is entered into by and between the **CITY OF LAWRENCE, KANSAS**, a municipal corporation duly organized and existing under the laws of the State of Kansas as a city of the first class (the **"City"**), and **OREAD INN, L.C.**, a limited liability company organized and existing under the laws of the State of Kansas (the **"Developer,"** and together with the City, the **"Parties"**), and is dated as of April 8, 2008.

### RECITALS

**WHEREAS,** on February 19, 2008, the City created the 12th & Oread Tax Increment Financing Redevelopment District (the **"Redevelopment District"**) pursuant to K.S.A. 12-1770 *et seq.* (the **"Act"**) and Ordinance No. 8234 of the City; and

**WHEREAS,** the Redevelopment District consists of approximately 8.51 acres generally located from 13th Street on the South to approximately 9th Street on the North and Mississippi on the West and Louisiana on the East, in the City of Lawrence, Douglas County, Kansas, and is legally described on **Exhibit A** attached hereto; and

**WHEREAS,** pursuant to Ordinance No. 8234, the Redevelopment District consists of a single redevelopment project area the boundaries of which are the same as the boundaries of the Redevelopment District (the **"Project Area"**); and

**WHEREAS,** the Developer submitted to the City the Redevelopment Project Plan for the 12th & Oread Tax Increment Financing District, dated February 22, 2008 (the **"Project Plan"**), which was approved by the City on April 8, 2008, pursuant to Ordinance No. 8253; and

**WHEREAS,** the City and the Developer desire to enter into this Agreement to address issues related to development of the Redevelopment District and implementation of the Project Plan.

**NOW, THEREFORE,** in consideration of the foregoing, and of the mutual covenants and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties do hereby agree as follows:

### ARTICLE I

### DEFINITIONS AND RULES OF CONSTRUCTION

**Section 1.01.   Rules of Construction.** For all purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires, the following rules of construction apply in construing the provisions of this Agreement.

A.     The terms defined in this Article include the plural as well as the singular.

B.     All accounting terms not otherwise defined herein shall have the meanings assigned to them, and all computations herein provided for shall be made, in accordance with generally accepted accounting principles.

C.    All references herein to "generally accepted accounting principles" refer to such principles in effect on the date of the determination, certification, computation or other action to be taken hereunder using or involving such terms.

D.    All references in this instrument to designated "Articles," "Sections" and other subdivisions are to be the designated Articles, Sections and other subdivisions of this instrument as originally executed.

E.    The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section or other subdivision.

F.    The Article and Section headings herein are for convenience only and shall not affect the construction hereof.

G.    The representations, covenants and recitations set forth in the foregoing recitals are material to this Agreement and are hereby incorporated into and made a part of this Agreement as though they were fully set forth in this Section. The provisions of the Project Plan, and such resolutions and ordinances of the City introduced or adopted by the City Commission which designate the Redevelopment District and the Project Area and adopt the Project Plan, and the provisions of the Act, as amended, are hereby incorporated herein by reference and made a part of this Agreement, subject in every case to the specific terms hereof.

Section 1.02.    Definitions of Words and Terms.    Capitalized words used in this Agreement shall have the meanings set forth in the Recitals to this Agreement or they shall have the following meanings:

"Act" means the Kansas Tax Increment Financing District Act, K.S.A. 12-1770 et seq., as amended and supplemented from time to time.

"Advanced Funds" means initially the sum of $25,000.00, to be held by the City pursuant to **Section 6.01**.

"Advanced Funds Account" means an account to be created, held and administered by the City all pursuant to **Section 6.01**.

"Agreement" means this 12th & Oread Tax Increment Financing District Development Agreement, as amended from time to time.

"Applicable Law and Requirements" means any applicable constitution, treaty, statute, rule, regulation, ordinance, order, directive, code, interpretation, judgment, decree, injunction, writ, determination, award, permit, license, authorization, directive, requirement or decision of or agreement with or by Governmental Authorities.

"Certificate of Redevelopment Project Costs" means a certificate relating to Redevelopment Project Costs in substantially the form attached hereto as **Exhibit B**.

"Certificate of Substantial Completion" means a certificate evidencing Substantial Completion of the Project, in substantially the form attached hereto as **Exhibit C**.

2

ELECTRONICALLY FILED
2016 Nov 16 AM 9:06
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

"**City**" means the City of Lawrence, Kansas.

"**City Event of Default**" means any event or occurrence defined in <u>Section 9.02</u> of this Agreement.

"**City Representative**" means the Mayor or City Manager of the City, and such other person or persons at the time designated to act on behalf of the City in matters relating to this Agreement.

"**Construction Plans**" means plans, drawings, specifications and related documents, and construction schedules for the construction of the Project, together with all supplements, amendments or corrections, submitted by the Developer and approved by the City in accordance with this Agreement.

"**County**" means Douglas County, Kansas.

"**Developer**" means Oread Inn, L.C., a limited liability company organized and existing under the laws of the State of Kansas, and any successors and assigns approved pursuant to this Agreement.

"**Developer Event of Default**" means any event or occurrence defined in <u>Section 9.01</u> of this Agreement.

"**Developer Representative**" means Thomas Fritzel, Timothy Fritzel or such other person or persons at the time designated to act on behalf of the Developer in matters relating to this Agreement as evidenced by a written certificate furnished to the City containing the specimen signature of such person or persons and signed on behalf of the Developer.

"**Event of Default**" means any event or occurrence as defined in <u>Article IX</u> of this Agreement.

"**Excusable Delays**" means any delay beyond the reasonable control of the Party affected, caused by damage or destruction by fire or other casualty, strike, shortage of materials, unavailability of labor, adverse weather conditions such as, by way of illustration and not limitation, severe rain storms or below freezing temperatures of abnormal degree or abnormal duration, freezing temperatures that prevent the prudent installation of concrete or similar materials, tornadoes, and any other events or conditions, which shall include but not be limited to any litigation interfering with or delaying the construction of all or any portion of the Project in accordance with this Agreement, which in fact prevents the Party so affected from discharging its respective obligations hereunder.

"**Governmental Approvals**" means all plat approvals, re-zoning or other zoning changes, site plan approvals, conditional use permits, variances, building permits, architectural review or other subdivision, zoning or similar approvals required for the implementation of the Project and consistent with the Project Plan, the Site Plan, and this Agreement.

"**Governmental Authorities**" means any and all jurisdictions, entities, courts, boards, agencies, commissions, offices, divisions, subdivisions, departments, bodies or authorities of any type of any governmental unit (federal, state or local) whether now or hereafter in existence.

"**Incremental Tax Revenues**" means the Real Property Tax Revenues and the Sales Tax Revenues.

3

"**Oread**" means a multi-use structure consisting of approximately 106 rooms and associated mixed use commercial space to be located in the Project Area.

"**Oread Site**" means the approximately .746 acre site located at 12th and Oread within the Project Area upon which the Oread will be constructed.

"**Pay As You Go**" has the meaning set forth in **Section 3.02**.

"**Permitted Subsequent Approvals**" means the building permits and other governmental approvals customarily obtained prior to construction which have not been obtained on the date that this Agreement is executed, which the City or other governmental entity has not yet determined to grant.

"**Project**" means the project described in the Project Plan.

"**Project Area**" means the Project Area within the Redevelopment District, approved by Ordinance No. 8234, the boundaries of which are contiguous with the boundary of the Redevelopment District, all legally described in **Exhibit A** hereto.

"**Project Budget**" means the project budget for Redevelopment Project Costs as set forth in **Exhibit D** hereto.

"**Project Plan**" means the Redevelopment Project Plan for the 12th & Oread Tax Increment Financing District, dated February 22, 2008, which was approved by the City on April 8, 2008 pursuant to Ordinance No. 8253.

"**Public Improvements**" means the public improvements described in the Project Plan to be constructed and paid for by the Developer and in compliance with the provisions of **Section 4.05(B)(2)**.

"**Real Property Tax Revenues**" means the incremental increase in real property taxes within the Project Area, determined in accordance with the Act and the Project Plan. All incremental increases in real property taxes assessed on the portions of the Project Area other than the Oread Site, to the extent such increases are caused by the Oread or other activities that do not constitute a new project shall be considered Real Property Tax Revenues. Any increases in real property taxes caused by a new project in the Project Area will not be included in the TIF fund without the City's approval. The Parties specifically agree that a renovation of the Oread Apartments, 1201 Oread Avenue, or the residential structure located at 1209 Oread Avenue shall not constitute a new project, provided that there will be no reimbursement to Developer for any expenditures made in connection with those renovations without the City's approval.

"**Redevelopment District**" means the 12th & Oread Tax Increment Financing Redevelopment District, created by the City on February 19, 2008 by the adoption of Ordinance No. 8234, pursuant to the Act, and legally described on **Exhibit A** hereto.

"**Redevelopment Project Costs**" means "redevelopment project costs" as defined in the Act and as set forth in the Project Plan and this Agreement, including all necessary reserves, capitalized interest and costs of issuance.

4

"**Sales Tax Revenues**" means (a) 100% of the incremental increase in revenue received by the City from any local sales and use taxes in effect on the date hereof collected within the Redevelopment District, and (b) 100% of the incremental increase in revenue received by the County from any local sales and use taxes in effect on the date hereof collected within the Redevelopment District; all determined in accordance with the Act and the Project Plan.

"**Site Plan**" means the Final Development Plan for the Project Area submitted by the Developer to the City and approved by the City pursuant to applicable City ordinances, regulations and City code provisions, which may be approved as a whole or approved in phases or stages.

"**Substantial Completion**" has the meaning set forth in <u>Section 4.07</u>.

"**Tax Increment Fund**" means the 12th & Oread Tax Increment Fund, created pursuant to the Act and <u>Section 6.02</u> hereof.

"**TDD**" means the transportation development district to be created by the City within the portion of the Redevelopment District containing the Oread.

"**TDD Act**" means the transportation development district act contained in K.S.A. 12-17,140 *et seq.*

"**TDD Costs**" means those costs of the "project" as defined in the TDD Act that are approved by the City and are to be paid from the TDD Sales Tax.

"**TDD Sales Tax**" means the 1% transportation development district sales tax to be imposed within the TDD pursuant to the TDD Act.

"**TDD Sales Tax Fund**" means the 12th & Oread TDD Sales Tax Fund, created pursuant to the TDD Act and <u>Section 6.05</u> hereof.

"**WSJ Prime Rate**" means the interest rate published in The Wall Street Journal as the prime interest rate for U.S. commercial banks, as adjusted semi-annually on each January 1 and July 1 as such prime interest rate is adjusted.

# ARTICLE II

## REPRESENTATIONS AND WARRANTIES

Section 2.01   **Representations of City.**   The City makes the following representations and warranties, which to the best of the City's actual knowledge, are true and correct on the date hereof:

A.   <u>Due Authority</u>.   The City has full constitutional and lawful right, power and authority, under current applicable law, to execute and deliver and perform the terms and obligations of this Agreement, and this Agreement has been duly and validly authorized and approved by all necessary City

5

proceedings, findings and actions. Accordingly, this Agreement constitutes the legal valid and binding obligation of the City, enforceable in accordance with its terms.

B.    No Defaults or Violation of Law.  The execution and delivery of this Agreement, the consummation of the transactions contemplated hereby, and the fulfillment of the terms and conditions hereof do not and will not conflict with or result in a breach of any of the terms or conditions of any agreement or instrument to which it is now a party, and do not and will not constitute a default under any of the foregoing.

C.    No Litigation.  To the best of the City's knowledge, there is no litigation, proceeding or investigation pending or, to the knowledge of the City, threatened against the City with respect to the Project Plan or this Agreement.  In addition, no litigation, proceeding or investigation is pending or, to the knowledge of the City, threatened against the City seeking to restrain, enjoin or in any way limit the approval or issuance and delivery of this Agreement or which would in any manner challenge or adversely affect the existence or powers of the City to enter into and carry out the transactions described in or contemplated by the execution, delivery, validity or performance by the City of the terms and provisions of this Agreement.

D.    Governmental or Corporate Consents.  No consent or approval is required to be obtained from, and no action need be taken by, or document filed with, any governmental body or corporate entity in connection with the execution and delivery by the City of this Agreement.

E.    No Default.  No default or Event of Default has occurred and is continuing, and no event has occurred and is continuing which with the lapse of time or the giving of notice, or both, would constitute a default or an event of default in any material respect on the part of the City under this Agreement.

Section 2.02.    Representations of the Developer.

The Developer makes the following representations and warranties, which to the best of the Developer's actual knowledge, are true and correct on the date hereof:

A.    Due Authority.  The Developer has all necessary power and authority to execute and deliver and perform the terms and obligations of this Agreement and to execute and deliver the documents required of the Developer herein, and such execution and delivery has been duly and validly authorized and approved by all necessary proceedings. Accordingly, this Agreement constitutes the legal valid and binding obligation of the Developer, enforceable in accordance with its terms.

B.    No Defaults or Violation of Law.  The execution and delivery of this Agreement, the consummation of the transactions contemplated hereby, and the fulfillment of the terms and conditions hereof do not and will not conflict with or result in a breach of any of the terms or conditions of any corporate or organizational restriction or of any agreement or instrument to which it is now a party, and do not and will not constitute a default under any of the foregoing.

C.    No Litigation.  No litigation, proceeding or investigation is pending or, to the knowledge of the Developer, threatened against the Project, the Developer or any officer, director, member or shareholder of the Developer.  In addition, no litigation, proceeding or investigation is pending or, to the knowledge of the Developer, threatened against the Developer seeking to restrain, enjoin or in any way

6

limit the approval or issuance and delivery of this Agreement or which would in any manner challenge or adversely affect the existence or powers of the Developer to enter into and carry out the transactions described in or contemplated by the execution, delivery, validity or performance by the Developer, of the terms and provisions of this Agreement.

D.   No Material Change.  (1) The Developer has not incurred any material liabilities or entered into any material transactions other than in the ordinary course of business except for the transactions contemplated by this Agreement and (2) there has been no material adverse change in the business, financial position, prospects or results of operations of the Developer, which could affect the Developer's ability to perform its obligations pursuant to this Agreement from that shown in the financial information provided by the Developer to the City prior to the execution of this Agreement.

E.   Governmental or Corporate Consents.  No consent or approval is required to be obtained from, and no action need be taken by, or document filed with, any governmental body or corporate entity in connection with the execution, delivery and performance by the Developer of this Agreement.

F.   No Default.  No default or Event of Default has occurred and is continuing, and no event has occurred and is continuing which with the lapse of time or the giving of notice, or both, would constitute a default or an event of default in any material respect on the part of the Developer under this Agreement, or any other material agreement or material instrument to which the Developer is a party or by which the Developer is or may be bound.

G.   Approvals.  Except for Permitted Subsequent Approvals, the Developer has received and is in good standing with respect to all certificates, licenses, inspections, franchises, consents, immunities, permits, authorizations and approvals, governmental or otherwise, necessary to conduct and to continue to conduct its business as heretofore conducted by it and to own or lease and operate its properties as now owned or leased by it.  Except for Permitted Subsequent Approvals, the Developer has obtained all certificates, licenses, inspections, franchises, consents, immunities, permits, authorizations and approvals, governmental or otherwise, necessary to acquire, construct, equip, operate and maintain the Project.  The Developer reasonably believes that all such certificates, licenses, consents, permits, authorizations or approvals which have not yet been obtained will be obtained in due course.

H.   Construction Permits.  Except for Permitted Subsequent Approvals, all governmental permits and licenses required by applicable law to construct, occupy and operate the Project have been issued and are in full force and effect or, if the present stage of development does not allow such issuance, the Developer reasonably believes, after due inquiry of the appropriate governmental officials, that such permits and licenses will be issued in a timely manner in order to permit the Project to be constructed.

I.   Compliance with Laws.  The Developer is in compliance with all valid laws, ordinances, orders, decrees, decisions, rules, regulations and requirements of every duly constituted governmental authority, commission and court applicable to any of its affairs, business, operations as contemplated by this Agreement.

J.   Other Disclosures.  The information furnished to the City by the Developer in connection with the matters covered in this Agreement are true and correct and do not contain any untrue statement of any material fact and do not omit to state any material fact required to be stated therein or necessary to make any statement made therein, in the light of the circumstances under which it was made, not misleading.

K.    Project.  The Developer represents and warrants that the Project Area is sufficient to construct the Project as contemplated in the Project Plan and this Agreement.

Section 2.03.    Developer's Acquisition of the Redevelopment District.  At the time that this Agreement is executed, Developer represents that it owns legal title to the Oread Site.  All of the real property acquired by the Developer, subject to the rights of assignment under **Article VII** and further subject to **Section 5.07**, shall be held in the name of the Developer and shall be subject to the terms, conditions and covenants contained in this Agreement and in the Project Plan immediately upon acquisition and prior to any encumbrances placed thereon.

Section 2.04.    Conditions to the **Effective Date of this Agreement.**  Contemporaneously with the execution of this Agreement, and as a precondition to the effectiveness of this Agreement, the Developer shall submit the following documents to the City:

A.    A copy of the Developer's Articles of Organization, certified by the Secretary of State of the State of Kansas; and

B.    A certified copy of the Operating Agreement of the Developer; and

C.    A legal opinion from counsel to the Developer in form and substance acceptable to the City covering:  (i) the due organization of the Developer and the power and authority of the Developer to execute this Agreement, and (ii) the enforceability of this Agreement against the Developer; and

D.    A title insurance commitment or policy in a form acceptable to the City regarding the Developer's fee simple ownership of the Oread Site, subject only to standard title exceptions, those exceptions to which the Developer did not object in connection with the purchase of the Oread Site, and mortgages permitted by Section 5.07.

## ARTICLE III

## REIMBURSEMENT OF REDEVELOPMENT PROJECT COSTS

Section 3.01.    Developer to Advance Costs.  The Developer agrees to advance all Redevelopment Project Costs as necessary to complete the Project, all subject to the Developer's right to terminate this Agreement as set forth in **Section 9.04**.

The parties acknowledge and agree that pursuant to Resolution 6753 the Developer has advertised in the *Lawrence Journal World* that the structure at 1142 Indiana Street is available to be moved at the sole expense of a qualified and willing interested party.  The parties further acknowledge and agree that the Developer established a reasonable deadline for such relocation of the structure to occur, offered to contribute the sum of $10,000.00 to a qualified buyer, and that no such qualified and willing interested party came forward, and consequently the parties agree that the structure may be demolished by the Developer, at its sole cost and expense, upon securing the appropriate demolition permit, which shall be issued to the Developer pursuant to Resolution 6753 upon the approval by the City Commission of this Agreement.

8

**Section 3.02.    City's Obligation to Reimburse Developer.**

A.    <u>Obligation to Reimburse</u>.  Subject to the terms of this Agreement and the conditions in this Section, the City agrees, solely and exclusively from Incremental Tax Revenues and TDD Sales Tax, to reimburse Developer for Redevelopment Project Costs and TDD Costs in a total amount not to exceed $11,000,000 plus interest at Developer's actual borrowing rate (but not to exceed the WSJ Prime Rate plus 1%); provided however that once the Developer has been reimbursed $7,100,000 plus interest, then the amount of Incremental Tax Revenues available for reimbursement will be reduced to 50% of Real Property Tax Revenues and 50% of Sales Tax Revenues plus 100% of the TDD Sales Tax.  Developer may be reimbursed for Redevelopment Project Costs from the Tax Increment Fund by the City as funds are collected in the Tax Increment Fund (the "Pay As You Go" method, as defined in <u>Section 6.04</u>).  The Parties agree that such reimbursement shall be made only on a Pay As You Go basis solely from Incremental Tax Revenues and TDD Sales Tax.  The City shall have no obligation to reimburse Developer until funds are available in the Tax Increment Fund.  Nothing in this Agreement shall obligate the City to reimburse Developer for any cost that is not a "Redevelopment Project Cost" as defined by the Act or a cost of the project under the TDD Act.

B.    <u>Source of Reimbursement</u>.  The City shall make payments from the Tax Increment Fund on a Pay As You Go basis in the order of priority set forth in <u>Section 6.02</u>.

**Section 3.03.    Developer Reimbursement Process.**

A.    All requests for reimbursement of Redevelopment Project Costs shall be made in a Certificate of Redevelopment Project Costs in substantial compliance with the form attached hereto as <u>Exhibit B</u>.  The Developer shall provide itemized invoices, receipts or other information, if any, to confirm that any such cost is so incurred and does so qualify as an Redevelopment Project Cost.  The Developer shall provide such additional information as requested by the City to confirm that the such costs have been incurred and qualify as Redevelopment Project Costs.

B.    The City reserves the right to have its engineer or other agents or employees inspect all work in respect of which a Certificate of Redevelopment Project Costs is submitted, to examine the Developer's and others' records relating to all expenses related to the invoices to be paid, and to obtain from such parties such other information as is reasonably necessary for the City to evaluate compliance with the terms hereof.

C.    The City shall have 30 calendar days after receipt of any Certificate of Redevelopment Project Costs to review and respond by written notice to the Developer.  If the submitted Certificate of Redevelopment Project Costs and supporting documentation demonstrates that (1) the request relates to the Redevelopment Project Costs; (2) the expense was incurred; (3) Developer is not in material default under this Agreement; and (4) there is no fraud on the part of the Developer, then the City shall approve the Certificate of Redevelopment Project Costs and make, or cause to be made, reimbursement from the Tax Increment Fund in accordance with <u>Section 3.05</u> and <u>Article VI</u> hereof, within thirty (30) days of the City's approval of the Certificate of Redevelopment Project Costs.  If the City reasonably disapproves of the Certificate of Redevelopment Project Costs, the City shall notify the Developer in writing of the reason for such disapproval within such 30-day period.  Approval of the Certificate of Redevelopment Project Costs will not be unreasonably withheld.

D.    If the Developer submits a Certificate of Redevelopment Project Costs for an amount greater than the current balance in the Tax Increment Fund, any unpaid Redevelopment Project Costs described in

9

such Certificate shall remain approved by the City and shall be paid within thirty (30) calendar days of the date additional funds are deposited in the Tax Increment Fund, to the extent of such funds, until the Developer is fully reimbursed for the Redevelopment Project Costs described in such Certificate.

E.     Nothing in this Agreement shall prohibit the Developer from submitting Certificates of Redevelopment Project Costs covering the Developer's interest expenses on any Redevelopment Project Costs not previously reimbursed.

Section 3.04.     **Right to Inspect and Audit.**  The Developer agrees that, up to one year after completion of the Project, the City, with reasonable advance notice and during normal business hours, shall have the right and authority to review, audit, and copy, from time to time, all the Developer's books and records relating to the Redevelopment Project Costs (including, but not limited to, all general contractor's sworn statements, general contracts, subcontracts, material purchase orders, waivers of lien, paid receipts and invoices).

Section 3.05.     **Limitation on City's Payment Obligations.**  Notwithstanding any other term or provision of this Agreement, the City's obligation to reimburse Developer for Redevelopment Project Costs shall be limited to monies in the Tax Increment Fund, and shall not be payable from any other source.

## ARTICLE IV

## THE REDEVELOPMENT PROJECT

Section 4.01.     **Scope of the Project.**  Subject to the terms and conditions of the Project Plan and this Agreement, the Developer shall construct, or cause to be constructed, the Project.

Section 4.02.     **Project Schedule.**

A.     Immediately after execution of this Agreement, the Developer shall commence and shall promptly thereafter diligently prosecute to completion the construction of the Project.  The completion of the Project shall be evidenced by the City delivery of a Certificate of Substantial Completion in accordance with **Section 4.07** of this Agreement.

B.     The Developer shall commence and complete each of its obligations under this Agreement with respect to the acquisition, construction and completion of the Project within thirty (30) months of the date the governing body of the City approves this Agreement.  The completion of the Project shall be evidenced by the City's delivery of a Certificate of Substantial Completion regarding the Project in accordance with **Section 4.07** of this Agreement.  Except in the event of any Excusable Delays, the Developer's failure to obtain a Certificate of Substantial Completion regarding the Project within thirty (30) months from the date of this Agreement shall constitute an Event of Default for purposes of **Section 9.01**.

Section 4.03.     **Project Budget.**  The Project shall be constructed substantially in accordance with the Project Budget attached as **Exhibit D** hereto.  Notwithstanding the previous sentence, deviations from the Project Budget of any line item in the Project Budget by less than 10% caused or necessitated by unforeseen price fluctuations, the scarcity of any construction material, or the existence of any shortage of labor services are expressly acknowledged and shall not constitute an Event of Default hereunder.  Any

10

deviations of any line item in the Project Budget by more than 10% shall require the prior approval of the City, which approval shall not be unreasonably delayed or withheld.

Section 4.04.    Design of Project.

A.    In order to further the development of the Redevelopment District, the City hereby authorizes the Developer to construct, or cause to be constructed, the Project according to the final plans approved in writing by the City during the normal course of obtaining the Permitted Subsequent Approvals .

B. Developer shall comply or cause compliance with the design standards and requirements attached hereto as **Exhibit E** in the construction of the Project.

Section 4.05.    Project Zoning, Planning, Platting and Construction.

A.    Site Plan.  The Developer shall prepare and submit a Site Plan for the Project Area to the City for review and approval pursuant to the City Code.  The Site Plan shall be in conformance with the Project Plan and this Agreement.

B.    Public Improvements.  The Developer and the City agree that the public improvements shall be constructed in accordance with the following requirements:

1.    Developer shall submit the plans and specifications for the public improvements and traffic control plan to City Engineer for written approval.

2.    Once the plans and specifications for the public improvements and traffic control plan are approved by City Engineer, then the Developer shall submit to the City the proposed construction agreement(s) with any contractor who will perform any part of the public improvements for approval by the City.

3.    Prior to commencing construction of the public improvements portion of the Project, the Developer shall submit to the City a construction schedule for the public improvements for approval by the City.

4.    Once the Developer has obtained all necessary approvals, the Developer shall submit to the City written verification from Developer's lender in a form satisfactory to the City to demonstrate that the Developer has sufficient funds to complete the construction of the public improvements in a timely fashion and in accordance with the plans and specifications approved by the City.

5.    The City will conduct its normal inspections of the construction of the public improvements and charge its normal inspection fees.

6.    Developer will cause to be provided to the City all necessary bonds in connection with the construction of the public improvements.

7.    Upon receipt of all approvals and deposit of financial assurances to the City, the City will then issue a notice to proceed with the public improvements.

11

     C.     <u>Zoning, Planning and Platting.</u>  The City agrees to consider and act on any zoning, planning and platting applications by the Developer in due course and good faith.

     D.     <u>Construction Plans.</u>  After approval of the Site Plan, the Developer shall submit Construction Plans for the Project for review and approval pursuant to City Code.  Construction Plans may be submitted in phases or stages.  The Construction Plans shall be in sufficient completeness and detail to show that construction will be in conformance with the Project Plan and this Agreement.  The Developer agrees that all construction, improvement, equipping, and installation work on the Project shall be done in accordance with the Site Plan, Construction Plans and related documents to be approved by the City in compliance with City Code.

     E.     <u>Construction Permits and Approvals.</u>  Before commencement of construction or development of any buildings, structures or other work or improvements, the Developer shall, at its own expense, secure or cause to be secured any and all permits and approvals which may be required by the City and any other governmental agency having jurisdiction as to such construction, development or work.  The City shall cooperate with and provide all usual assistance to the Developer in securing these permits and approvals, and shall diligently process, review and consider all such permits and approvals as may be required by law.

     F.     <u>Project Schedule.</u>  The Developer shall commence construction of the Project in good and workmanlike manner in accordance with the terms of this Agreement.  The Developer shall cause the Project to be completed with due diligence.  Upon reasonable advance notice, the Developer shall meet with the City to review and discuss the design and construction of the Project in order to enable the City to monitor the status of construction and to determine that the Project is being performed and completed in accordance with this Agreement.

     G.     <u>Continuation and Completion.</u>  Subject to Excusable Delays, once the Developer has commenced construction of the Project, or a particular phase of the Project as approved by the City, the Developer shall not permit cessation of work on the Project or such phase of the Project for a period in excess of 45 consecutive days or 90 days in the aggregate without prior written consent of the City.

     H.     <u>Periodic Review.</u>  The City and the City's Engineer shall have the right to review in a monthly project team meeting the design and construction of the Project to determine that they are being performed and completed in accordance with this Agreement, the Project Plan and all Applicable Law and Requirements.  If the Project is not being designed or constructed in accordance with the approved Site Plan, the Project Plan, or this Agreement, after consulting with the Developer, the City's Engineer shall promptly deliver written notice to the Developer and the Developer shall promptly correct such deficiencies.

     I.     <u>Antidiscrimination During Construction.</u>  The Developer, for itself, its successors and assigns, and any contractor with whom the Developer has contracted for the performance of work on the Project, agrees that in the construction, renovation, improvement, equipping, repair and installation of the Project provided for in this Agreement, the Developer shall not discriminate against any employee or applicant for employment because of race, color, creed, religion, age, sex, marital status, handicap, national origin, sexual orientation or ancestry.

     **Section 4.06.**     **Rights of Access.**  Representatives of the City shall have the right of access to the Redevelopment District, without charges or fees, upon at least 24 hours prior written notice, at normal construction hours during the period of construction, at normal construction hours during the period of

12

construction, for the purpose of ensuring compliance with this Agreement, including, but not limited to, the inspection of the work being performed in constructing, renovating, improving, equipping, repairing and installing the project, so long as they comply with all safety rules. Except in case of emergency, prior to any such access, such representatives of the City will check in with the on-site manager and Developer's Representative. Such representatives of the City shall carry prior identification, shall insure their own safety, assuming the risk of injury, and shall not interfere with the construction activity. The Developer may require such representatives to sign a waiver of liability prior to being permitted on-site.  Notwithstanding any provision is this Agreement to the contrary, the City and its officers, employees and agents shall retain all rights of access to the Project pursuant to State law and the City Code.

Section 4.07.    Certificate of Substantial Completion.  Promptly after Substantial Completion of the Project in accordance with the provisions of this Agreement, the Developer may submit a Certificate of Substantial Completion to the City. Substantial Completion shall mean that the Developer has completed:  (i) all Public Improvements, (ii) at least ninety-five percent (95%) of that portion of the Project relating to the Hotel and parking structure, and (iii) the cold shell for all condominium units and all other commercial space that constitutes part of the Project.  The Certificate of Substantial Completion shall be in substantially the form attached as **Exhibit C.**  The City shall, within a reasonable period of time following delivery of the Certificate of Substantial Completion, carry out such inspections as it deems necessary to verify to its reasonable satisfaction the accuracy of the certifications contained in the Certificate of Substantial Completion. The City's execution of the Certificate of Substantial Completion shall constitute evidence of the satisfaction of the Developer's agreements and covenants to construct the applicable phase of the Project to which the Certificate of Substantial Completion relates.

Section 4.08.    Certificate of Minimum Investment.  No later than thirty (30) days after delivery of the Certificate of Substantial Completion required by **Section 4.07**, the Developer shall deliver to the City a Certificate of Minimum Investment in substantially the form attached as **Exhibit H.**

# ARTICLE V

## USE OF THE REDEVELOPMENT DISTRICT

Section 5.01.    Tenants and Land Use Restrictions.  At all times while this Agreement is in effect:

A.      Conformance with Project Plan.  The Project Area shall be developed, and the Project constructed, in accordance with this Agreement and the Project Plan submitted by the Developer and approved by the City. No "substantial changes," as defined by K.S.A. 12-1770a(t), shall be made to the Project except as may be mutually agreed upon, in writing, between the Developer and the City and as provided in the Act.

B.      Land Use Restrictions.  The types of land uses set forth in **Exhibit F** hereto are prohibited within the Redevelopment District, unless approved in writing by the City prior to the execution of a letter of intent, lease or prior to the sale of land.

Section 5.02.    Covenants, Conditions and Restrictions.  As a condition of the City issuing a temporary or permanent certificate of occupancy for the Oread, the Developer shall (i) prepare and submit to the City Covenants, Conditions and Restrictions ("CC&Rs") and (ii) the Developer shall have completed the

13

construction of the Public Improvements and the City shall have accepted the Public Improvements. The CC&Rs shall contain the provisions set forth on **Exhibit G**. The CC&Rs shall be a permanent encumbrance covering the entirety of the Redevelopment District. The form and substance of the CC&Rs shall be acceptable to the City and the CC&Rs shall not be recorded until the City has approved the final CC&Rs in writing. The Developer will then file the CC&Rs for record in the office of the Douglas County Register of Deeds after written approval by the City.

**Section 5.03.    Operation of Project.** The Project shall comply with all applicable building and zoning, health, environmental and safety resolutions and laws and all other applicable laws, rules and regulations. The Developer shall, at its own expense, secure or cause to be secured any and all permits which may be required by the City and any other governmental agency having jurisdiction for the construction and operation of the Project, including but not limited to, obtaining all necessary rental licenses and paying any necessary fees to obtain required permits and licenses. The Project may contain a maximum of six (6) permanent flagpoles on the roof of the Oread, each flagpole shall have a maximum height of twenty-five (25) feet. A maximum of fourteen (14) additional temporary flags may be displayed on temporary flagpoles (each with a maximum height of twenty-five (25) feet) on the roof of the Oread for special events for a maximum of ninety (90) days per year. The flag display on the roof of the Oread shall be in substantially the form shown on **Exhibit I**.

**Section 5.04.    Copies of All Leases and Agreements.** The City and its duly authorized agents shall have the right at reasonable times (during business hours), and upon reasonable notice to inspect copies of all leases, sale contracts and other material agreements between the Developer and any third party relating to the Project at the principal business office of the Developer, in a manner that maintains the confidentiality of such leases and agreements.

**Section 5.05.    Sales Tax Information.**

A.      The Developer agrees to provide the City Manager written notice of all current tenants of the Project on November 1 of each year and at all other times upon the written request of the City Manager.

B.      The Developer agrees to cause all assignees, purchasers, tenants, subtenants or any other entity acquiring property or occupancy rights in the Redevelopment District to be obligated by written contract (lease agreement or other enforceable document) to provide to the City Manager simultaneously with submission to the Kansas Department of Revenue the monthly sales tax returns for their facilities in the Redevelopment District. This obligation shall be a covenant running with the land and shall be enforceable against all businesses operating in the Redevelopment District and shall only terminate upon the passage by the City of an ordinance terminating the Project Plan. The Developer hereby agrees that each such lease agreement shall provide that the City is an intended third party beneficiary of such provisions and has a separate and independent right to enforce such provisions directly against such tenant or purchaser.

C.      To the extent it may legally do so, information obtained pursuant to this Section shall be kept confidential by the City in accordance with K.S.A. 79-3657. In furtherance of maintaining the confidentiality of the information provided in this Section 5.05, the City shall take all reasonable steps necessary to ensure that such information is kept confidential.

D.      Developer agrees to use its best efforts to obtain waivers consenting to the release by the City of aggregate Sales Tax Revenues generated within the Redevelopment District from all assignees,

14

purchasers, tenants, subtenants or any other entity acquiring property or occupancy rights in the Redevelopment District.

Section 5.06.   Taxes, Assessments, Encumbrances and Liens.

A.   The Developer shall pay when due all real estate taxes and assessments on the Redevelopment District. Nothing herein shall be deemed to prohibit the Developer from contesting the validity or amounts of any tax, assessment, encumbrance or lien, nor to limit the remedies available to the Developer in respect thereto. The Developer and any other owners of real property in the Redevelopment District shall promptly notify the City in writing of a protest of real estate taxes or valuation of the Developer's or such other owners' property within the Redevelopment District.

B.   Subject to Section 5.07, Developer agrees that no mechanics' or other liens shall be established or remain against the Project, or the funds in connection with any of the Project, for labor or materials furnished In connection with any acquisition, construction, additions, modifications, improvements, repairs, renewals or replacements so made. However, the Developer shall not be in default if mechanics' or other liens are filed or established and the Developer contests in good faith said mechanics' liens and in such event may permit the items so contested to remain undischarged and unsatisfied during the period of such contest and any appeal therefrom. The Developer hereby agrees and covenants to indemnify and hold harmless the City in the event any liens are filed against the Project as a result of acts of the Developer, its agents or independent contractors.

Section 5.07.   Financing During Construction; Rights of Holders.

A.   No Encumbrances Except Mortgages during Construction. Notwithstanding any other provision of this Agreement, mortgages are permitted for the acquisition, construction, renovation, improvement, equipping, repair and installation of the Project and to secure permanent financing thereafter. However, nothing contained in this paragraph is intended to permit or require the subordination of general property taxes, special assessments or any other statutorily authorized governmental lien to be subordinate in the priority of payment to such mortgages.

B.   Holder Not Obligated to Construct Improvements. The holder of any mortgage authorized by this Agreement shall not be obligated by the provisions of this Agreement to construct or complete the Project or to guarantee such construction or completion; nor shall any covenant or any other provision in the deed for the Redevelopment District be construed so to obligate such holder. Nothing in this Agreement shall be deemed to construe, permit or authorize any such holder to devote the Redevelopment District to any uses or to construct any improvements thereon, other than those uses or improvements provided for or authorized by this Agreement.

C.   Notice of Default to Mortgage Holders; Right to Cure. With respect to any mortgage granted by Developer as provided herein, whenever the City shall deliver any notice or demand to Developer with respect to any breach or default by the Developer in completion of construction of the Project, the City shall at the same time deliver to each holder of record of any mortgage authorized by this Agreement a copy of such notice or demand, but only if City has been requested to do so in writing by Developer. Each such holder shall (insofar as the rights of the City are concerned) have the right, at its option, within ninety (90) days after the receipt of the notice, to cure or remedy or commence to cure or remedy any such default and to add the cost thereof to the mortgage debt and the lien of its mortgage. Nothing contained in this Agreement shall be deemed to permit or authorize such holder to undertake or

15

continue the construction or completion of the Project (beyond the extent necessary to conserve or protect the Project or construction already made) without first having expressly assumed the Developer's obligations to the City by written agreement satisfactory to and with the City. The holder, in that event, must agree to complete, in the manner provided in this Agreement, that portion of the Project to which the lien or title of such holder relate, and submit evidence satisfactory to the City that it has the qualifications and financial responsibility necessary to perform such obligations.

D.      The restrictions on Developer financing in this Section are intended to and shall apply only to financing during the construction period for the improvements and any financing obtained in connection therewith. Nothing in this Agreement is intended or shall be construed to prevent the Developer from obtaining any financing for the Project or any aspect thereof.

**Section 5.08.   Covenant for Non-Discrimination.** The Developer covenants by and for itself and any successors in interest that there shall be no discrimination against or segregation of any person or group of persons on account of race, color, creed, religion, sex, familial status, marital status, age, handicap, national origin, sexual orientation or ancestry in the sale, lease, sublease, transfer, use, occupancy, tenure or enjoyment of the Redevelopment District, nor shall the Developer itself or any person claiming under or through it establish or permit any such practice or practices of discrimination or segregation with reference to the selection, location, number, use or occupancy of tenants, lessees, subtenants, sublessees or vendees of the Redevelopment District.

The covenant established in this Section shall, without regard to technical classification and designation, be binding for the benefit and in favor of the City, its successors and assigns and any successor in interest to the Redevelopment District or any part thereof. The covenants contained in this Section shall remain for so long as this Agreement is in effect.

## ARTICLE VI

## REIMBURSEMENT OF REDEVELOPMENT PROJECT COSTS; TAX INCREMENT FINANCING

**Section 6.01.   Advanced Funds Account.**

A.      <u>Creation of Account; Initial Deposit.</u> The City acknowledges receipt from the Developer of a prior deposit with the City equal to the sum of **$25,000.00** (the **"Advanced Funds"**), to be held by the City in a separate, segregated account of the City to be known as the "Advanced Funds Account." The City may invest the Advanced Funds in the same manner as other funds of the City are invested, and interest earnings shall remain in the Advanced Funds Account.

B.      <u>Use and Replenishment of Advanced Funds.</u> The City may use the Advanced Funds for payment or reimbursement of City costs and expenses and legal and other third-party professional fees and expenses incurred by the City in connection with providing the necessary legal, financial and planning assistance, including consultants engaged by the City, to implement, administer and enforce this Agreement, create the Redevelopment District and adopt the Project Plan. The City shall submit to the Developer an itemized statement of actual payments made from the Advanced Funds Account for such expenses on a regular periodic basis, but no more often than monthly and no less often than quarterly. The Developer shall advance to the City the amounts set forth on such statements within thirty days of receipt thereof, which shall

be deposited in the Advanced Funds Account so that the balance of the Advanced Funds Account remains at $10,000.00. If such funds are not received, the unpaid balance shall be subject to a penalty of one and one half percent (1.5%) per month until paid, but in no event shall such penalty exceed eighteen percent (18%) per annum, and the City shall be relieved of any and all obligations hereunder until paid or may terminate this Agreement pursuant to **Article IX** hereof. Developer shall supply the Advanced Funds in a timely manner so that City activities may continue without interruption.

C.    Reimbursement of Advanced Funds.  The initial deposit by the Developer to establish the Advanced Funds Account, the money paid by the City from the Advanced Funds Account, and any additional funds paid by the Developer to the City to replenish the Advanced Funds Account shall be Redevelopment Project Costs which may be reimbursed from the Tax Increment Fund in the order of priority set forth in **Section 6.02**. The deposit of funds by the Developer pursuant to this Section does not in any way mitigate or lessen the Developer's obligation to pay or reimburse the City for certain fees and expenses to the extent otherwise required by this Agreement.

D.    Return of Advanced Funds.  Thirty days following the City's acceptance of the Certificate of Substantial Completion, the City shall remit to the Developer any amounts that have been advanced under this Section (including interest earnings on such amounts) and which have not been spent for costs incurred by the City pursuant to this Section.

E.    Reimbursement of Expenses.  Notwithstanding anything in this Section 6.01 to the contrary, any sums disbursed from the Advanced Funds Account to cover expenses incurred in connection with the use of TIF shall be a Redevelopment Project Cost, reimbursable to the Developer.

Section 6.02.    Tax Increment Fund.

A.    Creation of Fund; Deposit of Incremental Tax Revenues.  The City shall establish and maintain a separate fund and account known as the 12th & Oread Tax Increment Fund (the "Tax Increment Fund"). All Incremental Tax Revenues shall be deposited into the Tax Increment Fund.

B.    Disbursements from Fund.  All disbursements from the Tax Increment Fund shall be made only to pay Redevelopment Project Costs. The City shall have sole control of the disbursements from the Tax Increment Fund. Such disbursements shall be made in the following manner and order of preference:

1.    Reimbursement of Redevelopment Project Costs incurred by the City, if any; and

2.    Reimbursement of Redevelopment Project Costs incurred by the Developer.

The City may continue to use any surplus amounts of Incremental Tax Revenues that result after all of the above payments have been made, for any purpose authorized by the Act until such time as the Project is completed, but for not to exceed 20 years from the date of the approval of the Project Plan.

Section 6.03.    City Administrative Service Fee.  As a result of the public improvements being financed with Incremental Tax Revenues and the TDD Sales Tax, the City agrees not to charge any administrative service fees in connection with the administration and other City costs of the Incremental Tax Revenues and TDD Sales Tax.

17

Section 6.04.    Developer Pay As You Go.  Developer has elected to be reimbursed on a Pay As You Go Basis as monies become available in the Tax Increment Fund, in accordance with <u>Sections 3.02 and 6.02</u> hereof.

Section 6.05.    TDD Sales Tax Fund.

A.    <u>Creation of Fund; Deposit of TDD Sales Tax.</u>  The City shall establish and maintain a separate fund and account known as the 12th & Oread TDD Sales Tax Fund (the **"TDD Sales Tax Fund"**). All TDD Sales Tax shall be deposited into the TDD Sales Tax Fund.

B.    <u>Disbursements from Fund.</u>  All disbursements from the TDD Sales Tax Fund shall be made only to pay TDD Costs.  The City shall have sole control of the disbursements from the TDD Sales Tax Fund.

The City may continue to use any surplus amounts of TDD Sales Tax after all TDD Costs have been reimbursed, for any purpose authorized by the TDD Act.

## ARTICLE VII

## ASSIGNMENT; TRANSFER

Section 7.01.    Transfer of Obligations.

A.    The rights, duties and obligations hereunder of the Developer may not be assigned, in whole or in part, to another entity, without the prior approval of the City Commission by resolution following verification by the Director of Legal Services that the assignment complies with the terms of this Agreement. Any proposed assignee shall have qualifications and financial responsibility, as determined by the City Manager, necessary and adequate to fulfill the obligations of the Developer with respect to the portion of the Redevelopment District being transferred.  Any proposed assignee shall, by instrument in writing, for itself and its successors and assigns, and expressly for the benefit of the City, assume all of the obligations of the Developer under this Agreement and agree to be subject to all the conditions and restrictions to which the Developer is subject (or, in the event the transfer is of or relates to a portion of the Redevelopment District, such obligations, conditions and restrictions to the extent that they relate to such portion).  The Developer shall not be relieved from any obligations set forth herein unless and until the City specifically agrees to release the Developer.  The Developer agrees to record all assignments in the office of the Register of Deeds of Douglas County, Kansas, in a timely manner following the execution of such agreements.

B.    The Parties' obligations pursuant to this Agreement, unless earlier satisfied, shall inure to and be binding upon the heirs, executors, administrators, successors and assigns of the respective parties as if they were in every case specifically named and shall be construed as a covenant running with the land, enforceable against the purchasers or other transferees as if such purchaser or transferee were originally a party and bound by this Agreement.  Notwithstanding the foregoing, no tenant of any part of the Redevelopment District shall be bound by any obligation of the Developer solely by virtue of being a tenant; provided, however, that no transferee or owner of property within the Redevelopment District except the Developer shall be entitled to any rights whatsoever or claim upon the Tax Increment Revenues as set forth herein, except as specifically authorized in writing by the Developer.

18

C.     The foregoing restrictions on assignment, transfer and conveyance shall not apply to (a) any security interest granted to secure indebtedness to any construction or permanent lender, or (b) the sale, rental and leasing of portions of the Redevelopment District for the uses permitted under the terms of this Agreement.

Section 7.02.   Corporate Reorganization; Assignment or Transfer to Related Party. Notwithstanding anything in this Agreement to the contrary, the Developer may form additional development or ownership entities to replace or joint venture with Developer for the purpose of estate planning or any other purpose; provided that the current principals of Developer (Thomas Fritzel, Timothy Fritzel, Andy Fritzel and Todd Sutherland and their lineal descendants) own not less than 51% of any new or restructured company (a "Related Entity"). Any assignment or transfer to a Related Entity shall be automatically permitted by the City upon receipt by the City of the documentation described in Section 7.01.A.

Section 7.03.   Prohibition Against Transfer of the Redevelopment District, the Buildings or Structures Therein. The Developer shall not, except as permitted by this Agreement and in accordance with the Act, without prior written approval of the City which shall not be unreasonably withheld, make any total or partial sale, transfer, conveyance, assignment or lease of the Oread Site or the Oread except as permitted by this Agreement. This prohibition shall not be deemed to prevent the granting of temporary or permanent easements or permits to facilitate the development of the Redevelopment District or to prohibit or restrict the leasing of any part or parts of a building, structure or land for a term commencing on completion.


# ARTICLE VIII

# GENERAL COVENANTS

Section 8.01.   Indemnification of City.

A.     Developer agrees to indemnify and hold the City, its employees, agents and independent contractors and consultants (collectively, the "City Indemnified Parties") harmless from and against any and all suits, claims, costs of defense, damages, injuries, liabilities, judgments, costs and/or expenses, including court costs and attorneys fees, resulting from, arising out of, or in any way connected with:

1.     the Developer's actions and undertaking in implementation of the Project Plan or this Agreement; and

2.     the negligence or willful misconduct of Developer, its employees, agents or independent contractors and consultants in connection with the management, design, development, redevelopment and construction of the Project.

3.     any delay or expense resulting from any litigation filed against the Developer by any member or shareholder of the Developer, any prospective investor, prospective partner or joint venture partner, lender, co-proposer, architect, contractor, consultant or other vendor.

This section shall not apply to willful misconduct or negligence of the City or its officers, employees or agents. This section includes, but is not limited to, any repair, cleanup, remediation, detoxification, or preparation and implementation of any removal, remediation, response, closure or other plan (regardless

19

of whether undertaken due to governmental action) concerning any hazardous substance or hazardous wastes including petroleum and its fractions as defined in (i) the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"; 42 U.S.C. Section 9601, et seq.), (ii) the Resource Conservation and Recovery Act ("RCRA"; 42 U.S.C. Section 6901 et seq.) and (iii) Article 34, Chapter 65, K.S.A. and all amendments thereto, at any place where Developer owns or has control of real property pursuant to any of Developer's activities under this Agreement.  The foregoing indemnity is intended to operate as an agreement pursuant to Section 107 (e) of CERCLA to assure, protect, hold harmless and indemnify City from liability.

   B.  In the event any suit, action, investigation, claim or proceeding (collectively, an "Action") is begun or made as a result of which the Developer may become obligated to one or more of the City Indemnified Parties hereunder, any one of the City Indemnified Parties shall give prompt notice to the Developer of the occurrence of such event.

   C.  The right to indemnification set forth in this Agreement shall survive the termination of this Agreement.

   Section 8.02.  Insurance.

   A.  The Parties acknowledge and agree that the Developer's lender(s) will require that the Oread be insured against casualty losses, commercial general liability insurance, workers' compensation insurance, and various other policies of insurance, in accordance and in connection with the grant by such lender(s) of a mortgage against the Oread.

   B.  All such policies, or a certificate or certificates of the insurers that such insurance is in full force and effect, shall be provided to the City and, prior to expiration of any such policy, the Developer shall furnish the City with satisfactory evidence that such policy has been renewed or replaced or is no longer required by this Agreement; provided, however, the insurance so required may be provided by blanket policies now or hereafter maintained by the Developer if the Developer provides the City with a certificate from an Insurance Consultant to the effect that such coverage is substantially the same as that provided by individual policies.  All policies evidencing such insurance required to be obtained under the terms of this Agreement shall provide for 30 days' prior written notice to the Developer and the City of any cancellation (other than for nonpayment of premium), reduction in amount or material change in coverage.

   C.  In the event the Developer shall fail to maintain, or cause to be maintained, the full insurance coverage required by this Agreement, the Developer shall promptly notify the City of such event and the City may (but shall be under no obligation to) contract for the required policies of insurance and pay the premiums on the same; and the Developer agrees to reimburse the City to the extent of the amounts so advanced, with interest thereon at the Default Rate.

**Section 8.03.   Obligation to Restore.**

A.   <u>Restoration of Project by Developer</u>.  The Developer hereby agrees that if any portion of the Project owned by it shall be damaged or destroyed, in whole or in part, by fire or other casualty, the Developer shall promptly restore, replace or rebuild the same, or shall promptly cause the same to be restored, replaced or rebuilt, to as nearly as possible the value, quality and condition it was in immediately prior to such fire or other casualty or taking, with such alterations or changes as may be approved in writing by the City, which approval shall not be unreasonably withheld.  The Developer shall give prompt written notice to the City of any damages or destruction to any of the Project owned by it by fire or other casualty, irrespective of the amount of such damage or destruction, but in such circumstances the Developer shall make the property safe and in compliance with all applicable laws as provided herein.

B.   <u>Restoration of Project by Third Parties</u>.  The Developer further agrees that each contract, lease or sublease relating to the development, ownership or use of any portion of the Project not owned or controlled by the Developer shall include a provision to the effect that if any portion of the Project controlled by such owner, lessee or sublessee shall be damaged or destroyed, in whole or in part, by fire or other casualty, such owner, lessee or sublessee shall promptly restore, replace or rebuild the same (or shall promptly cause the same to be restored, replaced or rebuilt) to as nearly as possible the value, quality and condition it was in immediately prior to such fire or other casualty or taking, with such alterations or changes as may be approved in writing by the Developer and the City, which approval shall not be unreasonably withheld.  The Developer agrees that each contract, lease or sublease relating to the development, ownership or use of any portion of the Project shall include a requirement that, in the event insurance covering fire or other casualty results in payment of insurance proceeds to a lender, the lender shall be obligated to restore certain portions of the Project in accordance with this Section.  Each owner, lessee or sublessee shall also be required to give prompt written notice to the Developer and the City of any damages or destruction to any of the Project owned by such person by fire or other casualty, irrespective of the amount of such damage or destruction.

C.   <u>Restoration of Public Improvements</u>.  The City and the Developer agree that if any portion of the Project then owned by the City shall be damaged or destroyed, in whole or in part, by fire or other casualty (whether or not covered by insurance), the City and the Developer shall apply any insurance proceeds or other proceeds, or require each insurance company to apply all insurance proceeds, to promptly restore, replace or rebuild the same (or shall promptly cause the same to be restored, replaced or rebuilt) to as nearly as possible the value, quality and condition it was in immediately prior to such fire or other casualty or taking, with such alterations or changes as may be approved in writing by the City, which approval shall not be unreasonably withheld.  The Developer shall give prompt written notice to the City (and the City shall give prompt written notice to the Developer) of any damages or destruction to any of the Project then owned by the City by fire or other casualty, irrespective of the amount of such damage or destruction.

D.   <u>Enforcement</u>.  The restrictions set forth in this Section are for the benefit of the City and may be enforced by the City by a suit for specific performance or for damages, or both.

**Section 8.04.   Non-liability of Officials, Employees and Agents of the City.**  No recourse shall be had for the reimbursement of the Redevelopment Project Costs or for any claim based thereon or upon any representation, obligation, covenant or agreement contained in this Agreement against any past, present or future official, officer, employee or agent of the City, under any rule of law or equity, statute or

21

constitution or by the enforcement of any assessment or penalty or otherwise, and all such liability of any such officials, officers, employees or agents as such is hereby expressly waived and released as a condition of and consideration for the execution of this Agreement.

## ARTICLE IX

### DEFAULTS AND REMEDIES

**Section 9.01.   Developer Event of Default.**   Subject to Section 9.05, a "Developer Event of Default" shall mean a default in the performance of any obligation or breach of any covenant or agreement of the Developer in this Agreement (other than a covenant or agreement, a default in the performance or breach of which is specifically dealt with elsewhere in this Section), and continuance of such default or breach for a period of 30 days after City has delivered to Developer a written notice specifying such default or breach and requiring it to be remedied; provided, that if such default or breach cannot be fully remedied within such 30-day period, but can reasonably be expected to be fully remedied and the Developer is diligently attempting to remedy such default or breach, such default or breach shall not constitute an event of default if the Developer shall immediately upon receipt of such notice diligently attempt to remedy such default or breach and shall thereafter prosecute and complete the same with due diligence and dispatch.

**Section 9.02.   City Event of Default.**   Subject to Section 9.05, the occurrence and continuance of any of the following events shall constitute a "City Event of Default" hereunder:

A.      Default in the performance of any obligation or breach of any other covenant or agreement of the City in this Agreement (other than a covenant or agreement, a default in the performance or breach of which is specifically dealt with elsewhere in this Section), and continuance of such default or breach for a period of 30 days after there has been given to the City by the Developer a written notice specifying such default or breach and requiring it to be remedied; provided, that if such default or breach cannot be fully remedied within such 30-day period, but can reasonably be expected to be fully remedied and the City is diligently attempting to remedy such default or breach, such default or breach shall not constitute an event of default if the City shall immediately upon receipt of such notice diligently attempt to remedy such default or breach and shall thereafter prosecute and complete the same with due diligence and dispatch.

**Section 9.03.   Remedies Upon a Developer Event of Default.**

A.      Upon the occurrence and continuance of a Developer Event of Default, the City shall have the following rights and remedies, in addition to any other rights and remedies provided under this Agreement or by law:

1.      The City shall have the right to terminate this Agreement or terminate the Developer's rights under this Agreement.

2.      The City may pursue any available remedy at law or in equity by suit, action, mandamus or other proceeding to enforce and compel the performance of the duties and obligations of the Developer as set forth in this Agreement, to enforce or preserve any other rights

22

or interests of the City under this Agreement or otherwise existing at law or in equity and to recover any damages incurred by the City resulting from such Developer Event of Default.

B.     Upon termination of this Agreement for any reason, the City shall have no obligation to reimburse the Developer for any amounts advanced under this Agreement or costs otherwise incurred or paid by Developer.

C.     If the City has instituted any proceeding to enforce any right or remedy under this Agreement by suit or otherwise, and such proceeding has been discontinued or abandoned for any reason, or has been determined adversely to the City, then and in every case the City and the Developer shall, subject to any determination in such proceeding, be restored to their former positions and rights hereunder, and thereafter all rights and remedies of the City shall continue as though no such proceeding had been instituted.

D.     The exercise by the City of any one remedy shall not preclude the exercise by it, at the same or different times, of any other remedies for the same default or breach.  No waiver made by the City shall apply to obligations beyond those expressly waived.

E.     Any delay by the City in instituting or prosecuting any such actions or proceedings or otherwise asserting its rights under this Section shall not operate as a waiver of such rights or limit it in any way. No waiver in fact made by the City of any specific default by the Developer shall be considered or treated as a waiver of the rights with respect to any other defaults, or with respect to the particular default except to the extent specifically waived.

Section 9.04.    Remedies Upon a City Event of Default.

A.     Upon the occurrence and continuance of a City Event of Default the Developer shall have the following rights and remedies, in addition to any other rights and remedies provided under this Agreement or by law:

1.     The Developer shall have the right to terminate the Developer's obligations under this Agreement;

2.     The Developer may pursue any available remedy at law or in equity by suit, action, mandamus or other proceeding to enforce and compel the performance of the duties and obligations of the City as set forth in this Agreement, to enforce or preserve any other rights or interests of the Developer under this Agreement or otherwise existing at law or in equity and to recover any damages incurred by the Developer resulting from such City Event of Default.

B.     If the Developer has instituted any proceeding to enforce any right or remedy under this Agreement by suit or otherwise, and such proceeding has been discontinued or abandoned for any reason, or has been determined adversely to the Developer, then and in every case the Developer and the City shall, subject to any determination in such proceeding, be restored to their former positions and rights hereunder, and thereafter all rights and remedies of the Developer shall continue as though no such proceeding had been instituted.

C.     The exercise by the Developer of any one remedy shall not preclude the exercise by it, at the same or different times, of any other remedies for the same default or breach. No waiver made by the Developer shall apply to obligations beyond those expressly waived.

D.     Any delay by the Developer in instituting or prosecuting any such actions or proceedings or otherwise asserting its rights under this paragraph shall not operate as a waiver of such rights or limit it in any way. No waiver in fact made by the Developer of any specific default by the Developer shall be considered or treated as a waiver of the rights with respect to any other defaults, or with respect to the particular default except to the extent specifically waived.

Section 9.05.   Excusable Delays. Neither the City nor the Developer shall be deemed to be in default of this Agreement because of an Excusable Delay.

Section 9.06.   Legal Actions. Any legal actions related to or arising out of this Agreement must be instituted in the District Court of Douglas County, Kansas or, if federal jurisdiction exists, in the United States District Court for the District of Kansas.

## ARTICLE X

## GENERAL PROVISIONS

Section 10.01.   Mutual Assistance. The City and the Developer agree to take such actions, including the execution and delivery of such documents, instruments, petitions and certifications as may be necessary or appropriate to carry out the terms, provisions and intent of this Agreement and to aid and assist each other in carrying out said terms, provisions and intent.

Section 10.02.   Effect of Violation of the Terms and Provisions of this Agreement; No Partnership. The City is deemed the beneficiary of the terms and provisions of this Agreement, for and in its own rights and for the purposes of protecting the interests of the community and other parties, public or private, in whose favor and for whose benefit this Agreement and the covenants running with the land have been provided. The Agreement shall run in favor of the City, without regard to whether the City has been, remains or is an owner of any land or interest therein in the Project or the Redevelopment District. The City shall have the right, if the Agreement or covenants are breached, to exercise all rights and remedies, and to maintain any actions or suits at law or in equity or other proper proceedings to enforce the curing of such breaches to which it or any other beneficiaries of this Agreement and covenants may be entitled. Nothing contained herein shall be construed as creating a partnership between the Developer and the City.

Section 10.03.   Time of Essence. Time is of the essence of this Agreement. The Parties will make every reasonable effort to expedite the subject matters hereof and acknowledge that the successful performance of this Agreement requires their continued cooperation.

Section 10.04.   Amendments. This Agreement may be amended only by the mutual consent of the Parties, by the adoption of a resolution of the City approving said amendment, as provided by law, and by the execution of said amendment by the Parties or their successors in interest.

Section 10.05.   Agreement Controls. The Parties agree that the Project Plan will be implemented as agreed in this Agreement. This Agreement specifies the rights, duties and obligations of

24

the City and Developer with respect to constructing the Project, the payment of Redevelopment Project Costs and all other methods of implementing the Project Plan.  The Parties further agree that this Agreement contains provisions that are in greater detail than as set forth in the Project Plan and that expand upon the estimated and anticipated sources and uses of funds to implement the Project Plan. Nothing in this Agreement shall be deemed an amendment of the Project Plan.  Except as otherwise expressly provided herein, this Agreement supersedes all prior agreements, negotiations and discussions relative to the subject matter hereof and is a full integration of the agreement of the Parties.

Section 10.06.  Conflicts of Interest.

A.    No member of the City's governing body or of any branch of the City's government that has any power of review or approval of any of the Developer's undertakings shall participate in any decisions relating thereto which affect such person's personal interest or the interests of any corporation or partnership in which such person is directly or indirectly interested.  Any person having such interest shall immediately, upon knowledge of such possible conflict, disclose, in writing, to the City the nature of such interest and seek a determination with respect to such interest by the City and, in the meantime, shall not participate in any actions or discussions relating to the activities herein proscribed.

B.    The Developer warrants that it has not paid or given and will not pay or give any officer, employee or agent of the City any money or other consideration for obtaining this Agreement.  The Developer further represents that, to its best knowledge and belief, no officer, employee or agent of the City who exercises or has exercised any functions or responsibilities with respect to the Project during his or her tenure, or who is in a position to participate in a decision making process or gain insider information with regard to the Project, has or will have any interest, direct or indirect, in any contract or subcontract, or the proceeds thereof, for work to be performed in connection with the Project, or in any activity, or benefit therefrom, which is part of the Project at any time during or after such person's tenure.

Section 10.07.  Term.  Unless earlier terminated as provided herein, this Agreement shall remain in full force and effect for twenty (20) years from the date of approval of the Project Plan.

Section 10.08.  Validity and Severability.  It is the intention of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible under the laws and public policies of State of Kansas, and that the unenforceability (or modification to conform with such laws or public policies) of any provision hereof shall not render unenforceable, or impair, the remainder of this Agreement.  Accordingly, if any provision of this Agreement shall be deemed invalid or unenforceable in whole or in part, this Agreement shall be deemed amended to delete or modify, in whole or in part, if necessary, the invalid or unenforceable provision or provisions, or portions thereof, and to alter the balance of this Agreement in order to render the same valid and enforceable.

Section 10.09.  Required Disclosures.  The Developer shall immediately notify the City of the occurrence of any material event which would cause any of the information furnished to the City by the Developer in connection with the matters covered in this Agreement to contain any untrue statement of any material fact or to omit to state any material fact required to be stated therein or necessary to make any statement made therein, in the light of the circumstances under which it was made, not misleading.

Section 10.10.  Tax Implications.  The Developer acknowledges and represents that (1) neither the City nor any of its officials, employees, consultants, attorneys or other agents has provided to the Developer any advice regarding the federal or state income tax implications or consequences of this

25

Agreement and the transactions contemplated hereby, and (2) the Developer is relying solely upon its own tax advisors in this regard.

Section 10.11. **Authorized Parties.** Whenever under the provisions of this Agreement and other related documents, instruments or any supplemental agreement, a request, demand, approval, notice or consent of the City or the Developer is required, or the City or the Developer is required to agree or to take some action at the request of the other Party, such approval or such consent or such request shall be given for the City, unless otherwise provided herein, by the City Manager and for the Developer by any officer of Developer so authorized; and any person shall be authorized to act on any such agreement, request, demand, approval, notice or consent or other action and neither Party shall have any complaint against the other as a result of any such action taken. The City Manager may seek the advice, consent or approval of the City Commission before providing any supplemental agreement, request, demand, approval, notice or consent for the City pursuant to this Section.

Section 10.12. **Notice.** All notices and requests required pursuant to this Agreement shall be sent as follows:

| To the City: | To the Developer: |
|---|---|
| City Clerk | Oread Inn, L.C. |
| City Hall | 643 Massachusetts Street, Suite 300 |
| Box 708 | Lawrence, Kansas 66044 |
| Lawrence, Kansas 66044-0708 | |
| | |
| With a copy to: | With a copy to: |
| | |
| Toni Ramirez Wheeler | Matthew S. Gough |
| Director of Legal Services | Barber Emerson, L.C. |
| City Hall | 1211 Massachusetts |
| Box 708 | P.O. Box 667 |
| Lawrence, Kansas 66044-0708 | Lawrence, Kansas 66044 |
| | |
| and | |
| | |
| Gary A. Anderson | |
| Gilmore & Bell, P.C. | |
| 2405 Grand Blvd., Suite 1100 | |
| Kansas City, MO 64108 | |

or at such other addresses as the Parties may indicate in writing to the other either by personal delivery, courier, or by registered mail, return receipt requested, with proof of delivery thereof. Mailed notices shall be deemed effective on the third day after mailing; all other notices shall be effective when delivered.

Section 10.13. **Kansas Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Kansas.

26

**Section 10.14.  Counterparts.**  This Agreement may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same agreement.

**Section 10.15.  Recordation of Agreement.**  The Parties agree to execute and deliver an original of this Agreement and any amendments or supplements hereto, in proper form for recording and/or indexing in the appropriate land or governmental records, including, but not limited to, recording in the real estate records of Douglas County, Kansas.  This Agreement shall be recorded by the Developer, and proof of recording shall be provided to the City.

**Section 10.16.  Consent or Approval.**   Except as otherwise provided in this Agreement, whenever the consent, approval or acceptance of either Party is required hereunder, such consent, approval or acceptance shall not be unreasonably withheld or unduly delayed.

[The remainder of this page intentionally left blank.]

27

ELECTRONICALLY FILED
2016 Nov 16 AM 9:06
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

**THIS AGREEMENT** has been executed as of the date first hereinabove written.

**CITY OF LAWRENCE, KANSAS**

By: _____

Mayor

(SEAL)

ATTEST:

_____

City Clerk

**ACKNOWLEDGMENT**

STATE OF KANSAS          )
                                          ) SS.
COUNTY OF DOUGLAS   )

On April 8 , 2008, before me, the undersigned, a Notary Public in and for said state, personally appeared Michael Dever and Frank Reeb, proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument as Mayor and City Clerk, respectively, of the CITY OF LAWRENCE, KANSAS, the city of the third class therein named, and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

NOTARY PUBLIC - State of Kansas
BOBBIE WALTHALL
My Appt. Exp. 03 21 12

_____

Notary Public

My commission expires:

03 21 12

Redevelopment Agreement                    S-1

THIS AGREEMENT has been executed as of the date first hereinabove written.

OREAD INN, L.C.

By Thomas S. Fritzel, Manager

ACKNOWLEDGMENT

STATE OF KANSAS        )
                       ) SS.
COUNTY OF DOUGLAS      )

On April 9, 2008, before me, the undersigned, a Notary Public in and for said State, personally appeared Thomas S. Fritzel, proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument as the manager of OREAD INN, L.C. and acknowledged to me that he executed the same in his authorized capacities, and that by such person's signature on the instrument the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public

My commission expires:

STACI KEMERLING
Notary Public, State of Kansas
My Appointment Expires
June 21, 2010

Redevelopment Agreement                          S-2

EXHIBIT A

**LEGAL DESCRIPTION OF REDEVELOPMENT DISTRICT**

Beginning at the Intersection of the Centerline of Louisiana Street and the South Right-of-way line of West 12th Street (Hancock Street) in the Southeast Quarter (SE ¼) of Section 36, Township 12 South, Range 19 East of the Sixth Principal Meridian in the City of Lawrence, Douglas County, Kansas; thence West on the South Right-of-way line of West 12th Street (Hancock Street) extended to the Northeast Corner of Lot 1, Block 3, Oread Addition; thence continuing West on the South Right-of-way line of said West 12th Street (Hancock Street) to the Northwest corner of Lot 1, Block 3, Oread Addition; thence in a Southwesterly direction on the East Right-of-way line of Oread Avenue to the Northwest corner of the South One-half (S ½) of Lot 2, Block 3, Oread Addition; thence East on the North line of the South one-half (S ½) of said Lot 2 to the Northeast corner of the South One-half (S ½) of said Lot 2; thence South on the East line of said Block 3 Oread Addition to the Southeast corner of the North One-half (N ½) of Lot 4, Block 3 of Oread Addition; thence West on the South line of the North One-half (N ½) of Lot 4, Block 3 of Oread Addition to the Southwest corner of the North One-half (N ½) of Lot 4, Block 3 of Oread Addition and the East Right-of-way line of Oread Avenue; thence in a Southwesterly direction on the East Right-of-way line of Oread Avenue to the Southwest corner of Lot 6, of Oread Heights Addition, A Subdivision of Block 3, Oread Addition; thence continuing in a Southwesterly direction on the East Right-of-way line of Oread Avenue extended to the Centerline of 13th Street (Lee Street); thence West on the Centerline of said 13th Street (Lee Street) to the West Right-of-way line of Oread Avenue; thence in a Northeasterly direction on the West Right-of-way line of Oread Avenue to the Southeast corner of the North One-half (N ½) of Lot 2, Block 8 of Oread Addition; thence West on the South line of the North One-half (N ½) of Lot 2, Block 8 of Oread Addition to the Southwest corner of North One-half (N ½) of Lot 2, Block 8 of Oread Addition to the Southwest corner of Lot 1, Block 8 of Oread Addition; thence East on the South line of Lot 1, Block 8 of Oread Addition 180 feet; thence North parallel with the West line of Lot 1, Block 8 of Oread Addition to the South Right-of-way line of 12th Street (Hancock Street); thence West on the South Right-of-way line of 12th Street (Hancock Street) to the Northwest corner of Lot 12, Block 8 of Oread Addition and the East Right-of-way line of Mississippi Street; thence South on the East Right-of-way line of Mississippi Street to the Southwest corner of the North One-half (N ½) of Lot 10, Block 8 of Oread Addition; thence West on the South line of the North One-half (N ½) of Lot 10, Block 8 of Oread Addition projected West, to the West Right-of-way line of Mississippi Street; thence North on the West Right-of-way line of Mississippi Street to the intersection of the North line of Lot 9, Block 9 of

Oread Addition projected West; thence East on the North line of Lot 9, Block 9 of Oread Addition extended, to the Northwest corner of Lot 9, Block 9 of Oread Addition and the East Right-of-way line of Mississippi Street; thence South on the East Right-of-way line of Mississippi Street to the Southwest corner of Lot 7, Block 9 Oread Addition, and the North Right-of-way line of 12th Street (Hancock Street); thence East on the North Right-of-way line of 12th Street (Hancock Street) to the Southeast corner of Lot 6, Block 9 of Oread Addition and the West Right-of-way line of Indiana Street; thence North on the West Right-of-way line of Indiana Street to the Northeast corner of Lot 1, Block 9 of Oread Addition and the Southeast corner of Lot 3, Block 14, Lane's Second Addition; thence continuing North on the West Right-of-way line of Indiana Street to the Northeast corner of Lot 1, Block 14, Lane's Second Addition and the South Right-of-way line of 11th Street (Quincy Street); thence West on the South Right-of-way line of 11th Street (Quincy Street) to the intersection of the East line of Lots 13 thru 24, Block 13, Lane's Second Addition projected South; thence North on the East line of Lots 13 thru 24, Block 13, Lane's Second Addition extended, to the Southeast corner of Lot 13, Block 13, Lane's Second Addition and the North Right-of-way line of 11th Street (Quincy Street); thence North on the East line of Lots 13 thru 24, Block 13, Lane's Second Addition to the Northeast corner of Lot 24, Block 13, Lane's Second Addition and the South Right-of-way line of 10th Street (Berkeley Street); thence continuing North on the East line of Lots 13 thru 24, Block 13, Lane's Second Addition projected North to the Southeast corner of Lot 15, Block 11 Lane's Second Addition; thence North on the East line of Lots 15 thru 23, Block 11, Lane's Second Addition to the Northeast corner of Lot 23, Block 11, Lane's Second Addition; thence North on the East line of Lots 15 thru 23, Block 11, Lane's Second Addition projected North, to the South line of Lot 3, Block 11, Lane's Second Addition; thence East on the South line of Lot 3, Block 11, Lane's Second Addition to the intersection of the West line of Lots 6 thru 14, Block 11, Lane's Second Addition projected North; thence South on the West line of Lots 6 thru 14, Block 11, Lane's Second Addition extended, to the Northwest corner of Lot 6, Block 11, Lane's Second Addition; thence South on the West line of Lots 6 thru 14, Block 11, Lane's Second Addition to the Southwest corner of Lot 14, Block 11, Lane's Second Addition and the North Right-of-way line of 10th Street (Berkeley Street); thence South on the West line of Lots 6 thru 14, Block 11, Lane's Second Addition extended, to the Northwest corner of Lot 1, Block 13, Lane's Second Addition, and the South Right-of-way line of 10th Street (Berkeley Street); thence South on the West line of Lots 1 thru 12, Block 13, Lane's Second Addition to the Southwest corner of Lot 12, Block 13 Lane's Second Addition and the North Right-of-way line of 11th Street (Quincy Street); thence East on the South line of Lot 12, Block 13, Lane's Second Addition and the North Right-of-way line of 11th Street (Quincy Street) to the Southeast corner of Lot 12, Block 13 Lane's

A-2

Second Addition; thence continuing East on the North Right-of-way line of 11th Street (Quincy Street) extended to the Southwest corner of University Park (Northeast corner of 11th Street (Quincy Street) and Indiana Street); thence South on the East Right-of-way line of Indiana Street projected North from Block 15, Lane's Second Addition to the Northwest corner of Lot 6, Block 15, Lane's Second Addition; thence South on the East Right-of-way line of Indiana Street to the Southwest corner of Lot 4, Block 15, Lane's Second Addition and the Northwest corner of Lot 12, Block 2, Oread Addition; thence continuing South on the East Right-of-way line of Indiana Street to the Northwest corner of the South 55 feet of Lot 10, Block 2, Oread Addition; thence East on the North line of the South 55 feet of Lot 10, Block 2, Oread Addition to the Northeast corner of the South 55 feet of Lot 10, Block 2, Oread Addition and the Northwest corner of the South 55 feet of Lot 3, Block 2, Oread Addition; thence continuing East on the North line of the South 55 feet of Lot 3, Block 2, Oread Addition to the Northeast corner of the South 55 feet of Lot 3, Block 2, Oread Addition; thence South on the East line of Lots 3, and 4, Block 2, Oread Addition to the Southeast corner of the North 65 feet of Lot 4, Block 2, Oread Addition; thence West on the South line of the North 65 feet of Lot 4, Block 2, Oread Addition to the Southwest corner of the North 65 feet of Lot 4, Block 2 Oread Addition and the East line of Lots 9, 8, and 7, Block 2, Oread Addition; thence South on the East line of Lots 9, 8 and 7, Block 2, Oread Addition to the Southeast corner of Lot 7, Block 2, Oread Addition and the North Right-of-way line of 12th Street (Hancock Street); thence East on the North Right-of-way line of 12th Street (Hancock Street) to the Southeast corner of Lot 6, Block 2, Oread Addition; thence continuing East on the North Right-of-way line of 12th Street (Hancock Street) extended to the Centerline of Louisiana Street; thence South on the Centerline of Louisiana Street to the Point of Beginning; Containing 8.51 Acres more or less all in the City of Lawrence, Douglas County, Kansas.

A-3

## EXHIBIT B

## FORM OF CERTIFICATE OF REDEVELOPMENT PROJECT COSTS

## CERTIFICATE OF REDEVELOPMENT PROJECT COSTS

TO:   City of Lawrence, Kansas
      Attention: City Manager

Re:   12th & Oread Redevelopment District

*Terms not otherwise defined herein shall have the meaning ascribed to such terms in the 12th & Oread Tax Increment Financing District Development Agreement dated as of April 8, 2008 (the "Agreement") between the City and the Developer.*

In connection with the Agreement, the undersigned hereby states and certifies that:

1.      Each item listed on *Schedule 1* hereto is a Redevelopment Project Cost and was incurred in connection with the construction of the Project after February 19, 2008.

2.      These Redevelopment Project Costs have been paid by the Developer and are reimbursable under the Project Plan and the Agreement.

3.      Each item listed on *Schedule 1* has not previously been paid or reimbursed from money derived from the Tax Increment Fund or any money derived from any project fund established by the issuance of any TIF Obligations, and no part thereof has been included in any other certificate previously filed with the City.

4.      There has not been filed with or served upon the Developer any notice of any lien, right of lien or attachment upon or claim affecting the right of any person, firm or corporation to receive payment of the amounts stated in this request, except to the extent any such lien is being contested in good faith.

5.      All necessary permits and approvals required for the work for which this certificate relates were issued and were in full force and effect at the time such work was being performed.

6.      All work for which payment or reimbursement is requested has been performed in a good and workmanlike manner and in accordance with the Agreement.

7.      If any cost item to be reimbursed under this Certificate is deemed not to constitute a Redevelopment Project Cost within the meaning of the Act and the Agreement.

8.      The Developer is not in default or breach of any term or condition of the Agreement, and no event has occurred and no condition exists which constitutes a Developer Event of Default under the Agreement.

9.      All of the Developer's representations set forth in the Agreement remain true and correct as of the date hereof.

Dated this _____ day of _____, 20____.

                                        **OREAD INN, L.C.,**
                                        a Kansas limited liability company

                                        By: _____

                                        Name: _____

                                        Title: _____

Approved for Payment this _____ day of _____, 20_____:

**CITY OF LAWRENCE, KANSAS**

By:      _____

Title:   _____

B-2

<u>EXHIBIT C</u>

### FORM OF CERTIFICATE OF SUBSTANTIAL COMPLETION

## CERTIFICATE OF SUBSTANTIAL COMPLETION

The undersigned, **Oread Inn, L.C.**. (the "**Developer**"), pursuant to that certain 12th & Oread Tax Increment Financing District Development Agreement dated as of April 8, 2008, between the **City of Lawrence, Kansas** (the "**City**") and the Developer (the "**Agreement**"), hereby certifies to the City as follows:

1.  That as of _____, 20___, Substantial Completion of the Project (as such term is defined in the Agreement) has been completed in accordance with the Agreement.

2.  The Project has been completed in a workmanlike manner and in accordance with the Construction Plans (as those terms are defined in the Agreement).

3.  Lien waivers for applicable portions of the Project have been obtained.

4.  This Certificate of Substantial Completion is accompanied by the project architect's certificate of substantial completion on AIA Form G-704 (or the substantial equivalent thereof), a copy of which is attached hereto as **Appendix A** and by this reference incorporated herein), certifying that the Project has been substantially completed in accordance with the Agreement.

5.  This Certificate of Substantial Completion is being issued by the Developer to the City in accordance with the Agreement to evidence the Developer's satisfaction of all obligations and covenants with respect to the Project.

This Certificate is given without prejudice to any rights against third parties which exist as of the date hereof or which may subsequently come into being.

Terms not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement.

IN WITNESS WHEREOF, the undersigned has hereunto set his/her hand this _____ day of _____, 20_____.

**OREAD INN, L.C.**
a Kansas limited liability company

By:_____

Name: _____

Title: _____


ACCEPTED:

**CITY OF LAWRENCE, KANSAS**

By: _____

Name: _____

Title: _____

(Insert Notary Form(s) and Legal Description)

C-2

## EXHIBIT D

### PROJECT BUDGET

THE OREAD INN
TIF / TDD COST ESTIMATES
03/25/08

**A**

### Indiana Street

| | Qty | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Street demo | 15,000 | sq ft | 2.00 | 30,000.00 |
| Street prep (grading / fly ash) | 15,000 | sq ft | 3.00 | 45,000.00 |
| Pavement 8" concrete | 8,400 | sq ft | 8.25 | 69,300.00 |
| Curb | 300 | ln ft | 16.00 | 4,800.00 |
| Approach 1 pavement | 450 | sq ft | 25.00 | 11,250.00 |
| Approach 1 curb | 70 | ln ft | 16.00 | 1,120.00 |
| Approach 2 pavement | 450 | sq ft | 25.00 | 11,250.00 |
| Approach 2 curb | 70 | ln ft | 16.00 | 1,120.00 |
| Accent sidewalk | 60 | ln ft | 60.00 | 3,600.00 |
| Sidewalk | 310 | ln ft | 20.00 | 6,200.00 |
| ADA ramps | 7 | ea | 1,500.00 | 10,500.00 |
| Emergency lane | 3,150 | sq ft | 20.00 | 63,000.00 |
| Engineering | 1 | ls | 10% | 26,714.00 |
| Contingency | 1 | ls | 15% | 42,428.10 |
| | | | | |
| **Total Indiana Street** | | | | **$325,282.10** |

**B**

### Oread Street

| | Qty | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Street demo | 24,000 | sq ft | 2.00 | 48,000.00 |
| Street prep (grading / fly ash) | 24,000 | sq ft | 3.00 | 72,000.00 |
| Pavement 8" concrete | 21,000 | sq ft | 8.25 | 173,250.00 |
| Curb | 1,500 | ln ft | 16.00 | 24,000.00 |
| Approach 1 pavement | 625 | sq ft | 25.00 | 15,625.00 |
| Approach 1 curb | 70 | ln ft | 16.00 | 1,120.00 |
| Approach 2 pavement | 625 | sq ft | 25.00 | 15,625.00 |
| Approach 2 curb | 70 | ln ft | 16.00 | 1,120.00 |
| Accent sidewalk | 60 | ln ft | 60.00 | 3,600.00 |
| Sidewalk 1 | 600 | ln ft | 20.00 | 12,000.00 |
| Sidewalk 2 | 600 | ln ft | 40.00 | 24,000.00 |
| ADA ramps | 10 | ea | 1,500.00 | 15,000.00 |
| Pedestrian roundabout | 1 | ls | 50,000.00 | 50,000.00 |
| Vehicular roundabout | 1 | ls | 150,000.00 | 150,000.00 |
| Island roundabout streetscape | 1 | ls | 50,000.00 | 50,000.00 |
| Storm sewer | 850 | ln ft | 100.00 | 85,000.00 |
| Storm sewer | 4 | boxes | 6,000.00 | 24,000.00 |
| Engineering | 1 | ls | 10% | 76,434.00 |
| Contingency | 1 | ls | 15% | 126,116.10 |
| | | | | |
| **Total Oread Street** | | | | **$966,890.10** |

**C**

### 12th Street

| | Qty | Unit | Unit Price | Extension |
|---|---|---|---|---|
| Street demo | 39,600 | sq ft | 2.00 | 79,200.00 |
| Street prep (grading / fly ash) | 39,600 | sq ft | 3.00 | 118,800.00 |
| Pavement 8" concrete | 25,080 | sq ft | 8.25 | 206,910.00 |
| Curb | 1,200 | ln ft | 16.00 | 19,200.00 |
| Approach | 6000 | sq ft | 25.00 | 150,000.00 |
| Accent sidewalk | 300 | ln ft | 60.00 | 18,000.00 |
| Sidewalk 1 | 110 | ln ft | 20.00 | 2,200.00 |
| Sidewalk 2 | 200 | ln ft | 25.00 | 5,000.00 |
| ADA ramps | 11 | ea | 1,500.00 | 16,500.00 |
| Truck access drive | 2,000 | sq ft | 30.00 | 60,000.00 |
| 12th Street stairway | 1 | ls | 50,000.00 | 50,000.00 |
| Engineering | 1 | ls | 10% | 72,581.00 |
| Contingency | 1 | ls | 15% | 119,758.65 |
| | | | | |
| **Total 12th Street** | | | | **$918,149.65** |

THE OREAD INN
TIF / TDD COST ESTIMATES
Page 2

**D**

| Streetscape | | | | |
|---|---|---|---|---|
| | Qty | Unit | Unit Price | Extension |
| Retaining walls | 1 | ls | 75,000.00 | 75,000.00 |
| City water tank | 1 | ls | 75,000.00 | 75,000.00 |
| Plantings | 1 | ls | 140,000.00 | 140,000.00 |
| Trees 4"-6" | 120 | ea | 1,500.00 | 180,000.00 |
| Irrigation | 1 | ls | 100,000.00 | 100,000.00 |
| 12th St. existing island rehab | 1 | ls | 15,000.00 | 15,000.00 |
| Turf | 1 | ls | 20,000.00 | 20,000.00 |
| Benches | 20 | ea | 2,000.00 | 40,000.00 |
| Street lights | 40 | ea | 3,000.00 | 120,000.00 |
| Sculptures | 1 | ls | 100,000.00 | 100,000.00 |
| Pedestrian shelter | 2 | ea | 30,000.00 | 60,000.00 |
| Engineering | 1 | ls | 10% | 92,500.00 |
| Contingency | 1 | ls | 15% | 152,625.00 |
| | | | | |
| Total Streetscape | | | | $1,170,125.00 |

**E**

| Water and Sanitary | | | | |
|---|---|---|---|---|
| | Qty | Unit | Unit Price | Extension |
| 12" pvc water line along Oread incl fittings, trenching, backfill, pavement repair, etc. | 340 | ln ft | 150.00 | 51,000.00 |
| 6"x6" tapping sleeve and valve | 1 | ea | 2,000.00 | 2,000.00 |
| 12"x12"x12" tee | 1 | ea | 800.00 | 800.00 |
| 12" gate valve | 2 | ea | 1,300.00 | 2,600.00 |
| 12"x12"x4" tee | 1 | ea | 200.00 | 200.00 |
| 4" gate valve | 1 | ea | 500.00 | 500.00 |
| 12"x12"x8" tee | 1 | ea | 800.00 | 800.00 |
| 8" gate valve | 1 | ea | 750.00 | 750.00 |
| 12"x12"x12" tapping sleeve and valve | 1 | ea | 3,500.00 | 3,500.00 |
| Fire hydrant assembly | 2 | ea | 2,100.00 | 4,200.00 |
| 12"x8" reducer | 1 | ea | 300.00 | 300.00 |
| Lift station basement | 1 | ea | 15,000.00 | 15,000.00 |
| Repl casting/lid on MHSW361216-105 | 1 | ls | 400.00 | 400.00 |
| Rehab of MHSW361219-105 | 7 | vf | 135.00 | 945.00 |
| CIPP install - Indiana 12th-11th 8" | 594 | lf | 32.00 | 19,008.00 |
| CIPP install - Indiana 11th w to alley 8" | 142 | lf | 32.00 | 4,544.00 |
| CIPP install - alley btw IN & MS 11th-9th 8" | 1349 | lf | 32.00 | 43,168.00 |
| Construct std manhole over existing SS (4'x6') | 1 | ea | 2,500.00 | 2,500.00 |
| Extra depth manhole (4' diam) | 2 | lf | 120.00 | 240.00 |
| 8" SS pipe (S & W of MH) | 20 | lf | 62.00 | 1,240.00 |
| Connect to existing 8" VCP | 2 | ea | 300.00 | 600.00 |
| Remove / replace asphalt pavement | 96 | sf | 5.25 | 504.00 |
| Flowable mortar | 18 | cy | 75.00 | 1,350.00 |
| Traffic control | 1 | ls | 500.00 | 500.00 |
| Construct std manhole over existing SS (5'x6') | 1 | ea | 3,000.00 | 3,000.00 |
| Extra depth manhole (6' diam) | 12 | lf | 140.00 | 1,680.00 |
| Construct std manhole (4'x6') | 1 | ea | 2,500.00 | 2,500.00 |
| 8" SS pipe | 200 | lf | 62.00 | 12,400.00 |
| Remove / replace concrete gutter | 16 | lf | 28.00 | 448.00 |
| Remove / replace concrete sidewalk | 70 | sf | 12.00 | 840.00 |
| Remove / replace asphalt pavement | 180 | sf | 5.25 | 945.00 |
| Flowable mortar | 31 | cy | 75.00 | 2,325.00 |
| Traffic control | 1 | ls | 1,000.00 | 1,000.00 |
| 12" PVC - wat ln along Indiana (incl fittings, trenching, backfill, pavement repair, etc.) | 750 | lf | 150.00 | 112,500.00 |

continued next page

THE OREAD INN
TIF / TDD COST ESTIMATES
Page 3

### E

| Water and Sanitary, Cont'd: | | | | |
|---|---|---|---|---|
| Flowable fill (for both main and services) | 270 | cy | 80.00 | 21,600.00 |
| Long service lines (including fittings) | 150 | lf | 50.00 | 7,500.00 |
| Reconnect existing services | 4 | ea | 500.00 | 2,000.00 |
| Fire hydrants | 2 | ea | 2,100.00 | 4,200.00 |
| 6x8 MJ gate valve | 1 | ea | 800.00 | 800.00 |
| 8x12 MJ gate valve | 1 | ea | 1,000.00 | 1,000.00 |
| Connect to existing water main | 2 | ea | 1,000.00 | 2,000.00 |
| Engineering | 1 | ls | 10% | 33,338.70 |
| Contingency | 1 | ls | 15% | 55,008.86 |
| City Inspection | 1 | ls | 3% | 12,652.04 |
| | | | | |
| Total Water and Sanitary | | | | $434,388.60 |

### F

| City Impact Fees | | | | |
|---|---|---|---|---|
| | Qty | Unit | Unit Price | Extension |
| Water | 1 | ls | 34,810.00 | 34,810.00 |
| Sewer | 1 | ls | 72,130.00 | 72,130.00 |
| Tap Fees | 1 | ls | 50,000.00 | 50,000.00 |
| Permit Fees | 1 | ls | 40,000.00 | 40,000.00 |
| | | | | |
| Total City Impact Fees | | | | $196,940.00 |

### G

| Site Utilities | | | | |
|---|---|---|---|---|
| | Qty | Unit | Unit Price | Extension |
| Electric / phone / cable | 1 | ls | | 150,000.00 |
| Westar fee of $55,000 plus | | | | |
| lab & equip for prep & installation | | | | |
| Engineering | 1 | ls | 10% | 15,000.00 |
| Contingency | 1 | ls | 15% | 24,750.00 |
| | | | | |
| Total Site Utilities | | | | $189,750.00 |

### H

| Site Work | | | | |
|---|---|---|---|---|
| | Qty | Unit | Unit Price | Extension |
| Garage excavation | 40,000 | cy | 10.00 | 400,000.00 |
| Demo | 1 | ls | 140,000.00 | 140,000.00 |
| Stabilization / shoring | 1 | ls | 120,000.00 | 120,000.00 |
| Engineering | 1 | ls | 10% | 66,000.00 |
| Contingency | 1 | ls | 15% | 108,900.00 |
| | | | | |
| Total Site Work | | | | $834,900.00 |

### I

| Parking Structure | | | | |
|---|---|---|---|---|
| | Qty | Unit | Unit Price | Extension |
| Parking Structure | 1 | ls | 6,000,000.00 | 6,000,000.00 |
| Engineering | 1 | ls | 10% | 600,000.00 |
| | | | | |
| Total Parking Structure | | | | $6,600,000.00 |

THE OREAD INN
TIF / TDD COST ESTIMATES
Page 4


<u>In Summary...</u>

**Public Street Improvements**
A    Indiana Street                          325,282.10
B    Oread Street                            966,890.10
C    12th Street                             918,149.65
D    Streetscape                           1,170,125.00

Total Public Street Improvements                                    $3,380,446.85


**Public Water and Sanitary**
E    Water and Sanitary                      434,386.60

Total Public Water and Sanitary                                     $434,386.60


**City Impact Fees**
F    City Impact Fees                        196,940.00

Total City Impact Fees                                              $196,940.00


**Site Utilities**
G    Site Utilities                          189,750.00

Total Site Utilities                                                $189,750.00


**Site Work**
H    Site Work                               834,900.00

Total Site Work                                                     $834,900.00


**Parking Structure**
I    Parking Structure                     6,600,000.00

Total Site Work                                                     $6,600,000.00


Total TIF / TDD District Estimate                                   $11,636,423.45

**EXHIBIT E**

**DESIGN STANDARDS**

**Community Design Manual- Section Two: Commercial Development.**

**At least fifty percent (50%) of all exterior building facades of each building within the Oread Site incorporate the use of native building materials, including limestone, brick , or other natural stone.**

**No use of artificial stucco.**

**Completion of and compliance with a photometric plan pursuant to City requirements in accordance with the City Code.**

## EXHIBIT F

## RESTRICTED LAND USES IN THE REDEVELOPMENT DISTRICT

Adult entertainment
Adult bookstore
Arcade*
Auto Sales
Body Piercing, other than ears
Car repair
Car wash ***
Cellular or other telecommunications towers or facilities which are not stealth or fully integrated
Day Care*
Drive-through businesses
Farm equipment sales
Gas Station* (NAICS code 447110)
Hospital
Manufacturing or assembly use
Medical Office Building
Mobile Home Park
Mobile Home Sales
Motor Freight Garage/Equipment
Pawn shop
Pay-day loan services
Permanent rooftop signage**
Satellite dishes that are not stealth or fully integrated
Seasonal Businesses
Tattoo parlor
Warehouse

---

* This land use may be allowed as an accessory use if approved pursuant to Governmental Approvals and such use is a subordinate use that is customarily and incidentally associated with the primary use, is located entirely within the structure of a primary use, and is not visible from and cannot be directly accessed from the exterior of the structure that contains the primary use.

** Temporary roof top signage may be allowed pursuant to the City Code.

*** Unless such use is incidental to the operation of an automobile sales facility or a convenience store.

## EXHIBIT G

## REQUIRED COVENANTS, CONDITIONS & RESTRICTIONS
## FOR THE REDEVELOPMENT DISTRICT

1.  Maintenance requirements for the lighting, streetscape, sculptures and fountains located in the Redevelopment District and constituting part of the Project.

2.  Requirement that the Oread be operated and maintained as 3 Diamond rated hotel as determined by the American Automobile Association hotel rating system, or if such system is discontinued, a similar rating system agreed to in writing by the City and the Developer and that the City will have the right to review the Developer's operations to assure compliance with this covenant.  In the event that the revenues of the Oread do not meet at least 75% of the projections contained in the feasibility report attached to the Project Plan, the City has the right to request the appointment of a hotel consultant to be engaged on behalf of the City and paid for by the Developer to make recommendations regarding the operations of the Oread. In the event specific recommendations are made by the consultant with respect to the Oread, the Developer agrees to cooperate in the implementation of such recommendations within a reasonable period of time.

3.  Requirement that Developer establish and maintain a furniture, fixtures and equipment reserve in an amount not less than 3% of gross revenues of the Oread in a maximum amount not to exceed $750,000.  These reserves shall be held and disbursed for capital expenditures for the Oread.

<u>EXHIBIT H</u>

FORM OF CERTIFICATE OF MINIMUM INVESTMENT

---

CERTIFICATE OF MINIMUM INVESTMENT

The undersigned, pursuant to that certain 12th & Oread Tax Increment Financing District Development Agreement dated as of April 8, 2008 (the "Agreement"), between the **City of Lawrence, Kansas** (the "City") and **Oread Inn, L.C..** (the "Developer"), hereby certifies to the City as follows:

1.      That as the undersigned is an accredited certified public accountant and is familiar with the funding of the construction and equipping of the Oread (as such term is defined in the Agreement).

2.      Based on the Certificate of Substantial Completion (as such terms is defined in the Agreement) of the Developer, the undersigned understands that the Oread has been substantially completed.

3.      Not less than $20,000,000 has been spent on the Oread by the Developer from May 9th, 2007 to the date hereof.

Terms not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement.

IN WITNESS WHEREOF, the undersigned has hereunto set his/her hand this _____ day of _____, 20_____.

[CERTIFIED PUBLIC ACCOUNTANT]

By:_____

Name: _____

Title: _____

**ACCEPTED:**

**CITY OF LAWRENCE, KANSAS**

By: _____

Name: _____

Title: _____

**EXHIBIT I**

ROOFTOP FLAGPOLE DIAGRAM

SUPPLEMENTAL
DRAWING
DATE MARCH 25, 2008

JOB Oread Circle
JOB No. 447707

EXHIBIT "I" ROOF PLAN
1"=20'-0"



NSPJ
NEARING STAATS PRELOGAR & JONES AIA CHARTERED
ARCHITECTS

ATTACHMENT TO
CCD No.:

NSPJ A.S.D.
DRAWING No.

SUPPLEMENTAL
DRAWING
DATE MARCH 25, 2008

JOB Oread Circle
JOB No. 447707

EXHIBIT "I" SOUTH ELEVATION
1" = 20'-0"



NSPJ
NEARING STAATS PRELOGAR & JONES AIA CHARTERED
ARCHITECTS

ATTACHMENT TO
CCD No.

NSPJ A.S.D.
DRAWING No.

SUPPLEMENTAL DRAWING

DATE MARCH 25, 2008

JOB Oread Circle

JOB NO. 447707

EXHIBIT "T" WEST ELEVATION
1"=20'-0"



NSPJ

NEARING STAATS PRELOGAR & JONES AIA CHARTERED
ARCHITECTS

ATTACHMENT TO
CCD NO.:

NSPJ A.S.D.
DRAWING NO.

ELECTRONICALLY FILED
2016 Nov 16 AM 9:06
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS

CITY OF LAWRENCE, KANSAS,      )
                               )
            Plaintiff,          )
                               )
vs.                            )      Case No.
                               )
THOMAS FRITZEL,                )
OREAD INN, L.C.,               )
OREAD WHOLESALE, L.C.,         )
DFC COMPANY OF LAWRENCE L.C.,  )
AND JOHN DOES 1-12,            )
                               )
            Defendants.         )

## ENTRY OF APPEARANCE

COMES NOW Bradley S. Russell of Sanders Warren & Russell LLP and enters his

appearance as lead counsel for Plaintiff City of Lawrence in the above-referenced matter.


Respectfully submitted,

SANDERS WARREN & RUSSELL LLP


Bradley S. Russell,        KS #13734
William P. Denning,        KS #21560
40 Corporate Woods
9401 Indian Creek Parkway, Suite 1250
Overland Park, Kansas 66210
Telephone:    (913) 234-6100
Facsimile:    (913) 234-6199
b.russell@swrllp.com
w.denning@swrllp.com


and

1

Randall F. Larkin,          KS #14184
Toni Ramirez Wheeler,       KS #18473
City Hall
6 East 6th Street, Fourth Floor
Lawrence, Kansas 66044
Telephone:    (785) 832-3475
Facsimile:    (785) 832-3405
twwheeler@lawrenceks.org
rlarkin@lawrenceks.org

**ATTORNEYS FOR PLAINTIFF**

2

ELECTRONICALLY FILED
2016 Nov 16 AM 9:06
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS

| | | |
|---|---|---|
| CITY OF LAWRENCE, KANSAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| THOMAS FRITZEL, | ) | |
| OREAD INN, L.C., | ) | |
| OREAD WHOLESALE, L.C., | ) | |
| DFC COMPANY OF LAWRENCE L.C., | ) | |
| AND JOHN DOES 1-12, | ) | |
| | ) | |
| Defendants. | ) | |

### DEMAND FOR JURY TRIAL

COMES NOW Plaintiff City of Lawrence, Kansas, and demands a jury trial in the above-referenced matter.

Respectfully submitted,

SANDERS WARREN & RUSSELL LLP

Bradley S. Russell,        KS #13734
William P. Denning,        KS #21560
40 Corporate Woods
9401 Indian Creek Parkway, Suite 1250
Overland Park, Kansas 66210
Telephone:    (913) 234-6100
Facsimile:     (913) 234-6199
b.russell@swrllp.com
w.denning@swrllp.com

and

Randall F. Larkin,      KS #14184
Toni Ramirez Wheeler,    KS #18473
City Hall
6 East 6th Street, Fourth Floor
Lawrence, Kansas 66044
Telephone:    (785) 832-3475
Facsimile:    (785) 832-3405
twheeler@lawrenceks.org
rlarkin@lawrenceks.org
**ATTORNEYS FOR PLAINTIFF**

ELECTRONICALLY FILED
2016 Nov 16 PM 4:55
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

City of Lawrence, Kansas

vs.

Thomas Fritzel, ot al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Thomas Fritzel**
**209 N. Fall Creek Road**
**Lawrence, KS  66044**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

William P. Denning
9401 Indian Creek Parkway
Suite 1250
Overland Park, KS 66210

within 21 days after service of summons on you.



Clerk of the District Court
Electronically signed by Rose DelCampo on 11/17/2016 03:56:25 PM

**Documents to be served with the Summons:**
DCC - Chapter 60 Non Domestic - PLE: PETITION for Case #2016CV000462 FSDate 11/16/2016

City of Lawrence, Kansas

vs.

Thomas Fritzel, et al. et. al.

**ELECTRONICALLY FILED**
2016 Nov 16 PM 4:55
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

**SUMMONS**

To the above-named Defendant/Respondent:

> **Oread Inn, L.C.**
> **1200 Oread Avenue**
> **Lawrence, KS  66044**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> William P. Denning
> 9401 Indian Creek Parkway
> Suite 1250
> Overland Park, KS 66210

within 21 days after service of summons on you.



Clerk of the District Court

Electronically signed by Rose DelCampo on 11/17/2016 03:56:25 PM

**Documents to be served with the Summons:**

DCC - Chapter 60 Non Domestic - PLE: PETITION for Case #2016CV000462 FSDate 11/16/2016

ELECTRONICALLY FILED
2016 Nov 16 PM 4:55
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

City of Lawrence, Kansas

vs.

Thomas Fritzel, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**DFC Company of Lawrence L.C.**

**643 Massachusetts, Suite 300**

**Lawrence, KS 66044**

You are hereby notified that an action has been commenced against you in this court. You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

William P. Denning

9401 Indian Creek Parkway

Suite 1250

Overland Park, KS 66210

within 21 days after service of summons on you.



Clerk of the District Court

Electronically signed by Rose DelCampo on 11/17/2016 03:56:25 PM

**Documents to be served with the Summons:**

DCC - Chapter 60 Non Domestic - PLE: PETITION for Case #2016CV000462 FSDate 11/16/2016

ELECTRONICALLY FILED
2016 Nov 16 PM 4:55
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

City of Lawrence, Kansas

vs.

Thomas Fritzel, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Oread Wholesale, L.C.**

**1200 Oread Avenue**

**Lawrence, KS  66044**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

William P. Denning

9401 Indian Creek Parkway

Suite 1250

Overland Park, KS 66210

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed by Rose DelCampo on 11/17/2016 03:56:25 PM

**Documents to be served with the Summons:**

DCC - Chapter 60 Non Domestic - PLE: PETITION for Case #2016CV000462 FSDate 11/16/2016

ELECTRONICALLY FILED
2016 Nov 17 AM 8:53
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS
## CIVIL DEPARTMENT

| | | |
|---|---|---|
| CITY OF LAWRENCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  2016-CV-000462 |
| | ) | |
| THOMAS FRITZEL, | ) | |
| OREAD, INN, L.C., | ) | |
| OREAD WHOLESALE, L.C., | ) | |
| DFC COMPANY OF LAWRENCE, L.C., and | ) | |
| JOHN DOES 1-12 | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE TO TAKE DEPOSITION

To:  All parties and/or their attorneys of record:

PLEASE TAKE NOTICE that defendant will take the deposition of **Thomas Fritzel** relative to the above captioned matter on Thursday, February 16, 2017, at 9:30 a.m., at Sanders Warren & Russell LLP, 9401 Indian Creek Parkway, Suite 1250, Overland Park, Kansas 66210.

Said deposition will be taken upon oral examination at said time and place before a certified shorthand reporter and the taking of same will continue from day to day until said deposition is complete.

Respectfully submitted:

Bradley S. Russell,           KS #13734
William P. Denning,           KS #21560
Sanders Warren & Russell LLP
40 Corporate Woods
9401 Indian Creek Parkway, Suite 1250
Overland Park, Kansas 66210
Telephone:     (913) 234-6100
Facsimile:      (913) 234-6199
b.russell@swrllp.com
w.denning@swrllp.com

1

and

Randall F. Larkin,          KS #14184
Toni Ramirez Wheeler,       KS #18473
City Hall
6 East 6th Street, Fourth Floor
Lawrence, Kansas 66044
Telephone:      (785) 832-3475
Facsimile:      (785) 832-3405
twheeler@lawrenceks.org
rlarkin@lawrenceks.org
**ATTORNEYS FOR PLAINTIFF**

2

ELECTRONICALLY FILED
2016 Nov 17 AM 8:53
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS
## CIVIL DEPARTMENT

| | | |
|---|---|---|
| CITY OF LAWRENCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  2016-CV-000462 |
| | ) | |
| THOMAS FRITZEL, | ) | |
| OREAD, INN, L.C., | ) | |
| OREAD WHOLESALE, L.C., | ) | |
| DFC COMPANY OF LAWRENCE, L.C., and | ) | |
| JOHN DOES 1-12 | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE OF SERVICE

This is to certify that the following documents were served along with a copy of the
*Summons*, *Petition* and *Notice to Take Deposition*:

- *Plaintiff's First Interrogatories to Defendant Thomas Fritzel;*
- *Plaintiff's First Request for Production of Documents to Defendant Thomas Fritzel;*
- *Plaintiff's First Interrogatories to Defendant DFC Company of Lawrence, L.C.;*
- *Plaintiff's First Request for Production of Documents to Defendant DFC Company of Lawrence, L.C.;*
- *Plaintiff's First Interrogatories to Defendant Oread Wholesale, L.C.;*
- *Plaintiff's First Request for Production of Documents to Defendant Oread Wholesale, L.C.;*
- *Plaintiff's First Interrogatories to Defendant Oread Inn, L.C.;* and
- *Plaintiff's First Request for Production of Documents to Defendant Oread Inn, L.C..*

Respectfully submitted:

Bradley S. Russell,                KS #13734
William P. Denning,                KS #21560
Sanders Warren & Russell LLP
40 Corporate Woods
9401 Indian Creek Parkway, Suite 1250
Overland Park, Kansas 66210
Telephone:     (913) 234-6100
Facsimile:     (913) 234-6199
b.russell@swrllp.com
w.denning@swrllp.com

and

Randall F. Larkin,                 KS #14184
Toni Ramirez Wheeler,              KS #18473
City Hall
6 East 6th Street, Fourth Floor
Lawrence, Kansas 66044
Telephone:     (785) 832-3475
Facsimile:     (785) 832-3405
twheeler@lawrenceks.org
rlarkin@lawrenceks.org
**ATTORNEYS FOR PLAINTIFF**

ELECTRONICALLY FILED
2016 Nov 21 PM 2:56
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS
### CIVIL DEPARTMENT

| | |
|---|---|
| CITY OF LAWRENCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Case No.  2016-CV-000462 |
| | ) |
| THOMAS FRITZEL, | ) |
| OREAD, INN, L.C., | ) |
| OREAD WHOLESALE, L.C., | ) |
| DFC COMPANY OF LAWRENCE, L.C., and | ) |
| JOHN DOES 1-12 | ) |
| | ) |
| Defendants. | ) |

### RETURN OF SERVICE FOR CERTIFIED MAIL

| | |
|---|---|
| STATE OF KANSAS | ) |
| | ) ss: |
| COUNTY OF JOHNSON | ) |

The undersigned, being duly sworn, states I have served the following:

*Summons, Petition, Notice of Service and Notice to Take Deposition* on **Oread Wholesale, L.C.** and that the following Return for Receipt of Service was served on the litigant by certified mail as listed on the enclosed card.



PS Form 3811, July 2013          Domestic Return Receipt

_____

William P. Denning,          KS #21560
**ATTORNEY FOR PLAINTIFF**

Subscribed and sworn before me on the _21st_ day of _NOVEMBER_ , 2016.

_Jennifer R. Howard_
N̶o̶t̶a̶ry public

My Commission Expires: _8/15/19_



JENNIFER R. HOWARD
My Appointment Expires
August 15, 2019

Respectfully submitted:

_____

Bradley S. Russell,          KS #13734
William P. Denning,          KS #21560
Sanders Warren & Russell LLP
40 Corporate Woods
9401 Indian Creek Parkway, Suite 1250
Overland Park, Kansas 66210
Telephone:     (913) 234-6100
Facsimile:     (913) 234-6199
b.russell@swrllp.com
w.denning@swrllp.com

and

Randall F. Larkin,          KS #14184
Toni Ramirez Wheeler,       KS #18473
City Hall
6 East 6th Street, Fourth Floor
Lawrence, Kansas 66044
Telephone:     (785) 832-3475
Facsimile:     (785) 832-3405
twheeler@lawrenceks.org
rlarkin@lawrenceks.org
**ATTORNEYS FOR PLAINTIFF**

City of Lawrence, Kansas

vs.

Thomas Fritzel, et al. et. al.

ELECTRONICALLY FILED
2016 Nov 16 PM 4:55
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

**SUMMONS**

To the above-named Defendant/Respondent:

**Oread Wholesale, L.C.**
**1200 Oread Avenue**
**Lawrence, KS  66044**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

William P. Denning
9401 Indian Creek Parkway
Suite 1250
Overland Park, KS 66210

within 21 days after service of summons on you.



Clerk of the District Court
Electronically signed by Rose DelCampo on 11/17/2016 03:56:25 PM

**Documents to be served with the Summons:**
DCC - Chapter 60 Non Domestic - PLE: PETITION for Case #2016CV000462 FSDate 11/16/2016

ELECTRONICALLY FILED
2016 Nov 21 PM 2:56
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS
### CIVIL DEPARTMENT

| | | |
|---|---|---|
| CITY OF LAWRENCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  2016-CV-000462 |
| | ) | |
| THOMAS FRITZEL, | ) | |
| OREAD, INN, L.C., | ) | |
| OREAD WHOLESALE, L.C., | ) | |
| DFC COMPANY OF LAWRENCE, L.C., and | ) | |
| JOHN DOES 1-12 | ) | |
| | ) | |
| Defendants. | ) | |

### RETURN OF SERVICE FOR CERTIFIED MAIL

| | |
|---|---|
| STATE OF KANSAS | ) |
| | ) ss: |
| COUNTY OF JOHNSON | ) |

The undersigned, being duly sworn, states I have served the following:

*Summons, Petition, Notice of Service and Notice to Take Deposition* on **Thomas Fritzel** and that the following Return for Receipt of Service was served on the litigant by certified mail as listed on the enclosed card.

_____
William P. Denning,          KS #21560
**ATTORNEY FOR PLAINTIFF**


Subscribed and sworn before me on the 21ST day of _NOVEMBER_ , 2016.


_____
Notary public

My Commission Expires: _8/15/19_

JENNIFER R. HOWARD
My Appointment Expires
August 15, 2019


Respectfully submitted:


_____
Bradley S. Russell,          KS #13734
William P. Denning,          KS #21560
Sanders Warren & Russell LLP
40 Corporate Woods
9401 Indian Creek Parkway, Suite 1250
Overland Park, Kansas 66210
Telephone:    (913) 234-6100
Facsimile:    (913) 234-6199
b.russell@swrllp.com
w.denning@swrllp.com

and

Randall F. Larkin,          KS #14184
Toni Ramirez Wheeler,          KS #18473
City Hall
6 East 6th Street, Fourth Floor
Lawrence, Kansas 66044
Telephone:    (785) 832-3475
Facsimile:    (785) 832-3405
twheeler@lawrenceks.org
rlarkin@lawrenceks.org
**ATTORNEYS FOR PLAINTIFF**

City of Lawrence, Kansas

vs.

Thomas Fritzel, et al. et. al.

ELECTRONICALLY FILED
2016 Nov 16 PM 4:55
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

**SUMMONS**

To the above-named Defendant/Respondent:

**Thomas Fritzel**
**209 N. Fall Creek Road**
**Lawrence, KS 66044**

You are hereby notified that an action has been commenced against you in this court. You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

William P. Denning
9401 Indian Creek Parkway
Suite 1250
Overland Park, KS 66210

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed by Rose DelCampo on 11/17/2016 03:56:25 PM

**Documents to be served with the Summons:**
DCC - Chapter 60 Non Domestic - PLE: PETITION for Case #2016CV000462 FSDate 11/16/2016

ELECTRONICALLY FILED
2016 Nov 21 PM 2:56
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS
## CIVIL DEPARTMENT

| | | |
|---|---|---|
| CITY OF LAWRENCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  2016-CV-000462 |
| | ) | |
| THOMAS FRITZEL, | ) | |
| OREAD, INN, L.C., | ) | |
| OREAD WHOLESALE, L.C., | ) | |
| DFC COMPANY OF LAWRENCE, L.C., and | ) | |
| JOHN DOES 1-12 | ) | |
| | ) | |
| Defendants. | ) | |

### RETURN OF SERVICE FOR CERTIFIED MAIL

| | |
|---|---|
| STATE OF KANSAS | ) |
| | ) ss: |
| COUNTY OF JOHNSON | ) |

The undersigned, being duly sworn, states I have served the following:

*Summons, Petition, Notice of Service and Notice to Take Deposition* on **DFC Company of Lawrence, L.C.** and that the following Return for Receipt of Service was served on the litigant by certified mail as listed on the enclosed card.

William P. Denning,          KS #21560
**ATTORNEY FOR PLAINTIFF**


Subscribed and sworn before me on the 21ˢᵗ day of _NOVEMBER_ , 2016.


Notary public

My Commission Expires: _8/15/19_

JENNIFER R. HOWARD
My Appointment Expires
August 15, 2019


Respectfully submitted:


Bradley S. Russell,          KS #13734
William P. Denning,          KS #21560
Sanders Warren & Russell LLP
40 Corporate Woods
9401 Indian Creek Parkway, Suite 1250
Overland Park, Kansas 66210
Telephone:    (913) 234-6100
Facsimile:    (913) 234-6199
b.russell@swrllp.com
w.denning@swrllp.com

and

Randall F. Larkin,          KS #14184
Toni Ramirez Wheeler,          KS #18473
City Hall
6 East 6ᵗʰ Street, Fourth Floor
Lawrence, Kansas 66044
Telephone:    (785) 832-3475
Facsimile:    (785) 832-3405
twheeler@lawrenceks.org
rlarkin@lawrenceks.org
**ATTORNEYS FOR PLAINTIFF**

City of Lawrence, Kansas

vs.

Thomas Fritzel, et al. et. al.

ELECTRONICALLY FILED
2016 Nov 16 PM 4:55
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

**SUMMONS**

To the above-named Defendant/Respondent:

> **DFC Company of Lawrence L.C.**
> **643 Massachusetts, Suite 300**
> **Lawrence, KS  66044**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> William P. Denning
> 9401 Indian Creek Parkway
> Suite 1250
> Overland Park, KS 66210

within 21 days after service of summons on you.



Clerk of the District Court

Electronically signed by Rose DelCampo on 11/17/2016 03:56:25 PM

**Documents to be served with the Summons:**

DCC - Chapter 60 Non Domestic - PLE: PETITION for Case #2016CV000462 FSDate 11/16/2016

ELECTRONICALLY FILED
2016 Nov 21 PM 2:56
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS
### CIVIL DEPARTMENT

| | | |
|---|---|---|
| CITY OF LAWRENCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2016-CV-000462 |
| | ) | |
| THOMAS FRITZEL, | ) | |
| OREAD, INN, L.C., | ) | |
| OREAD WHOLESALE, L.C., | ) | |
| DFC COMPANY OF LAWRENCE, L.C., and | ) | |
| JOHN DOES 1-12 | ) | |
| | ) | |
| Defendants. | ) | |

## RETURN OF SERVICE FOR CERTIFIED MAIL

| | |
|---|---|
| STATE OF KANSAS | ) |
| | ) ss: |
| COUNTY OF JOHNSON | ) |

The undersigned, being duly sworn, states I have served the following:

*Summons, Petition, Notice of Service and Notice to Take Deposition* on **Oread Inn, L.C.** and that the following Return for Receipt of Service was served on the litigant by certified mail as listed on the enclosed card.

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

OREAD INN, L.C.
REGISTERED AGENT:
THOMAS FRITZEL
1200 OREAD AVENUE
LAWRENCE, KS 66044

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from Item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail   ☐ Priority Mail Express™
☐ Registered   ☑ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7014 2870 0001 9564 8619

PS Form 3811, July 2013          Domestic Return Receipt

_____
William P. Denning,            KS #21560
**ATTORNEY FOR PLAINTIFF**


Subscribed and sworn before me on the 21ˢᵗ day of _November_ , 2016.


_____
Notary public


My Commission Expires: _8/15/19_




Respectfully submitted:


_____
Bradley S. Russell,              KS #13734
William P. Denning,          KS #21560
Sanders Warren & Russell LLP
40 Corporate Woods
9401 Indian Creek Parkway, Suite 1250
Overland Park, Kansas 66210
Telephone:    (913) 234-6100
Facsimile:     (913) 234-6199
b.russell@swrllp.com
w.denning@swrllp.com

and

Randall F. Larkin,              KS #14184
Toni Ramirez Wheeler,      KS #18473
City Hall
6 East 6ᵗʰ Street, Fourth Floor
Lawrence, Kansas 66044
Telephone:    (785) 832-3475
Facsimile:     (785) 832-3405
twheeler@lawrenceks.org
rlarkin@lawrenceks.org
**ATTORNEYS FOR PLAINTIFF**

ELECTRONICALLY FILED
2016 Nov 16 PM 4:55
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000462

City of Lawrence, Kansas

vs.

Thomas Fritzel, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Oread Inn, L.C.**
**1200 Oread Avenue**
**Lawrence, KS  66044**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

William P. Denning
9401 Indian Creek Parkway
Suite 1250
Overland Park, KS 66210

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed by Rose DelCampo on 11/17/2016 03:56:25 PM

**Documents to be served with the Summons:**
DCC - Chapter 60 Non Domestic - PLE: PETITION for Case #2016CV000462 FSDate 11/16/2016